NO. 14-16327

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

LEVI JONES, *et al.*,

*Plaintiffs-Appellants*

v.

CONAGRA FOODS, INC.,

*Defendant-Appellee*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALFORNIA,
SAN FRANCISCO DIVISION

## BRIEF OF APPELLANT LEVI JONES

Pierce Gore
PRATT & ASSOCIATES
1871 The Alameda
Suite 425
San Jose, CA 95126
(408) 369-0800

David Shelton
SHELTON DAVIS PLLC
1223 Jackson Ave. East
Suite 202
Oxford, MS 38655
(662) 281-1212

Counsel for Plaintiff/Appellant Levi Jones

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................................... iii

STATEMENT OF JURISDICTION ....................................................1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ............2

STATEMENT OF THE CASE .............................................................3

SUMMARY OF THE ARGUMENT ....................................................8

ARGUMENT ....................................................................................10

I.    Standard of Review ...................................................................10

II.   The District Court Abused Its Discretion When It
      Denied Jones' Motion For Class Certification ...............................10

      A.   The District Court Abused Its Discretion By Basing
           Its Denial Of Class Certification At Least Partially
           On The Erroneous Conclusion That Jones Failed To
           Propose An Ascertainable Class...........................................10

           1.   "Ascertainability" Is Not An Independent
                Requirement Of Rule 23................................................10

           2.   The Class Proposed By Jones Is Ascertainable ............13

      B.   The District Court Committed Error By Concluding That
           The Proposed Class Did Not Qualify For Certification
           Under Rule 23(b) ....................................................................20

           1.   Rule 23(b)(3) ...............................................................20

                a.   The District Court Committed Reversible Error
                     When It Held That Individual Issues Predominate
                     With Respect To Hunt's Tomato Products Labeled
                     "100% Natural" Or "Free Of Artificial Ingredients
                     & Preservatives"...............................................21

                     i.   Pursuant To This Court's Precedent,
                          Individual Reliance Issues Do Not
                          Predominate Over Common Issues ..............23

ii. Pursuant To This Court's Precedent, Materiality Is A Common Issue And Thus Materiality Issues Do Not Predominate Over Common Issues ....................................25

iii. The "Individualized Purchasing Inquiries" Identified By The District Court Are Merely Improper Individualized Damage Issues That Are Not A Proper Basis For Denying Class Certification ......................................31

b. The District Court Erroneously Concluded The Class Lacks Predominance For Failure To Meet The *Comcast* Damages Inquiry ...............34

i. The District Court Committed Error By Requiring Jones To Demonstrate Damages With Precision And In Conflating Damages With Restitution.............................35

ii. Restitution and Benefit of the Bargain Present Viable Methods For Class Certification That Meet *Comcast* Assuming *Arguendo* It Applies .....................45

c. The District Court Erroneously Concluded A Class Action Is Not Superior To Thousands Of Individual Actions (Or No Litigation At All) For The Adjudication Of This Controversy ..............................49

2. Rule 23(b)(2): The District Court Committed Reversible Error When It Held That Jones Lacked Standing To Pursue Claims For Injunctive Relief Under The UCL, FAL, and CLRA ..............................50

CONCLUSION AND PRAYER ...................................................56
STATEMENT OF RELATED CASES..................................................57
CERTIFICATE OF COMPLIANCE WITH RULE 32(a) .....................58
CERTIFICATE OF SERVICE................................................59

## TABLE OF AUTHORITIES

**Cases**

*Alliance to End Repression v. Rochford*, 565 F.2d 975
  (7th Cir. 1977) ......................................................................12, 13, 14

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)............................. 19, 21-22

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
  133 S. Ct. 1184, 185 L. Ed. 2d 308 (2013).........................................30

*Astiana v. Kashi Co.*, 291 F.R.D. 493 (S.D. Cal. 2013) ..............................26 n.5, 37

*Auer v. Robbins*, 519 U.S. 452, 117 S. Ct. 905, 137 L. Ed. 2d 79 (1997)..............31

*Basic v. Levinson*, 485 U.S. 224 (1998) .....................................................17

*Bassiri v. Xerox Corp.*, 463 F.3d 927 (9th Cir. 2006) ..............................31

*Bazemore v. Friday*, 478 U.S. 385 (1986) (per curiam).........................47

*Berger v. Home Depot USA, Inc.*, 741 F.3d 1061 (9th Cir. 2014) .....................5, 56

*Berman v. Narragansett Racing Ass'n*, 414 F.2d 311 (1st Cir. 1969) ...................18

*Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975) .....................................31

*Brazil v. Dole Packaged Foods, LLC*, No. 12-cv-1831-LHK,
  2014 U.S. Dist. LEXIS 74234 (May 30, 2014).................................26

*Brown v. Hain Celestial Grp., Inc.*,
  2014 U.S. Dist. LEXIS 161036 ........................................................18

*Brown v. SCI Funeral Servs. of Fla., Inc.*, 212 F.R.D. 602
  (S.D. Fla. 2003) ..............................................................................49

*Cabral v. Supple, LLC*, EDCV 12-00085-MWF,
  2012 WL 4343867 (C.D. Cal. Sept. 19, 2012).................................53

*Comcast v. Behrend*, 133 S. Ct. 1426 (2013) ............. 2, 9, 34, 35, 37, 44, 45-46, 48

*County of San Bernardino v. Walsh*, 158 Cal. App. 4th (2007) .............................41

*Crosby v. Soc. Sec. Admin of the United States*,
    765 F.2d 576 (1st Cir. 1986) ...................................................14

*Davis v. Cintas Corp.*, 717 F.3d 476 (6th Cir. 2013) .................................11, 12, 13

*Davoll v. Webb*, 194 F.3d 1116 (10th Cir. 1999) ....................................................14

*De La Hoya v. Slim's Gun Shop*, 80 Cal. App. 3d Supp. 6 (1978).........................40

*DeBremaecker v. Short*, 435 F.2d 733 (5th Cir. 1970)............................................15

*Edwards v. First Am. Corp.*, 610 F.3d 514 (9th Cir. 2010)....................................51

*FTC v. Figgie Int'l*, 994 F.2d 595 (9th Cir. 1993)...................................................43

*Fairbanks v. Farmers New World Life Ins. Co.*,
    197 Cal. App. 4th 544, 128 Cal. Rptr. 3d 888 (2011) ........................................28

*Feitelberg v. Credit Suisse First Bos., LLC*,
    134 Cal. App. 4th 997 (2006) .......................................................................36 n.8

*Forcellati v. Hyland's, Inc.*, No. CV 12-1983-GHK,
    2014 WL 1410264 (C.D. Cal. Apr. 9, 2014)......................................................16

*Fortyune v. Am. Multi-Cinema, Inc.*, No. CV10-5551,
    2002 WL 32985838 (C.D. Cal. Oct. 22, 2002) ..................................................53

*Foster Poultry Farms, Inc. v. SunTrust Bank*,
    2008 U.S. Dist. LEXIS 36595 (E.D. Cal. May 2, 2008) ....................................41

*Guido v. L'Oreal*, 2013 U.S. Dist. LEXIS 94031 (C.D. Cal. 2013)........................37

*Gutierrez v. Wells Fargo Bank, NA*,
    2014 U.S. App. LEXIS 20892 (9th Cir. 2014)...................................................24

*Halliburton v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398 (2014) .................... 17-18

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ......................... 21, 27, 36

*Henderson v. Gruma Corp.*, 2011 U.S. Dist. LEXIS 41077,
    2011 WL 1362188 (C.D. Cal. Apr. 11, 2011) ............................................... 52-53

*Hilao v. Estate of Marcos*, 103 F.3d 767 (9th Cir. 1996) .................................. 20, 49

*Hinojos v. Kohl's Corp.*, 718 F.3d 1098 (9th Cir. 2013) ......................................... 29

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
    2013 WL 5429718 (N.D. Cal. June 20, 2013) .............................................. 46, 48

*In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*,
    256 F.R.D. 82 (D. Conn. 2009) ....................................................................... 47

*In re Ferrero Litig.*, 278 F.R.D. 551 (S.D. Cal. 2011) ........................................... 27

*In re High-Tech Emp. Antitrust Litig.*, 289 F.R.D. 555
    (N.D. Cal. Apr. 5, 2013) ............................................................................ 46, 48

*In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24 (2d Cir. 2006) ......................... 14

*In re Scrap Metal Antitrust Litig.*, 527 F.3d 517 (6th Cir. 2008) ............................ 46

*In re Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145,
    104 Cal. Rptr. 3d 329 (2010) .......................................................................... 27

*In re Tobacco II Cases*, 46 Cal. 4th 298, 207 P. 3d 20,
    93 Cal. Rptr. 3d 559 (2009) ......................................................... 24, 28, 37, 52, 53

*In re Toyota Motor Corp. Hybrid Brake Mktg.*,
    2012 U.S. Dist. LEXIS 151559 (C.D. Cal. Sept. 20, 2012) ............................... 48

*In re Vioxx Class Cases*, 180 Cal. App. 4th 116,
    103 Cal. Rptr. 3d 83 (2009) ....................................................................... 28, 42

*In re Visa Check/MasterMoney Antitrust Litig.*,
    280 F.3d 124 (2d Cir. 2001) ............................................................................ 50

*In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.*, No. 09-2100, 2012 LEXIS 33183 (S.D. Ill. Mar. 13, 2012) .............. 28-29

*Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161 (9th Cir. 2014).............................32, 44

*Johns v. Bayer Corp.*, 2012 U.S. Dist. LEXIS 60121 (S.D. Cal. Apr. 30, 2012).....................................................................................38

*Juarez v. Arcadia Fin., LTD*, 152 Cal. App. 4th 889 (2007)...................................42

*Kaldenbach v. Mut. Of Omaha Life Ins. Co.*, 178 Cal. App. 4th 830, 100 Cal. Rptr. 3d 637 (2009) .......................................28

*Kohen v. Pac. Mgmt. Co., LLC*, 571 F.3d 672 (7th Cir. 2009) ..............................18

*Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134 (2003).....................................................................36, 37, 38, 42

*Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310 (2011) .....................................28, 39

*Larsen v. Trader Joe's Co.*, C 11-5188-SI, 2012 WL 5458396 (N.D. Cal. June 14, 2012).....................................................................................53

*Leyva v. Medline Indus. Inc.*, 716 F.3d 510 (9th Cir. 2013)........................ 10, 31-32

*Linda R.S. v. Richard D.*, 410 U.S. 614 (1973) .......................................................51

*Madrid v. Perot Sys. Corp.*, 130 Cal. App. 4th 440 (2005)...............................36 n.8

*Mass. Mut. Life Ins. Co. v. Superior Court*, 97 Cal. App. 4th 1282, 119 Cal. Rptr. 2d 190 (2002) .......................................29

*Matamoros v. Starbucks Corp.*, 699 F.3d 129 (1st Cir. 2012) .........................14, 16

*Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012).............................27

*McCrary v. Elations Co.*, No. EDCV 13-00242-JGP, 2014 WL 1779243 (C.D. Cal. Jan. 13, 2014).............................................15, 19

*Myers v. Malone & Hyde, Inc.*, 173 F.2d 291 (8th Cir. 1949) ...............................39

*Occidental Land, Inc. v. Super. Ct.*, 18 Cal. 3d 355,
134 Cal. Rptr. 388, 556 P.2d 750 (1976).........................................................28

*Park v. Welch Foods, Inc.*, 2014 U.S. Dist. LEXIS 37796
(N.D. Cal. 2014) ..............................................................................................55

*Porter v. Craddock*, 84 F. Supp. 704 (D. Ky. 1949) ............................................39

*Pub. Lands for the People, Inc. v. United States Dep't of Agric.*,
2012 U.S. App. LEXIS 20175 (9th Cir. 2012)..................................................31

*Ramos v. Philip Morris Cos.*, 743 So. 2d 24
(Fla. Dist. Ct. App. 1999) .................................................................................49

*Ries v. Ariz. Beverages USA LLC*, 287 F.R.D. 523
(N.D. Cal. 2012) ...............................................................................27, 36-37

*Robins v. Spokeo, Inc.*, 742 F.3d 409 (9th Cir. 2014) .....................................51-52

*Rodman v. Safeway, Inc.*, 2014 WL 988992
(N.D. Cal. Mar. 29, 2014) ................................................................................18

*Saltzman v. Pella Corp.*, 257 F.R.D. 471 (N.D. Ill. 2009),
*aff'd*, 606 F.3d 391 (7th Cir. 2010) ............................................................11, 14

*Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*,
559 U.S. 393, 130 S. Ct. 1431 (2010) ...................................................8, 11, 13

*Simer v. Rios*, 661 F.2d 655 (7th Cir. 1981)..........................................................14

*Stearns v. Ticketmaster Corp.*, 655 F.3d 1013
(9th Cir. 2011) ...................................................................................24, 25, 29

*United States v. Bhutani*, 266 F.3d 661 (7th Cir. 2001) .........................................40

*United States v. Gonzalez-Alvarez*, 277 F.3d 73 (1st Cir. 2002)......................39-40

*United States v. Marcus*, 82 F.3d 606 (4th Cir. 1996).............................................40

*United States v. Milstein*, 401 F.3d 53 (2d Cir. 2005)...........................................40

*United States v. Santana-Mendoza*, 29 Fed. App'x (1st Cir. 2002) .......................40

*Vaccarino v. Midland Nat'l Life Ins. Co.*,
   2014 U.S. Dist. LEXIS 18601 (C.D. Cal. Feb. 3, 2014) ...........................35, 37

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541,
   180 L. Ed. 2d 374 (2011)...............................................................................28, 32

*Warnock v. State Farm Mut. Auto. Ins. Co.*, No. 5:08-cv-DCB-JMR,
   2011 WL 1113475 (S.D. Miss. Mar. 24, 2011)...................................................12

*Warth v. Seldin*, 422 U.S. 490, 95 S. Ct. 2197,
   45 L. Ed. 2d 343 (1975)......................................................................................51

*Wiener v. Dannon Co.*, 255 F.R.D. 658 (C.D. Cal. 2009)......................................37

*Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008) ...............................54

*Werdebaugh v. Blue Diamond Growers*, No. 12-CV-2724-LHK
   2014 U.S. Dist. LEXIS 71575 (N.D. Cal. May 23, 2014)..................... 25-26, 27

*Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532 (6th Cir. 2013).........................13

**Statutes and Rules**

28 U.S.C. § 1291 .......................................................................................................1

28 U.S.C. § 1332 .......................................................................................................1

105 CMR 520.116 ................................................................................................26 n.6

Fed. R. Civ. P. 23 ...............................................................................................*passim*

Fed. R. Civ. P. 23(b)(3) Advisory Committee's Note................................ 21-22, 32

Cal. Bus. & Prof. Code § 17203 ..............................................................24, 51, 54

Cal. Health & Saf. Code § 110760 .........................................................................55

## Other Authorities

Restatement, Restitution 1, Cmt. e .................................................... 42-43

3 Alba Conte & Herbert B. Newberg,
    *Newberg on Class Actions* § 10.12 (4th ed. 2002) ............................50

Myriam Gilles, *Class Dismissed:  Contemporary Judicial Hostility*
    *To Small-Claims Consumer Class Actions*, 59 DePaul L.R. 305 (2010) ..... 12-13

5 James Wm. Moore, *Moore's Federal Practice* § 23.21 [1]
    (3d ed. 2014) ....................................................................................11

Judith Resnik, *From "Cases" to "Litigation"*,
    54 LAW & CONTEMP. PROBS. 5 (1991) ................................. 33-34

Erin Rhinehart, *Third Circuit Decision Gives Ascertainability Argument*
    *Teeth*, Faruki Ireland & Cox P.L.L. (Aug. 22, 2013, 3:50 p.m.),
    http://businesslitigationinfo.com/class-action/archives/1450/#more-1450 ..19 n.1

1 William B. Rubenstein, *Newberg on Class Actions* § 3.1
    (5th ed. 2011) ..................................................................10, 11, 12, 13, 50 n.10

2 William B. Rubenstein, *Newberg on Class Actions* § 4.54
    (5th ed. 2012) ....................................................................................33

7A Charles Alan Wright et al., *Federal Practice and Procedure* § 1760
    (3d ed. 2005) ....................................................................................12

## STATEMENT OF JURISDICTION

The district court had jurisdiction pursuant to 28 U.S.C. § 1332(d) because the named Plaintiffs are citizens of California, while Defendant is a Delaware corporation with its principal place of business in Omaha, Nebraska. ER838-839. The requisite amount in controversy exists because Plaintiffs alleged a class of over 100 members with different citizenship than Defendant, and the claims of the class members exceed $5,000,000 in the aggregate. ER839.

This Court has jurisdiction pursuant to 28 U.S.C. § 1291 because the district court entered an Order dismissing all parties' claims, with prejudice, on July 8, 2014. ER2. Plaintiffs timely filed their notice of appeal on July 14, 2014. ER49-50.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1.    Did the district court commit error by imposing "ascertainability" as a separate requirement of Rule 23, and then concluding that the proposed Class is not "ascertainable"?

2.    Did the district court commit error by denying Rule 23(b)(3) class certification after erroneously concluding that individual issues of materiality and reliance predominate over common issues?

3.    Did the district court commit error by concluding that the Class failed to submit an acceptable damages theory under *Comcast v. Behrend*, 133 S. Ct. 1426 (2013)?

4.    Did the district court commit error by denying class certification under Rule 23(b)(2)?

## STATEMENT OF THE CASE

Plaintiff Levi Jones filed a class action suit against Defendant ConAgra Foods, Inc. ("ConAgra") on April 2, 2012. ER 1296. Plaintiff Jones, joined by Plaintiffs Christine Sturges and Edd Ozard, subsequently filed an Amended Complaint on July 2, 2012. ER972-1048. Plaintiffs alleged certain of ConAgra's food products – namely, PAM cooking spray, Hunt's canned tomatoes, and Swiss Miss cocoa – contained unlawful, illegal, deceptive, and misleading marketing claims on their respective labels. ER987-1023. Plaintiffs asserted causes of action based on (1) the "unlawful," "unfair," and "fraudulent" prongs of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*; (2) California's False Advertising Laws ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*; (3) Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*; (4) restitution based on unjust enrichment/quasi-contract; (5) Song-Beverly Act, Cal. Civ. Code § 1790, *et seq*.; and (6) Magnuson-Moss Act, 15 U.S.C. § 2301, *et seq.* ER1035-1046.

ConAgra filed a Motion to Dismiss the Amended Complaint on August 17, 2012, seeking to dismiss all claims. *See* ER1299. Plaintiffs opposed the motion to dismiss. *See* ER1302. The district court granted in part and denied in part ConAgra's motion to dismiss. ER952-971. All three plaintiffs filed a Second Amended Complaint on January 15, 2013, ER830-951, and ConAgra filed an

Answer to that Second Amended Complaint, ER801-829.

In their Second Amended Complaint, Plaintiffs specifically alleged ConAgra represented certain food products to be "100% Natural" on the front of those products' labels, when in fact the products contained chemical preservatives, synthetic chemicals, and other artificial ingredients. ER831, 845-853. Plaintiffs further alleged that, throughout the class period, they and other class members purchased ConAgra's deceptively-labeled products, ER882-890, reasonably relying on the "natural" claims on ConAgra's package labeling, ER889-890. Plaintiffs alleged they did not know, and had no reason to know, ConAgra's products were unlawfully and deceptively labeled, and they would not have purchased the products if they had known the truth about ConAgra's labels. ER889. Further, because of ConAgra's misleading and deceptive labeling practices, Plaintiffs allege they were harmed when they paid an "unwarranted premium" for Defendant's mislabeled food products. ER853, 894.

After discovery regarding the various ConAgra food products, Plaintiffs moved to sever their claims into three cases based on three distinct products groups. *See* ER1310. The district court denied Plaintiffs' motion, but ordered that Plaintiffs file separate motions for class certification for each of the three products at issue (ER799; *see also* ER1316), which they did. S*ee* ER1310; ER665-787; ER1313. In support of their motions, Plaintiffs submitted copies of the labels in

4

question, along with declarations from expert witnesses, as detailed below.

The district court denied all three of Plaintiffs' motions for class certification. ER3-48. The parties then stipulated to the dismissal of the district court action, so Plaintiffs could appeal from the dismissal in order to appeal the district court's denial of class certification. ER54-55. *See Berger v. Home Depot USA, Inc.,* 741 F.3d 1061, 1064-66 (9th Cir. 2014). Plaintiffs Jones and Sturges timely filed a Notice of Appeal. ER49-53. Plaintiff Sturges dismissed her appeal in this Court. (9th Cir. Doc. 19).

Therefore, the present appeal is limited to one plaintiff and one product line – Plaintiff Jones and Hunt's canned tomato products. Plaintiff does not appeal any issues from the district court's order concerning PAM cooking spray or Swiss Miss cocoa.

## HUNT'S CANNED TOMATO PRODUCTS

ConAgra packages and sells canned tomato products through its Hunt's® brand in the following seven segments: Diced Tomatoes, Crushed Tomatoes, Stewed Tomatoes, Whole Tomatoes, Tomato Sauce, Tomato Puree, and Tomato Paste. ER328, 745. Plaintiff Jones purchased Hunt's Diced Tomatoes and Tomato Sauce. ER751-755. ConAgra marketed the purchased products as "100% Natural" on the front and center of the label, even though the items included ingredients that prohibit ConAgra from

making this labeling claim. More specifically, Hunt's® Diced Tomatoes include citric acid *and* calcium chloride as ingredients, both of which prohibit the subject labeling claim. ER701. Hunt's® Tomato Sauce includes citric acid (but not calcium chloride) as an ingredient, which also prohibits the labeling claim. ER703. Purchasers of ConAgra's other segments of canned tomatoes purchased products with the same ingredients as the two products purchased by Plaintiff Jones, as depicted in a chart supplied by Plaintiff in his Motion for Class Certification, ER676-677, and accompanying exhibits, ER705-711. Plaintiff Jones relied on the labeling claims, testifying the "100% Natural" marketing claim was a factor in his purchase of Hunt's tomato products. ER755-761.

While Hunt's canned tomato products are available in different sized cans and in different varieties and flavors, virtually all of ConAgra's canned tomato sales consisted of the products included within the class definition which were identically labeled with the prominent claim that they are "100% Natural." ER1072, 1074-1075. Plaintiff submitted labels of all the Class products into the record. ER701-711. With respect to ingredients, ConAgra concedes citric acid is an ingredient in *all* Hunt's canned tomato products. ER151. ConAgra specifically listed all Hunt's canned tomato products available during the class period. ER328-329. ConAgra tried to muddy the

6

water by arguing six (of 55) varieties did not claim to be "100% Natural" on the label.  ER329.  However, those products were excluded from the Class definition.  Even so, ConAgra's sales of those non-Class products amounted to virtually zero in the canned tomato category from July 2009 to February 2014. ER1072, 1074-1075.

The district court denied Jones' motion for class certification, finding individual inquiries predominate over common ones, the class action was not manageable or superior to individual actions, Plaintiff failed to present an adequate damages model, and Plaintiff lacks standing under Rule 23(b)(2). Plaintiff Jones respectfully appeals these rulings.

## SUMMARY OF THE ARGUMENT

The district court abused its discretion in denying class certification. First, the district court abused its discretion by concluding Plaintiff failed to propose an ascertainable class. Rule 23 has been described by the Supreme Court as encompassing a "one-size-fits-all formula for deciding the class action question." *Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*, 559 U.S. 393, 399 (2010). Outside the express elements of numerosity, commonality, typicality, and adequacy – along with the obligations of the applicable subsection of Rule 23(b) – there is no additional, "implied" requirement of "ascertainability" in Rule 23. If such a requirement does exist, Jones met it by proposing a class defined in terms of objective criteria.

The district court next committed error by concluding the proposed class did not qualify for certification under Rule 23(b) The district court held the proposed Class satisfied all the prerequisites of Rule 23(a), but didn't pass muster under Rule 23(b)(2) or 23(b)(3). Though correctly finding the requirement of commonality was satisfied for the proposed class of persons who purchased Hunt's tomato products labeled "100% Natural" or "free of artificial ingredients and preservatives," the district court committed reversible error when it held individual issues predominate with respect to Hunt's tomato products.

The district court determined that individual issues of reliance and materiality

8

predominate, but California authorities construing the relevant state laws reveal that those elements may be resolved on a class-wide basis. The district court also decided that predominance is lacking because Jones did not present a damages theory consistent with *Comcast v. Behrend*, 133 S. Ct. 1426 (2013), but the teachings from that antitrust lawsuit are inapplicable to this consumer fraud action. Even if *Comcast* does apply, Jones presented expert testimony detailing a sound method for calculating damages for the Class. The *Comcast* opinion does not preclude class certification. In any event, it is well established in this Circuit that damages issues, alone, cannot support denial of a motion to certify a class.

The district court additionally abused its discretion by reasoning that thousands of individual actions – or, more likely, no actions at all – are superior to adjudication on behalf of a class. Finally, Jones and the Class have standing to pursue injunctive relief, and the district court therefore committed error by refusing to certify a class under Rule 23(b)(2).

**ARGUMENT**

## I.   Standard of Review

This Court reviews the denial of class certification for an abuse of discretion, a determination that entails a two-step process.  *See Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 513 (9th Cir. 2013).  First, this Court "look[s] to whether the trial court identified and applied the correct legal rule to the relief requested."  *Id.* (quotation omitted).   The Court secondly looks to whether the trial court's resolution of the motion resulted from a factual finding that was illogical, implausible, or without support in inferences that may be drawn from facts in the record.  *Id.* (quotation omitted).

## II.   The District Court Abused Its Discretion When It Denied Jones' Motion for Class Certification

### A.      The District Court Abused Its Discretion By Concluding Jones Failed To Propose An Ascertainable Class

1.   "Ascertainability" Is Not An Independent Requirement Of Rule 23.

Rule 23 of the Federal Rules of Civil Procedure creates an "*intricate formula*" making it incumbent on the party moving for class certification to establish "the proposed class and class representatives meet all the requirements of Rule 23(a) (numerosity, commonality, typicality, and adequacy)."  1 William B. Rubenstein, *Newberg on Class Actions* § 3:1, at 151 (5th ed. 2011) (emphasis added).  After clearing that hurdle, the proponent of class certification must further

10

show "that the case fits into one of the categories of Rule 23(b)." *Id.* Needless to say, Rule 23 lays out in great detail the road to class certification, leading the Supreme Court to characterize it as a "*one-size-fits-all formula* for deciding the class action question." *Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*, 559 U.S. 393, 399 (2010) (deriving from section of plurality opinion in which five Justices joined) (emphasis added); *see also* Fed. R. Civ. P. 23(b) (providing a "class action *may be maintained*" upon satisfaction of pertinent provisions of the Rule (emphasis added)).

Nevertheless, "[d]espite the specificity of Rule 23," Rubenstein, *supra*, § 3:1, at 151, "[s]ome" courts see fit to "impose" implicit requirements as "supplement[s]" to its express terms, *Davis v. Cintas Corp.*, 717 F.3d 476, 483 n.1 (6th Cir. 2013). One of these "extra, judicially created criteria," Rubenstein, *supra*, § 3:1, at 151, is a concept variously known as "ascertainability" or "definiteness," *Saltzman v. Pella Corp.*, 257 F.R.D. 471, 475-76 (N.D. Ill. 2009) (using terms interchangeably), *aff'd*, 606 F.3d 391 (7th Cir. 2010). In essence, the "implied" doctrine of ascertainability requires "[a] party seeking class certification [to] show that the class is currently and readily ascertainable, *based on objective criteria*, by a preponderance of the evidence." 5 James Wm. Moore, *Moore's Federal Practice* § 23.21[1] (3d ed. 2014) (emphasis added); *see also* Rubenstein, *supra*, § 3:1, at 152 ("Although formulations of this doctrine vary, all essentially

11

require a putative class to be ascertainable with reference to *objective criteria*." (emphasis added)); 7A Charles Alan Wright *et al*., *Federal Practice and Procedure* § 1760, at 136-37 (3d ed. 2005) ("If the *general outlines* of the membership of the class are determinable at the outset of the litigation,[] a class will be deemed to exist." (emphasis added)).

At least one federal appellate tribunal has admitted the "source" of the implied ascertainability requirement is "not clear," *Alliance to End Repression v. Rochford*, 565 F.2d 975, 977 n.6 (7th Cir. 1977), while another has reflected the "supplemental . . . prerequisite" is "perhaps superfluous." *Davis*, 717 F.3d at 483 n.1. Still other courts have gone so far as to "suggest that concerns regarding the ascertainability of the proposed class are handled more properly under [existing] requirements governing pleading, standing, and Rule 23 prerequisites as opposed to *implying* any threshold requirements to Rule 23[]." *Warnock v. State Farm Mut. Auto. Ins. Co.*, 2011 WL 1113475 (S.D. Miss. Mar. 24, 2011) (emphasis added) (quotation omitted); *see also* Rubenstein, *supra*, § 3:1, at 153 ("Courts have criticized [this] implicit requirement because the existence of a definite class . . . [is] already ensured by the application of existing Rule 23(a) factors . . . ."). Striking a different path, the district court in this case incorrectly determined the Class proposed by Jones was not ascertainable and denied class certification. ER19-24. *See generally* Myriam Gilles, *Class Dismissed: Contemporary Judicial*

12

*Hostility to Small-Claims Consumer Class Actions*, 59 DePaul L. Rev. 305, 330-31 (2010) ("[T]he policy underpinnings of the ascertainability doctrine are utterly incoherent.").

In light of such things as the "specificity of Rule 23," Rubenstein, *supra*, § 3:1, at 151, and the Supreme Court's observation that the Rule encompasses a "one-size-fits-all formula for deciding the class action question," *Shady Grove.*, 559 U.S. at 399, Jones respectfully submits it is improper to graft onto the Rule a judicially-created, implied requirement like ascertainability. This is especially true given such a prerequisite is "perhaps superfluous," *Davis*, 717 F.3d at 483 n.1, with origins that are "[un]clear," *Rochford*, 565 F.2d at 977 n.6. Jones respectfully requests that this Court reject the district court's decision to apply an "ascertainability" requirement that cannot be found in Rule 23. *Cf.* Gilles, *supra*, at 331 ("[T]he application of an ascertainability filter at the class certification stage is a recipe for making bad law.").

### 2. The Class Proposed By Jones Is Ascertainable

Even if "ascertainability" is essential to class certification – though Rule 23 makes no mention of it – Jones has satisfied the "implied" requirement here. Should it exist as an extraneous and independent Rule 23 element, ascertainability requires nothing more than a class definition allowing resolution of "the question of whether class members are included or excluded from the class by reference to

objective criteria." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012); *see also Matamoros v. Starbucks Corp.*, 699 F.3d 129, 139 (1st Cir. 2012) ("The presence of . . . an objective criterion overcomes the claim that the class is unascertainable."); *Saltzman*, 257 F.R.D. at 475 ("A class can be properly identified so long as it is defined by objective criteria."). As such, the nation's circuit courts have declined to approve certification where a class definition turns upon a subjective consideration, such as whether a claimant experienced an "unreasonable" delay, *see Crosby v. Soc. Sec. Admin. of the United States*, 796 F.2d 576, 579-80 (1st Cir. 1986), or possessed a "disability" requiring "reasonable accommodation" pursuant to the Americans with Disabilities Act, *see Davoll v. Webb*, 194 F.3d 1116, 1146 (10th Cir. 1999). Under this prevailing "objectivity" standard, intense subjective inquiries are certainly problematic, but "[i]n those cases in which class certification has been denied on account of indefiniteness, the *primary defect* in the class definition has been that membership in the class was contingent upon the *state of mind* of the prospective class member." *Rochford*, 565 F.2d at 978 (emphases added); *see also In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24, 44-45 (2d Cir. 2006) (recognizing "problems" with ascertainability because class membership depended upon subjective intent of stock purchaser); *Simer v. Rios*, 661 F.2d 655, 669-71 (7th Cir. 1981) (rejecting class defined to include those who were "discouraged" from applying for assistance);

14

*DeBremaecker v. Short*, 435 F.2d 733, 734 (5th Cir. 1970) (affirming dismissal of class to be composed of persons active in the "peace movement" who "fear harassment").

The Class Jones sought to represent suffered from none of these infirmities. To be specific, he proposed a Class to include:

> All persons in the state of California who, from April 2, 2008, until the date of notice, purchased a Hunt's® canned tomato product bearing the label statement "100% Natural" or "Free of artificial ingredients & preservatives" but which contained the following ingredients: citric acid and/or calcium chloride.

ER666. Significantly, the record before the district court demonstrated the "100% Natural" representation appeared on all of the Class products and virtually all Hunt's "canned tomato products" sold in California during the Class Period. ER1072, 1074-1075. At the same time, it was undisputed *all* of Hunt's tomato products contain "citric acid and/or calcium chloride." ER150-151. So virtually any person in California who has bought a Hunt's canned tomato product since April 2, 2008 would be in the Class and the product they bought would have been a Class product. The purchase of a product during a designated time period is a completely objective criterion, and district courts throughout this Circuit commonly approve the ascertainability of classes that provide "a description of the allegedly offending product and the eligible dates of purchase." *McCrary v. Elations Co.*, 2014 WL 1779243, at *8 (C.D. Cal. Jan. 13, 2014); *see also*

15

*Forcellati v. Hyland's, Inc.*, 2014 WL 1410264, at *8 n.5 (C.D. Cal. Apr. 9, 2014) ("In this Circuit, classes that are objectively defined by the purchase of a low-cost product during a prescribed timeframe are routinely certified."). Under a mainstream application of law, the Class is ascertainable. *See, e.g., Matamoros*, 699 F.3d at 139 ("The presence of . . . an objective criterion overcomes the claim that the class is unascertainable.").

In ruling differently, the district court placed undue importance on obscure and infrequently purchased Hunt's canned tomato products that were excluded from the Class definition and which comprised less than one-half of one percent of Hunt's canned tomato product sales which did not contain a label representation that they were "100% Natural" or "Free of artificial ingredients & preservatives." ER22-23. According to the district court, although there was only limited variation during the Class Period between labels that did and did not qualify, "there [was] still variation." ER22n.16. Thus, because some "class members will not be able to remember whether they purchased the products that are not at issue, or the ones that are," ER23n.19, the district court deemed the class unascertainable, ER23. This was incorrect.

First, the few obscure products that concerned the district court were excluded from the Class definition and so any purchaser of only these products would not be a Class member. Second, as previously stated, the record revealed

16

that nearly 100% of all Hunt's canned tomato products sold in California during the Class Period exhibited the challenged statements and were class products. ER1072, 1074-1075. With such an overwhelming majority of purchasers purchasing Class products and thus being within the Class, the "variation" between Class products and non-Class products relied upon by the district court is of no consequence. At best, it means there is a possibility, notwithstanding the Class definition and defined Class products, a purchaser of a non-Class product might mistakenly believe they were included in the Class. Such a possibility is not a bar to certification.

The United States Supreme Court has held as much. In *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2410-11 (2014), the Court considered an attack on the presumption recognized by *Basic v. Levinson*, 485 U.S. 224 (1988), which permits the existence of certain federal securities fraud class actions by assuming investors buy stock in reliance on an efficient market. The securities fraud defendants before the Court argued some investors do *not* rely on an efficient market, and the Court accepted that point, but regarded it as insignificant. *Halliburton*, 124 S. Ct. at 2410-11. The key consideration is "*most*" investors rely on an efficient market, *id.* at 2411 (emphasis in original), justifying the *Basic* presumption and the securities fraud class actions in its wake (even though some class members do not have valid claims due to a lack of actual reliance), *see id.*

17

In the end, the exclusion from the class definition of the few obscure tomato products lacking the challenged labeling claims avoids any potential issue of over-inclusiveness. Moreover, as *Halliburton* makes evident, "including a small percentage of uninjured persons does not defeat ascertainability." *Brown v. Hain Celestial Grp., Inc.*, 2014 U.S. Dist. LEXIS 161036, at *23-24 (citing *Kohen v. Pac. Mgmt. Co., LLC*, 571 F. 3d 672, 677 (7th Cir. 2009) (collecting cases); *Rodman v. Safeway, Inc.*, 2014 WL 988992, at *16 (N.D. Cal. Mar. 29, 2014)). Even if purchasers of the excluded products were to be somehow included in the Class, because of the miniscule percentage of tomato products such obscure products comprised, the proposed Class would still not contain a "a great many persons who have suffered no injury at the hands of the defendant." *Id.* Just as "most" investors rely on an efficient market, "most" purchasers of Hunt's canned tomato products during the Class Period – the enormously vast majority of them, in fact – bought a Class product, namely a can with a misrepresentation identified in the Class definition. That a tiny number of purchasers did not buy a Class product and were thus not members of the Class is no impediment to certification. *See Halliburton*, 134 S. Ct. at 2411; *Berman v. Narragansett Racing Ass'n*, 414 F.2d 311, 317 (1st Cir. 1969) ("We think it likely that in any lawsuit involving vast numbers of litigants, some of them, for a variety of reasons, may ultimately fail to take part in the distribution."); *Brown*, 2014 U.S. Dist. LEXIS 161036, at *23-24.

18

As a practical matter, the district court believed the almost nonexistent material "variation" between product labels of Class products and non-Class products, along with the unlikelihood that any purchasers of Hunt's canned tomato products during the Class Period would have retained their receipts, precluded the acceptability of affidavits to prove class membership. ER22-23. This Brief has already shown any label variation does not bar class certification, and the same is true for the absence of receipts. In reality, the logical extension of any rule requiring retention of receipts, or similar records, is the "eviscerat[ion of] low purchase price consumer class actions." *McCrary*, 2014 WL 1779243, at *8. Such a result[1] is absolutely inconsistent with what the Supreme Court has identified as the "very core" of class actions: Elimination of "the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (quotation omitted). Artificial imposition of a "receipt" requirement contravenes the text of Rule 23 and the policy underlying the Rule. *See Id.* ("[T]he Advisory Committee [for Rule 23] had dominantly in mind vindication of the rights of

---

[1] Indeed, the judicial trend toward things like the requirement of receipts has caused some factions to celebrate that "the viability of consumer class actions is in question." Erin Rhinehart, *Third Circuit Decision Gives Ascertainability Argument Teeth*, Faruki Ireland & Cox P.L.L. (Aug. 22, 2013, 3:50 p.m.), http://businesslitigationinfo.com/class-action/archives/1450/#more-1450.

groups of people who individually would be without effective strength to bring their opponents into court at all." (quotation omitted)).

Jones proposed a Class defined with reference to objective criteria. If there is a separate ascertainability requirement, he has met it. This Class of consumers satisfies the text of Rule 23, and it is well within the bounds of classes approved by this Court. *See, e.g., Hilao v. Estate of Marcos*, 103 F.3d 767, 774 (9th Cir. 1996) (affirming certification of class defined to include, among others, those who had "disappeared"). The Class is ascertainable, and it was error for the district court to have concluded otherwise.

**B.    The District Court Committed Error By Concluding The Proposed Class Did Not Qualify For Certification Under Rule 23(b).**

After determining the Class satisfies all the prerequisites of Rule 23(a), the district court proceeded to an analysis of the Rule 23(b) categories. Jones sought certification under both Rule 23(b)(2) and 23(b)(3), but the district court held the proposed Class does not pass muster under either subsection. The district court was in error.

1.    Rule 23(b)(3)

Rule 23(b)(3) allows certification of a class if "questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods

for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Class actions of this character, in other words, must exhibit "predominance" and "superiority." The district court erroneously decided the proposed Class possesses neither.

> a. The District Court Committed Reversible Error When It Held Individual Issues Predominate With Respect To Hunt's Tomato Products Labeled "100% Natural" or "Free Of Artificial Ingredients & Preservatives."

The Rule 23(b)(3) predominance inquiry" is meant to "tes[t] whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.,* 521 U.S. at 623. It focuses on the relationship between the common and individual issues, requiring the common issues be qualitatively substantial in relation to the issues peculiar to individual class members. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998). This Court has held "there is clear justification for handling the dispute on a representative rather than an individual basis" if "common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication . . . ." *Hanlon*, 150 F.3d at 1022. Moreover, the Supreme Court has held "[p]redominance is a test readily met in certain cases alleging consumer . . . fraud." *Amchem*, 521 U.S. at 625.

As recognized by the Supreme Court in *Amchem*, the Advisory Notes to Rule 23 confirm the predominance test is met in consumer class actions like this

one where there was a common misrepresentation made to each class member. *Id.* (referencing Fed. R. Civ. P. 23(b)(3), Advisory Notes to the 1966 Amendments (providing as an example regarding predominance a "fraud perpetrated on numerous persons by the use of similar misrepresentations . . . despite the need, if liability is found, for separate determination of the damages suffered by individuals within the class")).

In this case, where the class was defined to only include tomato products containing the same identical "100% Natural" and "free of artificial ingredients & preservatives" claims, common issues existed and predominated.[2] In fact, the district court correctly found the requirement of commonality was satisfied for the proposed class of people who purchased Hunt's tomato products labeled "100% Natural" or "free of artificial ingredients & preservatives." ER14. The Court's finding was in line with the facts and Defendant did not dispute commonality in the face of Plaintiffs' assertions there were "numerous common issues of law and fact such as whether the '100% Natural' and 'free of artificial ingredients &

---

[2] The only products at issue were canned tomato products that varied only by how they were prepared (*e.g.* whole tomatoes, diced tomatoes, stewed tomatoes etc.) and spiced (*e.g.* with oregano or without). All class products bore the exact same false, misleading and illegal statements as those purchased by the proposed class representative and all contained the same unnatural chemical preservatives (citric acid and/or calcium chloride). ER150-151, 701-711, 1072, 1074-1075.

preservatives' labels are unlawful, unfair, deceptive or misleading when affixed to products containing citric acid and/or calcium chloride." *Id.*

Despite recognizing the existence of common issues capable of satisfying Rule 23(a)(2)'s commonality requirement, the district court improperly found individual issues predominated over the common issues and denied certification in part on that basis. ER30-35, 48. Because the purported individual issues identified by the Court are actually 1) common issues misperceived as being individual issues by the district court, or 2) issues this Court has held to be an improper basis for denying certification, or 3) issues that can only exist if one ignores the binding authority that governs class actions such as this one, the district court's belief individual issues predominated over common issues finding cannot withstand scrutiny.

> i. Pursuant To This Court's Precedent, Individual Reliance Issues Do Not Predominate Over Common Issues

The district court erroneously held individual issues concerning the class members' reliance on the "100% natural" claim would predominate because while the challenged "100% natural" labeling claims might be "facially uniform, consumer's understanding of those representations would not be.'" 229:29.[3] The

---

[3] The district court did not analyze whether there were any individualized issues with regard to the challenged "free of artificial ingredients & preservatives"

district court's approach ignores the fact that California courts have repeatedly and consistently held relief under the UCL is available without individualized proof of deception, reliance and injury. *Gutierrez v. Wells Fargo Bank, NA*, 2014 U.S. App. LEXIS 20892 at *4 (9th Cir. Oct. 29, 2014) (unpublished); *see also In re Tobacco II Cases*, 46 Cal. 4th 298 (2009)). Rather, a plaintiff can recover "any property that 'may have been acquired by means of' a defendant's false or misleading statements." *Gutierrez*, 2014 U.S. App. LEXIS 20892 at *4 (quoting Cal. Bus. & Prof. Code § 17203).

The district court's views on class-wide reliance issues were expressly rejected by this Court in *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013 (9th Cir. 2011), when the Court reversed the denial of certification in a case where the lower court had denied certification on the same basis when the lower court found individual issues of reliance predominated. The Court reaffirmed "the California rule 'that "that relief under the UCL is available without individualized proof of deception, reliance and injury.'" *Id.* at 1020 ("We do not, of course, suggest that predominance would be shown in every California UCL case. For example, it might well be that there was no cohesion among the members because they were exposed to quite disparate information from various representatives of the defendant."). Here the class had cohesion as all Class Members were exposed to

---

claim. As such, there was no stated reason for denying certification on predominance grounds for this claim.

24

the exact same labeling misstatements by the same Defendant and such misstatements were delivered through Defendant's uniform labeling practices and not various representatives. As such, this case does not fall outside the general predominance rule identified in *Stearns*.

Because the reliance of class members is not relevant for UCL and FAL claims and will be presumed for CLRA claims where the statements are material[4], the district court's denial of certification based on the possibility some class members might not have relied on the "100% Natural" labeling statements or might have relied on them in a different manner, or to a lesser degree, was an abuse of its discretion and should be reversed.

ii. Pursuant To This Court's Precedent, Materiality Is A Common Issue And Thus Individual Materiality Issues Do Not Predominate Over Common Issues

The district court appeared to incorrectly believe materiality was an individual issue that varies from consumer to consumer, and thus is not a common question. However, as repeatedly held in opinions by courts certifying classes of consumers misled by false and misleading "natural" claims, "[t]he law is to the contrary" and whether a natural claim is material to the class is a common question and not an individual issue. *Werdebaugh v. Blue Diamond Growers*, 2014 U.S.

---

[4] As discussed *infra*, whether a statement is material is a common question to be answered and not an individual issue.

Dist. LEXIS 71575, at *44-51 (N.D. Cal. May 23, 2014); *Brazil v. Dole Packaged Foods, LLC*, 2014 U.S. Dist. LEXIS 74234, at *22-29 (N.D. Cal. May 30, 2014).[5]

Moreover, UCL, FAL, and CLRA claims depend on whether the claims at issue are unlawful, unfair, deceptive, or misleading to "reasonable" consumers, which is an objective standard rendering the subjective views of individual class members irrelevant. *Id.* As such, other courts have specifically rejected all of the materiality concerns raised by the district court and have certified classes in "all natural" cases after analyzing and rejecting arguments that individual materiality issues arose 1) if class members had differing understanding of the term natural[6] or 2) if class

---

[5] It is worth noting the *Astiana* case relied on by the court as an example of the denial of class certification in an "all natural" food labeling case actually certified a class of consumers deceived by "all natural" claims on products containing unnatural ingredients. *See Astiana v. Kashi Co.*, 291 F.R.D. 493, 510 (S.D. Cal. 2013) (certifying "California "All Natural" Class: All California residents who purchased Kashi Company's food products on or after August 24, 2007 in the State of California that were labeled "All Natural" but which contained one or more of the following ingredients: Pyridoxine Hydrochloride, Calcium Pantothenate and/or Hexane-Processed Soy ingredients.")

[6] While the district court ignored the fact, the presence of the unnatural chemical preservatives in Hunt's tomato products would have violated any definition of the term "natural" used by Plaintiff or reasonable consumers and cited by the district court. ER34n.30. It would have violated the "no added chemicals" and "just the tomato" definitions used for tomatoes by Sturges; the "only contains ingredients that come from nature" definition by Jones, and the "non-processed" definition used by Ozzard, as well as the definitions of the term "natural" used by the USDA and the FDA. It would also violate dictionary definitions of the word "natural" and the definitions of natural food used in various regulations. *See e.g.* 105 CMR 520.116 (""Natural food"" means food which in its processing has not been treated with preservatives …").

members had different purchasing motivations aside from a desire for "all natural" products. *Id.*

The *Blue Diamond* decision detailed and rejected each of the materiality concerns raised by the district court. Specifically, the food manufacturer in *Blue Diamond* argued that what is material varies from consumer to consumer and class members may have purchased the subject products for any number of reasons. *Werdebaugh*, 2014 U.S. Dist. LEXIS 71575, at *44. The court rejected that argument, stating that a "plaintiff can establish that a misrepresentation is material and thus violative of the consumer protection laws at issue in this case by showing that 'a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question.' " *Id.* at 44-45 (citing *In re Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 157, 104 Cal. Rptr. 3d 329 (2010)). The court also held that materiality "does not depend on the subjective motivations of individual purchasers, and the particular mix of motivations that compelled each class member to purchase the products in the first place is irrelevant." *Id.* at 45 (citing *Ries v. Ariz. Bevs. United States LLC*, *Hornell Brewing Co.*, 287 F.R.D. 583, 537 (N.D. Cal. 2012); *Mazza*, 666 F.3d at 589; *Hanlon*, 150 F.3d at 1019-22; *In re Ferrero Litigation*, 278 F.R.D. 552, 558 (S.D. Cal. 2011)). Thus, the *Blue Diamond* court found that materiality was a question common to the class, "the resolution of which 'will resolve an issue that is central

27

to the validity of each of the claims in one stroke.'" *Id.* at 46 (citing *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2545 (2011)). Further, the court decided that if Plaintiff proved that the subject labeling claims were material, "he will have established a presumption of reliance as to the entire class as well." *Id.* (citing *Occidental Land, Inc. v. Super. Ct.*, 18 Cal. 3d 355, 363, (1976)); *In re Tobacco II Cases*, 46 Cal. 4th 298, 326-28 (2009)). The *Blue Diamond* court also rejected the food manufacturer's arguments that the deceptive labeling statements were not specifically regulated and therefore not material under *Kwikset*. *Id.* at 46-47. The court stated that it "only need find that materiality of the label statements is a question common to the class." *Id.*

Finally, the *Blue Diamond* court rejected the manufacturer's argument that the "All Natural" was not "susceptible to common proof" because "All Natural" has no common definition. *Id.* at 47. In analyzing the Vioxx case, the court stated that "even though materiality is an objective standard, the individualized nature of prescribing a drug precluded materiality from being a question common to the class." *Id.* at 48. The court cited other cases that "generally involve representations that differ for each proposed class member or unique individual decisions." *Id.* at 49 (citing *Kaldenbach v. Mut. of Omaha Life Ins. Co.*, 178 Cal. App. 4th 830, 846-47 (2009); *Fairbanks v. Farmers New World Life Ins. Co.*, 197 Cal. App. 4th 544, 562-65, (2011); *In re Yasmin & Yaz (Drospirenone) Mktg.,*

28

*Sales Practices & Products Liab. Litig.*, 2012 U.S. Dist. LEXIS 33183, 2012 WL 865041, at \*20 (S.D. Ill. Mar. 13, 2012)). The *Blue Diamond* court distinguished food labeling cases from pharmaceutical cases because there were "specific alleged misrepresentations common to the class," including "All Natural" label statements. *Id.* Indeed, food manufacturers do "not make individualized representations to proposed class members, nor did proposed class members likely rely on the advice of a doctor or any other professional" in purchasing the products at issue. *Id.* The *Blue Diamond* court concluded that "the objective inquiry into whether 'a reasonable consumer would attach importance' to Blue Diamond's label statements is a question common to the class." *Id.* at 50 (citing *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013)).

That a large number of factors may have gone into each consumer's decision to purchase Defendants' products is immaterial given the objective materiality of the alleged misrepresentations. *See, e.g., Stearns*, 655 F.3d at 1020; *Mass. Mut. Life Ins. Co. v. Superior Court*, 97 Cal. App. 4th 1282, 1292 (2002). Accordingly, the particular circumstances under which each individual purchase was made cannot "transform the common question" of whether the alleged misrepresentations were objectively material "into a multitude of individual ones." *Mass. Mut. Life Ins.*, 97 Cal. App. 4th at 1292.

29

The district court also improperly found the merits-based question of whether citric acid and calcium chloride were natural to be an individual issue when, in fact, it is a common issue relevant to the whole class. This common question also applies to the following separate common issues: 1) whether Defendant's "100% natural" claim was false and misleading; 2) whether Defendant's labeling was false and misleading in any particular; and 3) whether Defendant's products were unlawful or misbranded due to false and misleading labeling. Besides being a common issue, this merits- based question is improper for determination at the class certification stage. "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage*." Amgen Inc. v. Conn. Ret. Plans & Trust Funds,* 133 S. Ct. 1184, 1194-95 (2013). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether Rule 23 prerequisites for class certification are satisfied." *Id*. at 1195.

To the extent that this merits-based question was appropriate for determination at this stage, the district court was obliged to give deference to the FDA's interpretation of its own regulations (regulations adopted by California and incorporated as California law) that 1) it is false and misleading to use the term "natural" to describe tomato products which contain the chemical preservatives citric acid and calcium chloride and 2) doing so misbrands such tomato products.

30

The FDA issued a warning letter to another canned tomato manufacturer for the exact same practices at issue here. ER849-850, 905-906. The district court was required to give deference to such agency interpretation.

This Court has stated: "We give wide deference to an agency's reasonable interpretation of its own regulation." *Pub. Lands for the People, Inc. v. United States Dep't of Agric.*, 2012 U.S. App. LEXIS 20175 (9th Cir. 2012). ("[W]here an agency interprets its own regulation, even if through an informal process, its interpretation of an ambiguous regulation is controlling under *Auer* unless 'plainly erroneous or inconsistent with the regulation.'" (quoting *Bassiri v. Xerox Corp.*, 463 F.3d 927, 930 (9th Cir. 2006))).

Because materiality is a common issue and not an individual issue it cannot prevent class certification on predominance grounds. As such, the district court abused its discretion by denying class certification based on materiality issues. Its class certification denial should therefore be reversed.

> iii. The "Individualized Purchasing Inquiries" Identified by the District Court are Merely Improper Individualized Damage Issues that are not a Proper Basis for Denying Class Certification

The amount of damages "is invariably an individual question and does not defeat class action treatment." *Leyva v. Medline Indus.*, 716 F.3d 510, 513-14 (9th Cir. 2013); *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975)(same). *Leyva* makes clear that "[i]n this circuit . . . damage calculations alone cannot defeat

31

certification," remarking that "the Supreme Court clarified in [*Wal-Mart Stores, Inc. v.*] *Dukes* [131 S. Ct. 2541 (2011)] that 'individualized monetary claims belong in Rule 23(b)(3).' Thus, the presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3)." *Leyva* at 513-14; *see also Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1167 (9th Cir. 2014) ("In this circuit, *Leyva* is the controlling case") (citation omitted).

Notwithstanding this line of binding authority, the district court improperly denied class certification based on the purported presence of individualized damage issues, although the district court called them "individualized purchasing inquiries." ER34-35. In particular, the district court felt that individual issues predominated because the Court would need to determine "how many" class products each class member purchased and "which kind" of class products each class member purchased. Because all class products bore the same labeling claims throughout the class period and every class member would have to have bought at least one improperly labeled product to be a class member, the issues identified by the Court do not go to issues of liability, materiality, or reliance, but rather to individual damages issues. The only relevance of these "individualized purchasing inquiries" is to calculate the individual damages suffered by particular class members. Allowing such issues to defeat class certification runs afoul of *Leyva* and its progeny and Rule 23. *See* Fed. R. Civ. P. 23(b)(3) Advisory Committee's Note

("[A] fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action, and it may remain so despite the need, if liability is found, for separate determination of the damages suffered by individuals within the class."); 2 William B. Rubenstein, *Newberg on Class Actions* § 4:54, at 205 (5th ed. 2012) (ordinarily, "individual damage[s] calculations should not scuttle class certification under Rule 23(b)(3)"). When, as here, adjudication of questions of liability common to the class will achieve economies of time and expense, the predominance standard is generally satisfied even if damages are not provable in the aggregate.

The district court's third individualized purchasing inquiry was "who" purchased each class product. This is simply an improper demand for all class members to be identified by name prior to class certification. The district court opinion confuses the requirement that a class definition must be clear, and in that sense "ascertainable," with the notion that individual class members must be identifiable at the class certification stage—a notion entirely divorced from the text and purposes of Rule 23. This doctrinal error threatens to render the class action procedure unavailable in the very small-value consumer cases that necessitated Rule 23 in the first instance. *See, e.g.*, Judith Resnik, *From "Cases" to "Litigation,"* 54 LAW & CONTEMP. PROBS. 5, 14 (1991) (explaining that Benjamin Kaplan, a primary drafter of Rule 23, believed the rule "provide[d]

33

means of vindicating the rights of groups of people who individually would be without effective strength to bring their opponents into court at all."). In fact, Rule 23 itself assumes that in a b(3) class not "all [class] members . . . can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).[7]

Because individualized damage issues cannot prevent class certification, even if they are called something else like "individualized purchasing inquiries," the district court abused its discretion by denying class certification based on individualized damage issues, and its class certification denial should therefore be reversed.

> b. The District Court Erroneously Concluded the Class Lacks Predominance for Failure to Meet the *Comcast* Damages Inquiry

Despite the well-settled law that a court has broad discretion to award restitution, and the equally well-settled law that a putative class plaintiff need not be able to determine damages with exactness at the class certification stage, the

---

[7] The district court itself seemed confused as to whether this was a predominance issue at all stating "[w]hether this is a predominance question, an ascertainability question, or a manageability question, it is also the case here that "ConAgra has no way to determine, through IRI data or otherwise, who the purchasers of its canned tomato products are, i.e., the identity of class members." ER35. Ascertainability and manageability issues are dealt in separate sections of this brief. The district court was right to be confused, as the issues it identified as being predominance questions are either common issues or issues that are irrelevant to the question of predominance.

district court held this class did not meet the requirements of *Comcast* for certification under Rule 23 (b)(3).

The District Court erred by imposing the requirements of *Comcast v. Behrend*, 133 S. Ct. 1426, 1433-34 (2013) upon Jones' motion for certification, by requiring a detailed damages analysis at class certification stage, and for rejecting certification on the basis of damages. *See* ER39-42. Further, to the extent *Comcast* is applicable, Jones met the requirements through his detailed expert declarations, which present a method for determining damages.

> i. The District Court Committed Error by Requiring Jones to Demonstrate Damages with Precision and in Conflating Damages with Restitution

Under California law, a class action plaintiff is only required provide a reasonable estimate of damages. *Vaccarino v. Midland Nat'l Life Ins. Co.*, 2014 U.S. Dist. LEXIS 18601, 35-36 (C.D. Cal. Feb. 3, 2014) ("*Comcast* did not authorize federal courts to rewrite state substantive laws of damages. Here, California "law requires only that some reasonable basis of computation of damages be used, and the damages may be computed even if the result reached is an approximation.").

The district court erred in failing to apply this rule. The extent of that error is magnified in this situation, where Jones seeks class relief in the form of restitution (by definition, distinct from damages) under the UCL and FAL. California law is

well settled that trial courts have broad discretion to fashion an appropriate remedy under the UCL for Defendant's unlawful and misleading label practices. *See, e.g.*, *Zhang v. Superior Court*, 57 Cal. 4th 364, 371 (2013); *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 700 (2006). Jones' expert has proffered viable and sound methods of determining an appropriate award of restitution to the class and/or for a jury to award damages. The California Supreme Court has held "[t]he object of restitution is to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1149 (2003). Here, Jones seeks restitution for the funds in which Jones and the class have an ownership interest. This restitution claim is consistent with controlling California authority.[8]

Variation among class members in their motivation for purchasing the product, the factual circumstances behind their purchase, or the price they paid does not defeat the relatively "minimal" showing required to establish commonality. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1120 (9th Cir. 1998). It is immaterial as concern's Jones' claims—California state law claims—as injunctive and restitutionary relief under the UCL and FAL "is available without individualized proof of deception, reliance, and injury." *Ries*, 287 F.R.D. at 538

---

[8] Under the rule of *Madrid v. Perot Sys. Corp.*, 130 Cal. App. 4th 440, 453 (2005) and *Feitelberg v. Credit Suisse First Bos., LLC*, 134 Cal. App. 4th 997, 1016 (2006), the district court may return what was taken from the class.

(citing *Tobacco II*, 46 Cal. 4th at 320).

The district court failed to recognize "restitution" and "damages" are not the same. Akin to the holding in *Vaccarino* discussed *supra*, *Comcast* did not and could not rewrite the remedies available under state substantive laws. Here, it did not rewrite the UCL and FAL by requiring precise proof of damages rather than the restitutionary relief available under California statutes.

Restitution and damages are two distinct remedies. Restitutionary relief has two purposes: "returning money unjustly taken from the class, and deterring the defendant from engaging in future violations of the law." *Guido v. L'Oreal*, 2013 U.S. Dist. LEXIS 94031, at *36 (C.D. Cal. 2013); *see also Korea Supply*, 29 Cal. 4th at 1149 (the purpose of restitution is "to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest."); *see also Ries*, 287 F.R.D. at 532 (following *Korea Supply*'s holding). "A court awarding restitution under the California consumer protection laws has 'very broad' discretion to determine an appropriate remedy award as long as it is supported by the evidence and is consistent with the purpose of restoring to the plaintiff the amount that the defendant wrongfully acquired.'" *Astiana v. Kashi*, 291 F.R.D. 493, 506 (C.D.Cal.2013) (quoting *Wiener v. Dannon Co.*, 255 F.R.D. 658, 670-71 (C.D. Cal. 2009)).

The district court ignored both that it possessed "broad discretion" for a

restitution award and Jones was not required at class certification to demonstrate an exact measure of damages sustained by the class.

As alleged by Jones, ConAgra manufactured misbranded products and sold them to wholesalers, who in turn sold the products to retailers, with ConAgra intending the products ultimately to be purchased by Jones and the class. Equity supports, and the UCL and FAL present as a remedy here, an award of restitution equal to the amounts received by ConAgra from the sale of the misbranded products. Common issues predominate in the analysis of restitution in this sense because the Court need review only the transactions between ConAgra and its wholesaler(s), and Jones can readily provide that information. *See* ER731-733. Whatever amount ConAgra made from those transactions should be returned to Jones and the class. There are no individualized issues for the Court to consider. This measure of restitution has ample support in case law.

The Court in *Korea Supply Co.* stated, "[W]hile restitution was an available remedy under the UCL, disgorgement of money obtained through an unfair business practice is an available remedy in a representative action only to the extent that it constitutes restitution." *Korea Supply Co.*, 29 Cal. 4th at 1145. Jones and the class had an ownership interest in those funds and can, hence, recover them. *Id.* at 1149. "Disgorgement is available to the extent it is restitutionary." *Johns v. Bayer Corp.*, 2012 U.S. Dist. LEXIS 60121, 12 (S.D. Cal. Apr. 30, 2012).

38

The California Supreme Court recognized in *Kwikset* that consumers are economically harmed when they are misled into purchasing products they would not have otherwise purchased, which can render the product worthless. *Kwikset Corp. v. Superior Court,* 51 Cal. 4th 310, 329-30 (2011) ("For each consumer who relies on the truth and accuracy of a label and is deceived by misrepresentations into making a purchase, the economic harm is the same: the consumer has purchased a product that he or she paid more for than he or she otherwise might have been willing to pay if the product had been labeled accurately. This economic harm—the loss of real dollars from a consumer's pocket—is the same whether or not a court might objectively view the products as functionally equivalent.").

Several cases have held misbranded food is contraband, not merchantable, and has no value. For example, the Eighth Circuit in *Myers v. Malone & Hyde, Inc.*, 173 F.2d 291, 295 (8th Cir. 1949), found misbranded food products breached the implied warranty of merchantability because "being misbranded they were subject to confiscation by the United States and could not be legally held or sold by the buyer. They were contraband under the law of the United States and as such they were not merchantable." *Id*.; *see also Porter v. Craddock*, 84 F. Supp. 704, 710 (D. Ky. 1949).

Other courts have held, because it cannot be sold, misbranded or adulterated food is worthless as a matter of law and has a fair market price of zero. *See United*

39

*States v. Gonzalez-Alvarez*, 277 F.3d 73, 77-78 (1st Cir. 2002) (holding "where a product cannot be sold lawfully it has a value of zero for the purpose of calculating loss under U.S.S.G. § 2F1.1(b)(1). … Where a product has a value of zero as a matter of law, but consumers pay for the product as if it had value, the buyers have been robbed of the benefit of their bargain. Consumers have every reason to believe that the milk they buy … meets with all FDA ….regulations. Where the milk does not meet these standards, as a result of a defendant's conduct, the consumers suffer an actual loss and the defendant is responsible for that loss."); *see also United States. v. Santana-Mendoza*, 29 Fed. App'x 613 (1st Cir. 2002).

The First Circuit's reasoning has been adopted by numerous courts, which hold misbranded products are worthless and have a fair market value of zero. *United States v. Bhutani*, 266 F.3d 661, 670 (7th Cir. 2001): *United States v. Marcus*, 82 F.3d 606, 610 (4th Cir. 1996); *United States v. Milstein*, 401 F.3d 53, 74 (2d Cir. 2005). Similarly, California courts award the full purchase price to someone sold a product that is illegal to sell. *De La Hoya v. Slim's Gun Shop*, 80 Cal. App. 3d Supp. 6 (1978). These decisions recognize consumers like Jones who purchase misbranded products that are illegal to sell or hold have been injured because they were sold a worthless product. In such a case a restitution/damage model based on net sales would be appropriate as purchasers of worthless products are entitled to a complete refund. Given that the subject products are worthless,

full disgorgement and refund of the purchase price are recoverable as restitution. The misbranded products at issue in this case have no value.

Even if the products were deemed to have some value, a restitution model based on ConAgra's net sales of the product would still present a viable method for estimating monetary relief for purposes of class certification. *See Foster Poultry Farms, Inc. v. SunTrust Bank*, 2008 U.S. Dist. LEXIS 36595 (E.D. Cal. May 2, 2008) (holding "net profit, [is] the generally accepted measure for the equitable remedy of disgorgement damages"); *County of San Bernardino v. Walsh*, 158 Cal.App.4th 533, 542 (2007) ("It is not essential that money be paid directly to the recipient by the party seeking restitution. The emphasis is on the wrongdoer's enrichment, not the victim's loss. In particular, a person acting in conscious disregard of the rights of another should be required to disgorge all profit because disgorgement both benefits the injured parties and deters the perpetrator from committing the same unlawful actions again. Disgorgement may include a restitutionary element, but it 'may compel a defendant to surrender all money obtained through an unfair business practice . . . regardless of whether those profits represent money taken directly from persons who were victims of the unfair practice. Without this result, there would be an insufficient deterrent to improper conduct that is more profitable than lawful conduct.").

41

Further, restitution is not – as the district court improperly held, *see* ER40, – limited to the difference between what Jones received versus what he paid. As one California appellate court held, "[t]he object of restitution is to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest." *Korea Supply Co. v. Lockheed Martin Corp.,* 29 Cal. 4th 1134, 1148 (2003) (UCL case); *see also In re Vioxx Class Cases,* 180 Cal. App. 4th 116, 130 (2010) (restitution available under FAL). Restitution is, however, "broader than simply the return of money that was once in the possession of the person from whom it was taken…." *Juarez v. Arcadia Financial, LTD.*, 152 Cal. App. 4th 889, 915 (2007). "Ordinarily, the measure of restitution is the amount of enrichment received ..., but as stated in Comment e, if the loss suffered differs from the amount of benefit received, *the measure of restitution may be more or less than the loss suffered or more or less than the enrichment.*" *Id.* (quoting RESTATEMENT OF RESTITUTION § 1, cmt. a) (emphasis added)).

California law is consistent with Comment "e" to the Restatement of Restitution:

> In other situations, a benefit has been received by the defendant but the plaintiff has not suffered a corresponding loss or, in some cases, any loss, but nevertheless the enrichment of the defendant would be unjust. In such cases, the defendant may be under a duty to give to the plaintiff the amount by which he has been enriched.

RESTATEMENT OF RESTITUTION, § 1, cmt. e, p. 14 (emphasis added). This Court agrees with that application. It has held once a defendant is found liable for deceptive acts or practices "[w]e would not limit their recovery to the difference between what they paid and a fair price for [the product]. The seller's misrepresentations tainted the customers' purchasing decisions. If they had been told the truth, perhaps they would not have bought [the product] at all or only some." *FTC v. Figgie Int'l*, 994 F.2d 595, 606 (9th Cir. 1993)

Recently, in its Order certifying a 23(b)(3) class of consumers who purchased Avalon Organics and Jason cosmetic products labeled as "organic" when they contained insufficient organic content to lawfully make such claims, the court in *Brown v. Hain Celestial Group*, 2014 U.S. Dist. LEXIS 161036 (N.D. Cal. Nov. 14, 2014) analyzed plaintiff's two damages models from Plaintiff's damages expert Stephen F. Hamilton's declaration. The first model "is a restitutionary measure that calculates the amount of revenue and profit Hain Celestial has wrongfully gained from sales of its [allegedly] mislabeled products," while the second calculates the "overcharge" or "price premium" consumers were charged for the claimed "organic attribute" of the challenged Hain products. *Id.* at *53-54.

Based on these two proposed models, the court concluded "the plaintiffs have adequately shown that damages can be calculated on a class-wide basis. Hamilton's methods are both tied to the plaintiffs' liability theory within the

meaning of *Comcast*; his models calculate the excess profits that Hain made in consequence of its (allegedly false) claim that the products in question were organic. Moreover, consistent with *Comcast* and *Jimenez*, Hain will be able to present any defenses that it might have to individual claims at the damages phase of this proceeding." *Id*. at *55-56.

Further, the Court held it is not fatal to class certification that Plaintiff did not perform the calculations outlined by the proposed damages models. Jones submitted with his motion for certification the declaration of his monetary recovery expert—Dr. Oral Capps, Jr.—whose Declaration demonstrates that an appropriate award of restitution *or* damages can be measured using common evidence to result in a monetary remedy for the class. *See* ER729-738. That Declaration explains restitution may be awarded using average retail prices, average wholesale prices, or using a "benefit of the bargain" approach. ER731-736.[9] That information for the

---

[9] To illustrate the use of comparable products in implementing the "benefit of the bargain" approach, Dr. Capps' Declaration includes an analysis of the price of a comparable product for Hunt's canned tomato sauce. On February 4, 2014, at the Safeway Kitchens in San Jose, California, Hunt's canned tomato sauce labeled "100% Natural" and "Free of artificial ingredients & preservatives" in a 15 oz. can, containing citric acid as an ingredient, sold for $1.49 or 9.9 cents per ounce. Safeway Kitchen 15 oz. canned tomato sauce labeled "100% Natural" (but not containing citric acid and not labeled "Free of artificial ingredients & preservatives") was less expensive, selling for $0.99 or 6.6 cents per ounce. The price difference amounts to 3.3 cents per ounce. Put another way, this price difference is tantamount to an overcharge of approximately 33.6%. *See* ER734.

measurement would be based on average retail or wholesale prices for the products, sales numbers, units sold, and prices. *Id.* In addition to the benefit of the bargain approach, Dr. Capps presents a "regression analysis," which determines the value of the misbranding label statements based on comparable products and variables analyzed to determine that value of the comparable product as determined by those independent variables. ER735-737.

Through those methods, Jones presented the Court with (1) a full refund model that complies with the discretionary restitution analysis; (2) a benefit of the bargain analysis; and (3) a specific regression analysis. The Court's rejection of those three methodologies imposed requirements not imposed in law. These forms of restitution are available under the UCL and FAL. Moreover, Jones need not present a precise monetary remedy determination, and individual differences in the amount of damage suffered by class members does not defeat certification. The district court's inherent conflation of "restitution" with "damages," resulted in the court's erroneous finding that Jones did not meet the predominance requirement with respect to damages.

ii.  Restitution and Benefit of the Bargain Present Viable Methods for Class Certification That Meet *Comcast* Assuming *arguendo* it Applies

Dr. Capps also provides a sound method that supports class-wide damages

_____

By utilizing comparable products, the "benefit of the bargain" rule is relatively easy to implement.

for Jones' claims under the UCL and FAL (for restitution) and under the CLRA for damages. Any specificity requirements imposed by the law are met by that methodology.

In *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2013 WL 5429718, *22 (N.D. Cal. June 20, 2013), Judge Samuel Conti, applying the holding of *Comcast*, held courts "have never required a precise mathematical calculation of damages before deeming a class worthy of certification." (citing *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 535 (6th Cir. 2008)). Indeed, *Comcast* did not articulate any requirement that a damage calculation – as opposed to a proposed method – be performed at the class certification stage. Despite that legal precedent, the district court improperly imposed a *de facto* requirement of a full damage calculation at the class certification stage. In doing so, the district court erred.

This conclusion is supported by the decision in *In re High-Tech Emp. Antitrust Litig.*, 2013 WL 1352016, at *28-29 (N.D. Cal. Apr. 5, 2013), where, after discussing the *Comcast* decision, the court did not require plaintiffs' expert to have performed a damage calculation at the class certification stage. As a result, Judge Conti held *Comcast* had no application as to the damage analysis in *In re: Cathode Ray Tube (CRT) Antitrust Litig.*

As other courts have recognized, "the issue at class certification is not which expert is the most credible, or the most accurate modeler, but rather have the

plaintiffs demonstrated there is a way to prove a class-wide measure of damages through generalized proof*." In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 256 F.R.D. 82, 100 (D. Conn. 2009). Under the growing body of case law, Jones is not required to "prove the merits of [his] case-in-chief at the class certification stage." *Id*. at 101. Jones has presented several methods to show restitution and damages through generalized proof, including the restitution analysis.

In *Bazemore v. Friday*, 478 U.S. 385 (1986) (*per curiam*), the Supreme Court set out the standards for evaluating regression analysis. Justice Brennan, in a concurrence joined by every member of the Court, stated as long as a regression analysis includes variables accounting for the "major factors" bearing on it, lesser quarrels will go to "the analysis' probativeness, not its admissibility." *Id*. at 400.

Here, Jones' expert presents the methodology of his regression analysis, and the variables he would employ for his analysis; he also indicates the data he would use to obtain his results, being the Information Resources, Inc. data concerning the variables consisting of the total sales data, the wholesale data, volume of sales, prices, regional and nationwide units sold, advertising expenditures, dates claims were on the products, disposable and personal income of consumers and population. ER735-737. Dr. Capps also details how he would use dummy variables to indicate the existence, *vel non*, of a health claim on the ConAgra and

47

comparative products. ER736. As such, the district court's indication Dr. Capps did not provide information of the data he would rely upon or the variables he would use, ER42, is simply inaccurate. Likewise, given that exact measures of damages are not needed at class certification, the district court also erred in its application of the law.

Regression analysis is a "mainstream tool in economic study." *In re High-Tech Emp. Antitrust Litig.*, 2014 U.S. Dist. LEXIS 47181, 58. Courts in this Circuit have allowed experts to use hedonic regression models to show damages. *See In re Cathode Ray Tube Antitrust Litig.*, 2013 U.S. Dist. LEXIS 137944 at * 88-89; *In re Toyota Motor Corp. Hybrid Brake Mktg.*, 2012 U.S. Dist. LEXIS 151559, 18-19 (C.D. Cal. Sept. 20, 2012).

The regression analysis proposed by Jones through his expert presented a viable method of ultimately calculating the monetary recovery due to the class (whether through restitution or damages). This analysis meets *Comcast,* which would apply to the CLRA claims, and it certainly meets the discretionary requirements for restitution available under the UCL and FAL. The district court's rejection of that model also constitutes error.

   c. The District Court Erroneously Concluded a Class Action is not Superior to Thousands of Individual Actions (or no Litigation at all) for the Adjudication of this Controversy

ConAgra did not contest Jones' ability to demonstrate the superiority element of Rule 23. However, the district court *sua sponte* addressed the issue. The district court acknowledged the thought of "individual actions" pursuing relief against ConAgra poses "significant problems," and it reflected "[i]t is hard to imagine many class members actually pursuing individual cases." ER48n.44. The district court nonetheless relied on its same mistaken beliefs about ascertainability to reason the class falls short of demonstrating the superiority of the case proceeding as a class action. ER47-48. Apparently the district court mistakenly believed that there is no "adequate means of identifying each class member, which products each class member purchased, and how many products each class member purchased." ER47. However, class member affidavits are a routinely accepted method of proving class membership and amount of damages, *See, e.g., Hilao v. Estate of Marcos*, 103 F.3d 767, 786-87 (9th Cir. 1996); *Brown v. SCI Funeral Servs. of Fla., Inc.*, 212 F.R.D. 602, 606 (S.D. Fla. 2003) ("The mere fact that class members will have to file a claim form or affidavit stating whether and when they were provided with pertinent disclosures does not preclude the application of class treatment."); *Ramos v. Philip Morris Cos.*, 743 So. 2d 24, 29-30 (Fla. Dist. Ct. App. 1999) (explaining an affidavit alleges facts "sufficient to

support class membership"); Alba Conte & Herbert B. Newberg, 3 *Newberg on Class Actions* § 10.12 (4th ed. 2002) ("A simple statement or affidavit may be sufficient where claims are small . . . .").

If needed, the district court has a number of management tools available to address distribution issues, including using a special master to review claims. *See, e.g., In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 141 (2d Cir. 2001). The Class meets the superiority requirement of Rule 23(b)(3).

> 2. Rule 23(b)(2): The District Court Committed Reversible Error When It Held Jones Lacked Standing To Pursue Claims For Injunctive Relief Under The UCL, FAL, And CLRA

Although Jones suffered sufficient injury to have standing for claims under the UCL, FAL, and CLRA for restitution and damages, the district court ruled he lacked standing to seek an injunction on behalf of the Class to enjoin ConAgra's ongoing violations of state and federal food labeling laws, which continue unabated. ER9-10, 26-28. The district court ruled because Jones "did not attest to having any intention of buying Hunt's products in the future," there was no danger of repeated injury to Jones, and therefore no standing. ER27-28. The district court's approach is wrong for several reasons.[10]

---

[10] Many courts that recognize an implied "ascertainability" requirement nonetheless "eschew the implied requirement of definiteness in Rule 23(b)(2) class actions." 1 Rubenstein, *supra*, § 3:7, at 175. The on-again, off-again nature of this judicially created "implied" requirement is further reason to foreclose its existence.

First, there is only a single standard for standing for class representatives for injunctive relief and damages/restitution under the UCL, FAL, or CLRA. Cal. Bus. & Prof. Code §§ 17203-04, 17535; Cal. Civ. Code § 1780. Thus, to the extent standing exists for UCL, FAL, and CLRA claims for restitution and damage, it should exist for claims for injunctive relief under those same statutes because the statutory standing requirements are the same.

Second, Jones has standing to pursue his claims for injunctive relief under a "statutory rights" or "statutory standing" theory. As recognized by the Supreme Court, the injury required by Article III can exist solely by virtue of "statutes creating legal rights, the invasion of which creates standing." *Warth v. Seldin*, 422 U.S. 490, 500 (1975) (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 617, n.3 (1973)). "Essentially, the standing question in such cases is whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Id*. Similarly, in *Edwards v. First American Corp.*, 610 F.3d 514 (9th Cir. 2010), this Court recognized the "'injury required by Article III can exist solely by virtue of statutes creating legal rights, the invasion of which creates standing.'" *Id*. at 516; *see also Robins v. Spokeo, Inc.*, 742 F.3d 409, 413 (9th Cir. 2014) ("[T]he

---

Whatever the case, any notions of "ascertainability" do not apply to Jones' motion for 23(b)(2) certification.

violation of a statutory right is usually a sufficient injury in fact to confer standing.").

"[T]he primary form of relief available under the UCL to protect consumers from unfair business practices is an injunction, along with ancillary relief in the form of such restitution." *Tobacco II*, 46 Cal. 4th at 319. "The purpose of such relief, in the context of a UCL action, is to protect California's consumers against unfair business practices by stopping such practices in their tracks." *Id.* at 320. Class representatives who suffered an injury are authorized by statute to pursue injunctive relief for uninjured class members who remain at risk of injury if a defendant's practices are not curtailed because an "injunction would not serve the purpose of prevention of future harm if only those who had already been injured by the practice were entitled to that relief." *Id.* at 320.

Under the district court's approach, the primary form of relief under these statutes would be eliminated because consumers could not sue to enjoin violations of the UCL, FAL, and CLRA. Class representatives could not sue because once fooled they would not purchase the same products if they remained mislabeled and misbranded, and uninjured class members could not sue because they lacked standing under the UCL, FAL, and CLRA. Such an approach has been rejected by other courts as contrary to public policy. *See Henderson v. Gruma Corp.*, 2011 U.S. Dist. LEXIS 41077, *19-20 (C.D. Cal. Apr. 11, 2011) ("If the Court were to

52

construe Article III standing as narrowly as Defendant advocates, federal courts would be precluded from enjoining false advertising under California consumer laws because a plaintiff who had been injured would always be deemed to avoid the cause of the injury thereafter . . . and would never have Article III standing"); *accord Larsen v. Trader Joe's Co.*, 2012 U.S. Dist. LEXIS 162402 at \*10-12 (N.D. Cal. June 14, 2012); *Cabral v. Supple*, LLC, 2012 U.S. Dist. LEXIS 137365 at \*5-6 (C.D. Cal. Sept. 19, 2012).

The *Henderson* analysis is correct. Were it otherwise, a defendant's illegal labeling practices would always evade review. To hold otherwise would eviscerate the intent of the California legislature in creating consumer protection statutes because it would effectively bar any consumer who avoids the offending product from seeking injunctive relief. *See Tobacco II*, 46 Cal. 4th at 320 ("The purpose of such [injunctive] relief, in the context of a UCL action, is to protect California's consumers against unfair business practices by stopping such practices in their tracks."). Courts have followed a similar logic in other contexts. *See Fortyune v. Am. Multi-Cinema, Inc.*, 2002 U.S. Dist. LEXIS 27960 at \*21(C.D. Cal. Oct. 22, 2002) ("If this Court rules otherwise [and does not find standing], like defendants would always be able to avoid enforcement of the ADA. This court is reluctant to embrace a rule of standing that would allow an alleged wrongdoer to evade the court's jurisdiction so long as he does not injure the same person twice.")

The district court's ruling also ignores the fact that, as a matter of statutory language, an injunction can be obtained against a defendant that engaged in unfair competition in the past. *See, e.g.,* Cal. Bus. & Prof. Code § 17203 ("Any person who engages, *has engaged*, or proposes to engage in unfair competition may be enjoined." (emphasis added)).

More importantly, the district court failed to realize there are a number of likely scenarios where Jones remains at risk of future harm even if he is now aware the "100% Natural" food products he purchased contained unnatural ingredients. First, label claims like the "100% Natural" claim are front of package label claims. Jones is allowed to rely on such front of package label claims, and is not required to do further investigation to see if the products were still in violation of the law. *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939-40 (9th Cir. 2008) (recognizing "reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging"). Similarly, ConAgra could substitute other less known preservatives or synthetic chemicals and thus deceive Jones again with the same false natural and no preservative claims.

Second, ConAgra is a giant food conglomerate with numerous well-known brands of food distributed throughout many store aisles. Therefore, it remains possible, unless ConAgra's illegal label practices are enjoined, Jones could pick up

other ConAgra food brand products prominently labeled either "100% Natural" or "free of artificial ingredients & preservatives" and be deceived by those products' labels even if they were aware of the Hunt's violations.

The district court also failed to analyze the possibility of future harm arising from the unlawful sale of illegal misbranded products in violation of Cal. Health & Saf. Code § 110760, which makes it "unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded." Such harm would arise from purchasing any misbranded product and injury would not depend on Jones' review of any labeling claim. *See Park v. Welch Foods, Inc.*, 2014 U.S. Dist. LEXIS 37796, *5-6 (N.D. Cal. 2014) (recognizing in California, "[i]t is unlawful for any person to . . . hold or offer for sale any food that is misbranded," and the statute establishing that is subject to the punishments described above. That means that Plaintiffs could, in fact, be arrested and prosecuted for unlawful possession of misbranded goods. However unlikely, it is plausible in the *Twombly* and *Iqbal* sense of the word to believe that Plaintiffs may have acted differently if they were aware of a way to avoid it, thus making the liability relevant to this case. This is true even if the contraband at issue is not illegal drugs, but the label on a bottle of delicious grape juice").

In light of the above, the district court's finding that Jones lacked standing to pursue claims for injunctive relief under the UCL, FAL, and CLRA should be reversed.

## CONCLUSION AND PRAYER

For the foregoing reasons, the district court's Order denying Jones' Motion for Class Certification should be reversed and the case remanded to the district court for further proceedings consistent with *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1064-66 (9th Cir. 2014).

Respectfully submitted,

/s/ David Shelton
David Shelton
Shelton Davis PLLC
1223 Jackson Avenue East
Suite 202
Oxford, MS 38655
Direct: (662) 281-1212
david@davidsheltonpllc.com

Pierce Gore
PRATT & ASSOCIATES
1871 The Alameda
Suite 425
San Jose, CA 95126
Direct: (408) 429-6506
pgore@prattattorneys.com

Attorneys for Plaintiff/Appellant,
Levi Jones

## STATEMENT OF RELATED CASES

Appellant is unaware of any cases that would be deemed related under Ninth Circuit Rule 28-2.6.

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

1. This brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because this brief contains 12,805 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2007 in 14-point Time New Roman type.

*/s/ David Shelton*
David Shelton
Attorney for Plaintiff/Appellant
Levi Jones

Dated: November 21, 2014

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on November 21, 2014.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ David Shelton*
David Shelton