NO. 14-16327

In the

# United States Court of Appeals
## For the Ninth Circuit

———————

LEVI JONES, *Plaintiff-Appellant,*

v.

CONAGRA FOODS, INC., *Defendant-Appellee.*

———————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
(The Honorable Charles R. Breyer)
Case No. 3:12-cv-01633

———————

**APPELLEE'S ANSWERING BRIEF**
———————

A. Brooks Gresham SBN 155954
Laura Coombe SBN 260663
MCGUIREWOODS LLP
1800 Century Park East, 8th Floor
Los Angeles, CA 90067
Telephone: (310) 315-8291

Joan Dinsmore SBN 245629
MCGUIREWOODS LLP
434 Fayetteville Street
Raleigh, NC 27601
Telephone: (804) 775-4716

Katherine Mims Crocker
(Admitted to Ninth Circuit)
MCGUIREWOODS LLP
901 East Cary Street
Richmond, Virginia 23219
Telephone: (804) 775-4747

*Attorneys for Defendant-Appellee ConAgra Foods, Inc.*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendant-Appellee ConAgra Foods, Inc., hereby states, by and through counsel, that it does not have a parent corporation and that no publicly held corporation owns 10% or more of its stock.

Dated:  January 21, 2015      Respectfully submitted,

**MCGUIREWOODS LLP**

/s/ A. Brooks Gresham
A. Brooks Gresham
Laura Coombe
Joan S. Dinsmore
Katherine Mims Crocker

*Counsel for Defendant-Appellee*
*ConAgra Foods, Inc.*

i

# TABLE OF CONTENTS

INTRODUCTION ....................................................................................1

JURISDICTIONAL STATEMENT ........................................................2

ISSUES PRESENTED............................................................................3

STATEMENT OF THE CASE................................................................3

SUMMARY OF THE ARGUMENT ......................................................7

ARGUMENT ........................................................................................12

I.     Standard of Review.....................................................................13

II.    The district court correctly denied the motion for class certification on the ground that the putative class is unascertainable....................................14

    A.    Plaintiff did not challenge the existence of the ascertainability requirement below..............................................................14

    B.    Ascertainability is an essential prerequisite of class certification .....15

    C.    The putative class is unascertainable because membership is not capable of determination via objective and verifiable criteria...........21

III.   The district court correctly denied the motion for class certification on the ground that the putative class fails Rule 23(b)(3) because individual questions predominate over common questions and a class action is not superior to other methods for adjudicating the controversy .....................................................................31

    A.    Individual issues predominate with respect to the elements of the asserted causes of action..............................................................31

        1.    The CLRA..................................................................32

        2.    Unjust Enrichment ...................................................36

        3.    The UCL and FAL ...................................................37

    B.    Individual issues predominate with respect to remedies....................39

    C.    A class action is not superior to other methods for adjudicating the controversy .................................................................................48

IV.   The district court correctly denied the motion for class certification under Rule 23(b)(2) on the ground that Plaintiff lacks Article III standing to pursue injunctive relief on behalf of the putative class ............49

CONCLUSION ....................................................................................58

ii

STATEMENT OF RELATED CASES ................................................................58

CERTIFICATE OF COMPLIANCE......................................................................59

CERTIFICATE OF SERVICE ............................................................................60

# <u>TABLE OF AUTHORITIES</u>

## Cases

*Abbott v. Lockheed Martin Corp.,*
    725 F.3d 803 (7th Cir. 2013) ...........................................................16

*Alliance to End Repression v. Rochford,*
    565 F.2d 975 (1977)..........................................................................21

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997)..........................................................................32

*Animal Prot. Inst. of Am. v. Hodel,*
    860 F.2d 920 (9th Cir. 1988) ...........................................................14

*Basic Inc. v. Levinson,*
    485 U.S. 224 (1988)....................................................................29, 30

*Bates v. UPS, Inc.,*
    511 F.3d 974 (9th Cir. 2007) ......................................................50, 52

*Berger v. Home Depot USA, Inc.,*
    741 F.3d 1061 (9th Cir. 2014) .........................................................19

*Blackie v. Barrack,*
    524 F.2d 891. (9th Cir.1975) ...........................................................33

*Brazil v. Dole Packaged Foods, LLC,*
    No. 12-CV-01831-LHK, 2014 WL 5794873
    (N.D. Cal. Nov. 6, 2014)........................................................26, 46, 58

*Bruton v. Gerber Products Co.,*
    No. 12-CV-02412-LHK, 2014 WL 2860995
    (N.D. Cal. June 23, 2014) ................................................................25

*Califano v. Yamasaki,*
    442 U.S. 682 (1979)....................................................................48, 57

*Carnegie v. Household Int'l, Inc.,*
    376 F.3d 656 (7th Cir. 2004) ......................................................48-49

iv

*Carrera v. Bayer*,
727 F.3d 300 (3d Cir. 2013) ..............................................................27

*Chapman v. Pier 1 Imports (U.S.) Inc.*,
631 F.3d 939 (9th Cir. 2011) (en banc) ............................................51

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983)...................................................................*passim*

*Clapper v. Amnesty Int'l USA*,
133 S. Ct. 1138 (2013)......................................................................57

*In re Clorox Consumer Litig.*,
301 F.R.D. 436 (N.D. Cal. 2014).......................................................36

*Comcast Corp. v. Behrend*,
133 S. Ct. 1426 (2013).............................................................*passim*

*In re Cox Enters., Inc. Set-Top Cable Television Box Antitrust Litig.*,
No. 12-ML-2048-C, 2014 WL 104964 (W.D. Okla. Jan. 9, 2014)....................22

*Crosby v. Soc. Sec. Admin.*,
796 F.2d 576 (1st Cir. 1986)..............................................................18

*Davoll v. Webb*,
194 F.3d 1116 (10th Cir. 1999) .........................................................18

*DeBremaecker v. Short*,
433 F.2d 733 (5th Cir. 1970) .............................................................18

*Doninger v. Pac. Nw. Bell, Inc.*,
564 F.2d 1304 (9th Cir. 1977) .....................................................13, 49

*Dukes v. Wal-Mart, Inc.*,
509 F.3d 1168 (9th Cir. 2007), *on reh'g en banc sub nom. Dukes v.
Wal-Mart Stores, Inc.*, 603 F.3d 571 (9th Cir. 2010), *rev'd on other
grounds*, 131 S. Ct. 2541 (2011).......................................................13

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) .............................................................49

*Engalla v. Permanente Med. Grp., Inc.*,
938 P.2d 903 (Cal. 1997)..................................................................33

v

*EQT Prod. Co. v. Adair*,
 764 F.3d 347 (4th Cir. 2014) ...............................................18, 22, 31

*Erica P. John Fund, Inc. v. Halliburton Co.* (*Halliburton I*),
 131 S. Ct. 2179 (2011) .......................................................32

*FTC v. Figgie Int'l*,
 994 F.2d 595 (9th Cir. 1993) ...............................................44

*Gen. Tel. Co. of Sw. v. Falcon*,
 457 U.S. 147 (1982) ..........................................................12

*Gibbs Props. Corp. v. CIGNA Corp.*,
 196 F.R.D. 430 (M.D. Fla. 2000) ........................................17

*Gonzales v. Free Speech Coal.*,
 408 F.3d 613 (9th Cir. 2005) ..............................................13

*In re Graphics Processing Units Antitrust Litig.*,
 253 F.R.D. 478 (N.D. Cal. 2008)..................................45, 47

*Grimes v. Rave Motion Pictures Birmingham, L.L.C.*,
 264 F.R.D. 659 (N.D. Ala. 2010) ........................................18

*Halliburton Co. v. Erica P. John Fund, Inc.* (*Halliburton II*),
 134 S. Ct. 2398 (2014).........................................29, 30, 31

*Haskell v. Time, Inc.*,
 857 F. Supp. 1392 (E.D. Cal. 1994) ...................................37

*Hayes v. Wal-Mart Stores, Inc.*,
 725 F.3d 349 (3d Cir. 2013) ...............................................22

*Hester v. Vision Airlines, Inc.*,
 687 F.3d 1162 (9th Cir. 2012) ............................................13

*Hilao v. Estate of Marcos*,
 103 F.3d 767 (9th Cir. 1996) ..............................................19

*Hirsch v. Bank of Am.*,
 132 Cal. Rptr. 2d 220 (Cal. Ct. App. 2003)................... 36-37

*Hodgers-Durgin v. de la Vina*,
 199 F.3d 1037 (9th Cir. 1999) ............................................................51

*Hollingsworth v. Perry*,
 133 S. Ct. 2652 (2013) ...................................................................56

*Ihrke v. N. States Power Co.*,
 459 F.2d 566 (8th Cir.), *vacated as moot*, 409 U.S. 815 (1972) ....................18

*Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund*,
 500 U.S. 72 (1991).......................................................................54

*Kaldenbach v. Mut. of Omaha Life Ins. Co.*,
 100 Cal. Rptr. 3d 637 (Cal. Ct. App. 2009)..........................................38

*Knight v. Kenai Peninsula Borough Sch. Dist.*,
 131 F.3d 807 (9th Cir. 1997) ..........................................................13

*Korea Supply Co. v. Lockheed Martin Corp.*,
 63 P.3d 937 (Cal. 2003)................................................................43

*Kottaras v. Whole Foods Mkt., Inc.*,
 281 F.R.D. 16 (D.D.C. 2012) ..........................................................46

*Kraus v. Trinity Mgmt. Servs., Inc.*,
 999 P.2d 718 (Cal. 2000)...............................................................44

*Langford v. Superior Court*,
 729 P.2d 822 ( Cal. 1987)..............................................................55

*Lewis v. Casey*,
 518 U.S. 343 (1996).....................................................................57

*Leyva v. Medline Indus. Inc.*,
 716 F.3d 510 (9th Cir. 2013) .......................................................14, 40

*Lilly v. Jamba Juice Co.*,
 No. 13-CV-02998-JST, 2014 WL 4652283 (N.D. Cal. Sept. 18,
 2014) ....................................................................................17

*Little v. T-Mobile USA, Inc.*,
 691 F.3d 1302 (11th Cir. 2012) ......................................................18

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)....................................................................52

*Marcus v. BMW of N. Am., LLC*,
    687 F.3d 583 (3rd Cir. 2012) ...............................................*passim*

*Martin v. Pac. Parking Sys. Inc.*,
    583 F. App'x 803 (9th Cir. 2014) ..................................................19

*Mason v. Nature's Innovation, Inc.*,
    No. 12CV3019 BTM DHB, 2013 WL 1969957 (S.D. Cal. May 13,
    2013), *appeal dismissed*, No. 13-56010 (9th Cir. Oct. 25, 2013) ....................54

*Mass. Mut. Life Ins. Co. v. Superior Court*,
    119 Cal. Rptr. 2d 190 (Cal. Ct. App. 2002).....................................33

*Matamoros v. Starbucks Corp.*,
    699 F.3d 129 (1st Cir. 2012)..........................................................22

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) ........................................................36

*Miles v. Merrill Lynch & Co.* (*In re Initial Pub. Offerings Sec. Litig.*),
    471 F.3d 24 (2d Cir. 2006), *clarified on other grounds on denial of
    reh'g*, 483 F.3d 70 (2007)..............................................................18

*Myers v. Malone & Hyde*,
    173 F.2d 291 (8th Cir. 1949) ........................................................44

*N.B. v. Hamos*,
    26 F. Supp. 3d 756, 763 (N.D. Ill. 2014)........................................22

*O'Shea v. Littleton*,
    414 U.S. 488 (1974)................................................................50, 52

*Oshana v. Coca-Cola Co.*,
    472 F.3d 506 (7th Cir. 2006) ........................................................18

*Pence v. State*,
    652 N.E.2d 486 (Ind. 1995) ..........................................................54

*Pierce v. Cnty. of Orange*,
    526 F.3d 1190 (9th Cir. 2008) ...........................................17, 19, 49

viii

*In re POM Wonderful LLC*,
  No. ML 10–02199 DDP, 2014 WL 1225184 (C.D. Cal. Mar. 25,
  2014) ...................................................................................................41, 42

*Princess Cruise Lines, Ltd. v. Superior Court*,
  101 Cal. Rptr. 3d 323 (Cal. Ct. App. 2009).......................................32

*Probe v. State Teachers' Ret. Sys.*,
  780 F.2d 776 (9th Cir. 1986) ............................................................20

*In re Rail Freight Fuel Surcharge Antitrust Litig.-MDL No. 1869*,
  725 F.3d 244 (D.C. Cir. 2013)...........................................................47

*Randolph v. J.M. Smucker Co.*,
  No. 13-CIV-80581, 2014 WL 7330430 ( S.D. Fl. Dec. 23, 2014)..............27, 28

*Red v. Kraft Foods, Inc.*,
  No. CV 10-1028-GW .........................................................................25

*Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*,
  559 U.S. 393 (2010).................................................................... 20-21

*Simon v. E. Ky. Welfare Rights Org.*,
  426 U.S. 26 (1976)..............................................................................51

*Singleton v. Wulff*,
  428 U.S. 106 (1976)............................................................................14

*Stearns v. Ticketmaster Corp.*,
  655 F.3d 1013 (9th Cir. 2011) ...................................................*passim*

*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009)............................................................................57

*In re Steroid Hormone Prod. Cases*,
  104 Cal. Rptr. 3d 329 (Cal. Ct. App. 2010)........................... 33, 34-35

*Taylor v. Sentry Life Ins. Co.*,
  729 F.2d 652 (9th Cir. 1984) ....................................................14, 42

*In re Tobacco II Cases*,
  207 P.3d 20 (Cal. 2009) .....................................................................37

*United States v. Gonzalez-Alvarez*,
  277 F.3d 73 (1st Cir. 2002) .................................................44

*Vasquez v. Superior Court*,
  484 P.2d 964 (Cal. 1971) ...................................................33

*Vega v. T-Mobile USA, Inc.*,
  564 F.3d 1256 (11th Cir. 2009) .........................................37

*In re Vioxx Class Cases*,
  103 Cal. Rptr. 3d 83 (Cal. Ct. App. 2009)...................*passim*

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011).........................................12, 38, 50

*Warth v. Seldin*,
  422 U.S. 490 (1975)........................................................51, 52

*Weiner v. Snapple Beverage Corp.*,
  No. 07 CIV. 8742 DLC, 2010 WL 3119452 (S.D.N.Y. Aug. 5,
  2010) ...........................................................................17, 25

*Werdebaugh v. Blue Diamond Growers*,
  No. 12-CV-02724-LHK, 2014 WL 7148923 (N.D. Cal. Dec. 15,
  2014) ...................................................................................46

*Whitmore v. Arkansas*,
  495 U.S. 149 (1990)..............................................................57

*Wiesfeld v. Sun Chem. Corp.*,
  84 F. App'x 257 (3d Cir. 2004) ...........................................47

*Wilens v. TD Waterhouse Grp., Inc.*,
  15 Cal. Rptr. 3d 271 (Cal. Ct. App. 2003).........................33

*Williams v. Oberon Media, Inc.*,
  468 F. App'x 768 (9th Cir. 2012) .......................................19

*Xavier v. Philip Morris USA, Inc.*,
  787 F. Supp. 2d 1075 (N.D. Cal. 2011)..............................16

*Young v. Nationwide Mut. Ins. Co.*,
  693 F.3d 532 (6th Cir. 2012) .........................................18, 22

x

## Federal Statutes and Rules

28 U.S.C. § 1291 ........................................................................................3

28 U.S.C. § 1332 ........................................................................................2

Fed. R. App. P. 4 .......................................................................................3

Fed. R. App. P. 32 ....................................................................................59

Federal R. Civ. P. 23 ........................................................................*passim*

## State Statutes

Cal. Civ. Code
    § 1750 *et seq* ...................................................................................32

Cal. Bus. & Prof. Code
    § 17200 *et seq* .................................................................................32

Cal. Bus. & Prof. Code
    § 17500 *et seq* .................................................................................32

## Other Authorities

*Concise Oxford English Dictionary Luxury Edition* (12th ed. 2011)......................15

*McLaughlin on Class Actions* (11th ed. 2014) ........................................36

James Wm. Moore et al., *Moore's Federal Practice* (3d ed. 2012)............15, 17, 18

*Restatement (First) of Restitution* (1937). ..............................................43

*Restatement (Third) of Restitution & Unjust Enrichment* (2011)...........................36

William B. Rubenstein, *Newberg on Class Actions* (5th ed. 2011)............16, 17, 22

Charles Alan Wright et al., *Federal Practice and Procedure* (3d ed. 2005) ........................................................................15, 17, 20

## INTRODUCTION

Plaintiff-Appellant, Levi Jones, argues that the district court repeatedly abused its discretion by refusing to certify a class-action lawsuit demanding millions of dollars from Defendant-Appellee, ConAgra Foods, Inc., based on allegations that the labels of Hunt's-brand tomato products contain misleading and deceptive information. For numerous reasons, however, the district court was correct that this case is a wholly unsuitable candidate for class-action adjudication.

First, the putative class is not ascertainable. Plaintiff proposes to identify the class based on nothing more than affidavits by would-be members stating that they purchased the challenged products during the relevant time period. Never mind that consumers are likely to lack receipts documenting these supposed purchases: the class definition is so convoluted—encompassing products with manifold varieties featuring different sizes, different ingredients, and different label statements over time—that accurate self-identification is nearly unfathomable.

Second, the proposed damages action falls well short of the requirement that questions common to all class members must predominate over individual issues. Plaintiff runs far afoul of this rule given that each asserted cause of action requires proof of individual reliance on the challenged labels or necessitates consideration of disparate messages to consumers. Moreover, Plaintiff's proffered damages model violates the dictates of *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433-34

1

(2013), and thus likewise fails the predominance rule. And for these and other reasons, the proposed action fails the related rule that a class action must be superior to other forms of adjudication.

Finally, Plaintiff lacks standing to pursue injunctive relief in federal court. For seeking an injunction, Article III requires a plaintiff to demonstrate that he is likely to suffer harm in the future similar to that he alleges he suffered in the past. Because Plaintiff has evinced no intent whatsoever to purchase the challenged products again, he cannot satisfy that requirement.

The district court properly exercised its broad discretion in refusing to allow Plaintiff's proposed class action to proceed. This Court should therefore affirm the denial of class certification and dismissal of the action with prejudice.

## JURISDICTIONAL STATEMENT

The United States District Court for the Northern District of California had jurisdiction under 28 U.S.C. § 1332(d) because this is a civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and in which any member of the putative class is a citizen of a different state from the defendant. Plaintiff is a citizen of California, whereas ConAgra is incorporated in Delaware and maintains its principal place of business in Nebraska. ER 838.

2

This Court has appellate jurisdiction under 28 U.S.C. § 1291. The district court entered a final order dismissing all claims with prejudice on July 8, 2014. ER 2. Pursuant to Federal Rule of Appellate Procedure 4(a)(1)(A), Plaintiff timely filed a notice of appeal on July 14, 2014. ER 49-50.

## ISSUES PRESENTED

1.   Did the district court correctly deny the motion for class certification on the ground that the putative class is unascertainable because membership is not capable of determination via objective and verifiable criteria, where Plaintiff seeks to establish membership solely through self-identifying affidavits?

2.   Did the district court correctly deny the motion for class certification under Federal Rule of Civil Procedure 23(b)(3) on the ground that individual questions predominate over common questions, where (a) each cause of action requires proof of individual reliance or the consideration of disparate information communicated to putative class members and (b) Plaintiff failed to propose a viable remedial model that could apply to the class as a whole?

3.   Did the district court correctly deny the motion for class certification under Federal Rule of Civil Procedure 23(b)(2) on the ground that Plaintiff lacks Article III standing to pursue injunctive relief, where he has not established a sufficient likelihood that he will suffer future harm similar to his alleged past harm?

## STATEMENT OF THE CASE

ConAgra produces numerous food brands that line the pantries of American homes. *See* ER 833. ConAgra goods include such household names as Healthy Choice meals, Chef Boyardee, Orville Redenbacher's popcorn, and, the subject of

3

this case, Hunt's tomato products. *See* ER 834. ConAgra has long proclaimed its commitment to providing the American public with wholesome food made from quality ingredients. *See* ER 834.

On April 2, 2012, Plaintiff filed in the U.S. District Court for the Northern District of California a putative class action challenging as misleading and deceptive certain label statements on Hunt's tomato products and other ConAgra products no longer at issue in this case. ER 1296. Plaintiff (along with other plaintiffs who are not party to this appeal) filed a First Amended Complaint on July 2, 2012, ER 972, 1299, and a Second Amended Complaint on January 15, 2013, ER 830, 1306. As relevant here, Plaintiff moved for class certification on February 7, 2014. ER 665, 1317. The district court, Senior Judge Charles R. Breyer, denied the motion in its entirety on June 13, 2014. ER 3, 1321. The district court then entered a voluntary order of dismissal on July 8, 2014, dismissing the action with prejudice. ER 1, 1321. Plaintiff filed a notice of appeal concerning the orders denying class certification and dismissing the action on July 14, 2014. ER 49-50, 1321.

Several of the district court's numerous reasons for denying class certification related to Plaintiff's overambitious definition of the proposed class. In particular, Plaintiff sought to certify a class of "[a]ll persons in the state of California who, from April 2, 2008, until the date of notice, purchased a Hunt's®

4

canned tomato product bearing the label '100% Natural' or 'Free of artificial ingredients & preservatives' but which contained the following ingredients: citric acid and/or calcium chloride." ER 666. As the district court recognized, this definition attempts to amalgamate "literally dozens of varieties [of Hunt's tomato products] with different can sizes, ingredients, and labeling over time [some of which] included the challenged language, while others included no such language at all." ER 22.

More specifically, Hunt's tomato products encompass seven product lines ranging from whole, diced, crushed, and stewed tomatoes to tomato sauce, puree, and paste. *See* ER 328. These products are available in numerous flavor varieties (e.g., green pepper, sweet onion, no salt added), packaging arrays (e.g., 4 pk, 12 pk), and sizes (e.g., 12 oz., 29 oz.). *See* ER 328-29 (listing no fewer than 55 different "product varieties and sizes" during the relevant time period). Indeed, Hunt's tomato products are so plentiful that Plaintiff could not recall whether—for instance—he purchased whole tomatoes and tomato paste during the class period. ER 751, 754. And as for diced tomatoes, he had little idea what varieties he purchased, in what quantity, or during what timeframe. ER 751-53.

These failures expose a flaw fatal to Plaintiff's class definition. As the Director on Hunt's tomato products explained based on documents produced in this action, "the labels on Hunt's products have, for multiple flavor varieties and

5

packaging variations, changed in multiple ways between 2008 and the present," such that "whether a Hunt's product label contains any reference to the challenged label statements . . . depends on the product variety at issue, the product size, and the time the product was sold." ER 330. For some products, varieties, and sizes, at least one of the challenged statements has never appeared on the labels. ER 328-29 (identifying five varieties of tomato sauce and a chili kit without "100% Natural" statement); ER 332 (identifying three varieties of diced tomatoes and one packaging array of tomato sauce without labels referencing artificial ingredients or preservatives). And for others, at least one of the challenged statements was discontinued at different times. ER 332 (identifying diverse end dates ranging from April 2011 through May 2013 for 24 different types of products). Moreover, as the Director explained, "after any label change is made, a period of up to 12 weeks or more follows in which ConAgra, its distributors, and its retailers will have a mix of old and new labeled product in their facilities." ER 331. And "[d]uring that period, consumers may buy either or both of the differently labeled Hunt's products." ER 331.

To offer just a few examples of the difficulties inherent in the class definition, therefore, two otherwise identical Hunt's tomato products sitting next to each other on a grocery-store shelf could contain different label statements. Or, whereas a 14.5-oz. can of "Diced Tomatoes" might not feature the challenged label

statement referencing preservatives, a 28-oz. can of "Diced Tomatoes" or a 14.5-oz. can of "Petite Diced Tomatoes" might. The possible permutations are numerous, to say the least.

To complicate Plaintiff's class definition even further, the Director made clear that one of the challenged ingredients—calcium chloride—has never been present in multiple varieties of Hunt's tomato products. ER 332 (identifying four varieties and two sizes/packaging arrays of tomato sauce, plus two varieties of crushed tomatoes); *see also* ER 543 (expert stating that calcium chloride is also not an ingredient in tomato paste or puree). And, as the district court specifically noted, "it is not clear that [either of] the challenged ingredients here are not 'natural.'" ER 33.

## SUMMARY OF THE ARGUMENT

I.    This Court reviews a district court's denial of a motion for class certification for abuse of discretion. For the following reasons, the district court acted well within the bounds of its discretion in refusing to certify Plaintiff's proposed class action.

II.    First, the district court correctly held that the putative class fails the ascertainability requirement, a fundamental prerequisite of class certification.

7

A.    As an initial matter, Plaintiff did not challenge the existence of the ascertainability requirement below.  In accordance with well-established precedent, this Court ought not allow him to do so for the first time on appeal.

B.    Courts across the nation—including this Court—have long embraced ascertainability as an axiomatic requirement rooted in Federal Rule of Civil Procedure 23 and the Due Process Clause.  This requirement simply ensures that courts can distinguish class members from the broader public in an administratively feasible manner.  The rule thereby protects the interests of courts in avoiding administrative quagmires, the interests of absent class members in learning about judgments by which they will be bound, and the interests of defendants in assessing the extent of their exposure.  Plaintiff's argument that the requirement does not exist runs headlong into his failure to locate even a single case rejecting ascertainability as a fundamental ingredient of at least class actions seeking damages.

C.    The district court correctly held that ascertainability requires that class membership must be capable of determination via objective and verifiable criteria—and that the class here falls far short of that standard.  Plaintiff argues that membership can be adequately established solely by having each class member submit a sworn affidavit that he or she purchased a Hunt's product included within the class definition.  That is not verifiability.  Given that ConAgra

8

sold at least 55 Hunt's varieties during the pertinent period, some with and some without a challenged label statement, some with and some without one of the challenged ingredients, the district court properly held that it lacked confidence in consumers' mere say-so that they bought products encompassed by the class definition. Plaintiff and his amici consciously mischaracterize the decision below by stating that it would foreclose certification for *all* classes based on low-cost consumer purchases. In reality, the district court's approach applies specifically where there are independent reasons (other than a mere lack of receipts) to be skeptical about the ability of potential class members accurately to identify themselves.

III.    Second, the district court correctly held that the putative class fails Rule 23(b)(3) because individual questions predominate over common questions and because a class action is not superior to other methods for adjudicating the controversy.

A.    Individual issues predominate with respect to the elements of the asserted causes of action.

1.    Plaintiff's claim under California's Consumers Legal Remedies Act fails the predominance requirement because individual reliance inquiries would overwhelm the case. Although a presumption or inference of classwide reliance is available where material misrepresentations were made to the

9

class, the district court correctly held that Plaintiff failed to offer any evidence beyond his expert's ipse dixit that the challenged label statements were material.

2.     Plaintiff's inability to prove reliance on classwide grounds likewise renders his claim for unjust enrichment unfit for class treatment, as does the equitable, and thus individualized, nature of that cause of action.

3.     With respect to Plaintiff's claims under California's Unfair Competition and False Advertising Laws, this Court has made clear that predominance is lacking where "there was no cohesion among [class] members because they were exposed to quite disparate information from . . . the defendant." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020 (2011).  The district court properly found just such a lack of cohesion here because the class definition includes multiple label statements, ingredients, and product varieties featuring assorted attributes, thus rendering any information conveyed by ConAgra functionally and fundamentally different from consumer to consumer.

B.     Individual issues also predominate with respect to remedies. The district court correctly held that Plaintiff failed to establish that "damages are capable of measurement on a classwide basis" and that his "model purporting to serve as evidence of damages . . . measure[s] only those damages attributable to th[e] theory" of liability alleged, as required by *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013).  Plaintiff's comparative remedial model falls short under

10

*Comcast* because his expert identified only a single supposed comparator product, which could not measure damages across a class involving seven products and multiple varieties of each. And his expert's proffered regression analysis was stated in terms so vague as to be essentially meaningless. Plaintiff's primary counterargument is that the proper measure of restitution is disgorgement of ConAgra's total revenue on the challenged products. But the district court correctly recognized that California law is clear that "[t]he difference between what the plaintiff paid and the value of what the plaintiff received is a proper measure of restitution." *In re Vioxx Class Cases*, 103 Cal. Rptr. 3d 83, 96 (Cal. Ct. App. 2009).

C. A class action is not superior to other methods for adjudicating the controversy. For all of the reasons outlined here, a class action would be utterly unmanageable.

IV. Finally, the district court correctly held that Plaintiff lacks Article III standing to seek injunctive relief on behalf of a class under Rule 23(b)(2) because he failed to demonstrate "a sufficient likelihood that he will again be wronged in a similar way." *City of L.A. v. Lyons*, 461 U.S. 95, 111 (1983). Plaintiff failed that standard because he testified that he stopped buying Hunt's products and did not express any intention to buy them again. Plaintiff's assertion of a statutory-

11

standing theory is doctrinally irrelevant, and his arguments pertaining to state law fundamentally miscomprehend the Article III analysis.

## ARGUMENT

Federal Rule of Civil Procedure 23 governs the prosecution of class actions in federal court. In order to maintain a class action, plaintiffs must first satisfy the requirements of Rule 23(a)—known as "numerosity," "commonality," "typicality," and "adequacy"—and the well-recognized rule that the putative class must be ascertainable. Next, plaintiffs must demonstrate one or more of the conditions specified in Rule 23(b)—as alleged here, that the defendant "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole," Fed. R. Civ. P. 23(b)(2), or that "questions of law or fact common to class members predominate over any questions affecting only individual members" and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy," *id.* R. 23(b)(3).

The burden of proving these requirements falls on plaintiffs, who "must affirmatively demonstrate [their] compliance with the Rule," *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011), subject to "a rigorous analysis" by the trial court, *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982).

12

## I.    Standard of Review

This Court "review[s] a district court's denial of class certification for abuse of discretion." *Knight v. Kenai Peninsula Borough Sch. Dist.*, 131 F.3d 807, 816 (9th Cir. 1997).  "Abuse of discretion is a highly deferential standard," such that "review is limited to assuring that the district court's determination has a basis in reason."  *Gonzales v. Free Speech Coal.*, 408 F.3d 613, 618 (9th Cir. 2005) (internal quotation marks omitted).  As this Court has made clear in the class-certification context, "the judgment of the trial court should be given the greatest respect and the broadest discretion . . . because the district court is in the best position to consider the most fair and efficient procedure for conducting any given litigation." *Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1309 (9th Cir. 1977) (internal quotation marks omitted).

In particular, whereas "a district court abuses its discretion when it makes an error of law," *Knight*, 131 F.3d at 816-17, "the district court's factual findings as to the applicability of Rule 23 criteria are entitled to the traditional deference given to such determinations," *Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1175 (9th Cir. 2007), *on reh'g en banc sub nom. Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571 (9th Cir. 2010), *rev'd on other grounds*, 131 S. Ct. 2541 (2011).  Accordingly, a district court's factual determinations will not be disturbed absent clear error, *Hester v. Vision Airlines, Inc.*, 687 F.3d 1162, 1171-72 (9th Cir. 2012), which

13

requires that such a determination be "illogical, implausible, or without support in inferences that may be drawn from the facts in the record." *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 513 (9th Cir. 2013) (internal quotation marks omitted).

## II. The district court correctly denied the motion for class certification on the ground that the putative class is unascertainable.

### A. Plaintiff did not challenge the existence of the ascertainability requirement below.

Plaintiff did not even mention the ascertainability requirement in the memorandum supporting his motion for class certification, *see* ER 675-97, and in his reply brief, he argued only that "the proposed class is ascertainable," ER 86 (formatting omitted), not that there is no ascertainability requirement (as he does now, Br. of Appellant 10-13). Indeed, he expressly conceded that "[a] class definition should be precise, objective, and presently ascertainable." ER 86 (internal quotation marks omitted).

"Federal appellate courts generally do not consider issues first raised on appeal." *Animal Prot. Inst. of Am. v. Hodel*, 860 F.2d 920, 927 (9th Cir. 1988) (citing *Singleton v. Wulff*, 428 U.S. 106, 120 (1976)). This Court will not suspend that rule absent "exceptional circumstances why the issue was not raised below." *Taylor v. Sentry Life Ins. Co.*, 729 F.2d 652, 655 (9th Cir. 1984). Because Plaintiff has proffered no such reasons, the Court ought not indulge his newfound theory.

14

## B. Ascertainability is an essential prerequisite of class certification.

The existence of an ascertainable, identifiable, or definite class—to use words employed by courts as synonyms in this context—is an "essential prerequisite" for maintaining a class action pursuant to Rule 23. 7A Charles Alan Wright et al., *Federal Practice and Procedure* § 1760 (3d ed. 2005).

Ascertainability inheres in the very concept of a "class," which Oxford defines as "a set or category of things having a property or feature in common *and differentiated from others* by kind or quality." *Concise Oxford English Dictionary Luxury Edition* 264 (12th ed. 2011) (emphasis added). The ascertainability requirement simply ensures that courts can indeed differentiate putative class members from the broader public in an administratively feasible manner. *See* 5 James Wm. Moore et al., *Moore's Federal Practice* § 23.21 (3d ed. 2012) ("The standard for measuring whether a class has been defined with sufficient precision is whether the definition makes it administratively feasible for the court to determine whether a particular individual is or is not a member of the proposed class."); Wright, *supra* (similar).

As the Third Circuit has explained, "[t]he ascertainability requirement serves several important objectives." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593 (2012). First, ascertainability protects the courts through "eliminat[ing] serious administrative burdens that are incongruous with the efficiencies expected in a

class action by insisting on the easy identification of class members." *Id.* (internal quotation marks omitted). Second, ascertainability "protects absent class members," *id.*, in multiple ways, not least of all by making it "clear later on whose rights are merged into the judgment, that is, who gets the benefit of any relief and who gets the burden of any loss," *Xavier v. Philip Morris USA, Inc.*, 787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011). And third, ascertainability protects defendants "by ensuring that those persons who will be bound by the final judgment are clearly identifiable." *Marcus*, 687 F.3d at 593. The Seventh Circuit encapsulated this tripartite protective function in a recent opinion by explaining that "the class definition is a tool of case management" that, by "settl[ing] the question who the adversaries are," both "enables the defendant to gauge the extent of its exposure to liability and . . . alerts excluded parties to consider whether they need to undertake separate actions in order to protect their rights." *Abbott v. Lockheed Martin Corp.*, 725 F.3d 803, 810 (2013).

The ascertainability requirement stems from multiple mutually reinforcing sources. *See generally* William B. Rubenstein, *Newberg on Class Actions* § 3:2 (5th ed. 2011). For instance, in line with the above-outlined definition of "class," many courts have held "that the term 'class,' in Rule 23(a) means a definite or ascertainable class." *Id.* (citing cases). Others have viewed the requirement as "implicat[ing] substantial due process rights for both class members and . . .

16

[d]efendants." *Gibbs Props. Corp. v. CIGNA Corp.*, 196 F.R.D. 430, 442 (M.D. Fla. 2000). "This approach treats definiteness [as] deserv[ing] special solicitude because, without [it], it would be unconstitutional to bind absent litigants to the results of aggregate proceedings." *Newberg on Class Actions* § 3:1 (citing cases).

Indeed, an ascertainable class is vital to numerous interlocking parts of Rule 23. *See* Wright, *supra*; Moore, *supra*. Many courts, for example, have deemed ascertainability closely tied to the assessment of "the likely difficulties in managing a class action" required under Rule 23(b)(3)(D), *see, e.g.*, *Weiner v. Snapple Beverage Corp.*, No. 07 Civ. 8742(DLC), 2010 WL 3119452, at *12 (S.D.N.Y. Aug. 5, 2010), and at least one has relied on precedent from this Court for that proposition, *see Lilly v. Jamba Juice Co.*, No. 13-CV-02998-JST, 2014 WL 4652283, at *3 (N.D. Cal. Sept. 18, 2014) (citing *Pierce v. Cnty. of Orange*, 526 F.3d 1190, 1200 (9th Cir. 2008)). Perhaps most importantly, Rule 23 contains several notice provisions whose effective operation depends in large part on the ability to identify the contours of the relevant class. In particular, Rule 23(c)(2)(B) requires that "[f]or any class certified under Rule 23(b)(3)"—on which Plaintiff relies in this case—"the court must direct to class members the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). This notice must communicate such crucial messages as "that a class member may enter an appearance through an attorney," "that the court will exclude from the class any

17

member who requests exclusion," and, most significantly, that "a class judgment" will "bind[]" all members. *Id.* Other class-protective notice provisions abound. *See id.* R. 23(e)(1); *id.* R. 23(h)(1); *id.* R. 23(c)(2)(A); *id.* R. 23(d)(1)(B).

For all of these reasons, courts across the nation have long embraced ascertainability as an "axiomatic" rule. Moore, *supra*. Numerous courts have repeated the declaration that the law "universally recognize[s]" that "the first essential ingredient to class treatment is the ascertainability of the class." *Grimes v. Rave Motion Pictures Birmingham, L.L.C.*, 264 F.R.D. 659, 663 (N.D. Ala. 2010) (emphasis omitted). It thus comes as no surprise that each of the numbered courts of appeals has endorsed the ascertainability requirement. *See, Crosby v. Soc. Sec. Admin.*, 796 F.2d 576, 580 (1st Cir. 1986); *Miles v. Merrill Lynch & Co.* (*In re Initial Pub. Offerings Sec. Litig.*), 471 F.3d 24, 30 (2d Cir. 2006), *clarified on other grounds on denial of reh'g*, 483 F.3d 70 (2007); *Marcus*, 687 F.3d at 592-93 (3d Cir.); *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014); *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970); *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012); *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006); *Ihrke v. N. States Power Co.*, 459 F.2d 566, 573 n.3 (8th Cir.), *vacated as moot*, 409 U.S. 815 (1972); *Davoll v. Webb*, 194 F.3d 1116, 1146 (10th Cir. 1999); *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012).

18

Ninth Circuit jurisprudence aligns with its sister circuits. Just last year, this Court described ascertainability as a "threshold . . . test" for class certification. *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1071 n.3 (declining to decide "whether the district court abused its discretion in denying certification based on the threshold ascertainability test"). The en banc Court employed a similar characterization in *Dukes*, referring to the question "whether plaintiffs have met their burden of establishing the existence of a claim . . . affecting an ascertainable class" as a "determinatio[n] that the requirements of Rule 23 have been met." 603 F.3d at 587-88 & n.8 (internal quotation marks omitted). Also as recently as last year, this Court has upheld the denial of class certification based on plaintiffs' failure to fulfill the ascertainability requirement. *Martin v. Pac. Parking Sys. Inc.*, 583 F. App'x 803, 804 (2014) ("[T]he district court did not abuse its discretion in concluding that the proposed class was not ascertainable."); *Williams v. Oberon Media, Inc.*, 468 F. App'x 768, 770 (2012) (similar). Although those cases are unpublished, *Martin* makes clear that the ascertainability requirement is well rooted in circuit precedent, 2014 WL 3686135, at *1, citing as an example *Pierce*'s holding that "the district court did not abuse its discretion in decertifying the 'damages class' . . . in light of expected difficulties identifying class members," 526 F.3d at 1200. Other instances of this Court looking to ascertainability are readily apparent. *See, e.g.*, *Hilao v. Estate of Marcos*, 103 F.3d 767, 774 (1996)

("[t]he district court did not abuse its discretion in certifying the class as defined" because "[t]his is not a class . . . the size of which is almost unlimited"); *Probe v. State Teachers' Ret. Sys.*, 780 F.2d 776, 780 (1986) ("The class here is sufficiently definite to conform to Rule 23." (citing previous edition of Wright, *supra*)).

Plaintiff's arguments disputing the existence of the ascertainability requirement fall flat. Curiously, Plaintiff suggests that the district court "[s]tr[uck] a different path" by invoking ascertainability, Br. of Appellant 12, but he is unable to point to a single decision repudiating ascertainability as a critical component of at least damages class actions (including amongst the many attempted food-labeling class actions faced by trial courts in this Circuit). Nor has independent research uncovered any. Even Plaintiff's amici accept that ascertainability is a fundamental precondition of class treatment; their brief simply quarrels with the way that the district court applied the requirement in this case. *See* Mot. for Leave to File Amicus Curiae Br. in Supp. of Appellants 4 [hereinafter Appellant's Amicus Br.] ("Rule 23 presumes the existence of a definite or ascertainable class." (internal quotation marks omitted)).

Ultimately, the majority of Plaintiff's points contesting the existence of the ascertainability requirement do little more than quote various authorities out of context and, accordingly, ought not distract the Court. For instance, Plaintiff quotes a snippet of *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance*

20

*Co.*, 559 U.S. 393 (2010)—that "Rule 23 provides a one-size-fits-all formula for deciding the class-action question," *id.* at 399—thrice within six pages to argue that "it is improper to graft onto the Rule a judicially-created, implied requirement like ascertainability." Br. of Appellant 13; *see also id.* at 8, 11. That statement, however, had nothing to do with requirements that courts have located in Rule 23; rather, *Shady Grove* held preempted a state statute that ran directly counter to that Rule. *See* 559 U.S. at 399. As another example, Plaintiff strongly implies that the Seventh Circuit has expressed cynicism about the requirement's propriety by supposedly "admitt[ing]" that the source of the ascertainability rule is "'not clear.'" Br. of Appellant 12 (quoting *Alliance to End Repression v. Rochford*, 565 F.2d 975, 977 n.6 (1977)). In reality, that opinion merely said that "[i]t is not clear whether the source of this implied requirement is the express [commonality] requirement of Rule 23(a)(2) or more simply something inherent in the very notion of a 'class.'" 565 F.2d 975 at n.6. Perfectly clear, the court proceeded to explain, is "the justification" for ascertainability: "Since the outcome of a class action suit is res judicata as to all unnamed class members, it is crucial to have a clear definition of what groups or individuals are members of the class." *Id.*

## C. The putative class is unascertainable because membership is not capable of determination via objective and verifiable criteria.

The district court correctly held that "[a] class is not ascertainable unless membership can be established by means of objective, verifiable criteria." ER 19.

This articulation accurately frames the inquiry. As for objectivity, "[a]ll courts essentially focus on the question of whether the class can be ascertained by objective criteria." *Newberg on Class Actions* § 3:3; *see, e.g.*, *Matamoros v. Starbucks Corp.*, 699 F.3d 129, 139 (1st Cir. 2012); *Young*, 693 F.3d at 538. And as for verifiability, courts across the nation have recognized that "there must be a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 355 (3d Cir. 2013); *see also, e.g.*, *N.B. v. Hamos*, 26 F. Supp. 3d 756, 763 (N.D. Ill. 2014) (same); *In re Cox Enters., Inc. Set-Top Cable Television Box Antitrust Litig.*, No. 12-ML-2048-C, 2014 WL 104964, at *2 (W.D. Okla. Jan. 9, 2014) (same). "If class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate." *Marcus*, 687 F.3d at 593; *see also, e.g.*, *EQT Prod. Co.*, 764 F.3d at 358 (same).

Plaintiff concedes that ascertainability requires objective criteria. His objections to the decision below instead target the verifiability component of the ascertainability standard. *See* Br. of Appellant 13-14 ("[A]scertainability requires *nothing more than* . . . objective criteria." (emphasis added and internal quotation marks omitted)). Specifically, Plaintiff argues that his proposed class can satisfy any ascertainability requirement solely via the submission of "sworn testimony that

each class member purchased a Hunt's canned tomato product with the subject label claims." ER 89. The district court properly held this criterion unverifiable— and the putative class, accordingly, unascertainable.[1]

Judge Breyer noted that trial courts in this Circuit have reached different outcomes on ascertainability with respect to classes that are predicated on "low-cost consumer purchases" likely to lack documentation—i.e., receipts—long after the fact. ER 20-21 (collecting cases). His subsequent reasoning, however, demonstrates that divergent outcomes need not stem from dichotomous conceptions of the ascertainability requirement. Specifically, Breyer adopted a nuanced rule that affidavits are insufficient to establish ascertainability for a class based on low-cost consumer purchases likely to lack receipts where there are independent reasons to be skeptical about "class-members' ability to accurately self-identify"—especially where they are prone to face "subjective memory problem[s]" concerning which specific items they purchased vis-à-vis the class definition. ER 22-23. Critically, the court suggested that where such reasons are *not* present, it may well hold a class based on low-cost consumer purchases that

---

[1] Below, Plaintiff also asserted that the putative class was ascertainable because members could show that they purchased class products through "photographic verification." ER 89. As the district court noted, "Plaintiffs never state what that actually means. That the class members take pictures of cans they own? Class members would not have saved all of their cans for the last six years. That the class notice include pictures? That is not verification." ER 21 n.15. Plaintiff does not reassert that doomed ascertainability argument before this Court.

probably lack receipts ascertainable.  In particular, Judge Breyer remarked that he "might be persuaded that a class of 'all people who bought Twinkies,' for example, during a certain period, could be ascertained" because he could have some level of "confidence in class members' ability to accurately self-identify."  ER 23.

Applying that rule to the facts of this case, Judge Breyer reasoned that because of "the variation in the [available] Hunt's products and labels," ER 23, "[e]ven assuming that all proposed class members would be honest, it is hard to imagine that they would be able to remember which particular Hunt's products they purchased from 2008 to the present, and whether those products bore the challenged label statements," ER 21.  "[S]elf-identification here," Breyer held, is accordingly "unfeasible."  ER 23.  To be more specific, the district court remarked that there were "literally dozens of varieties with different can sizes, ingredients, and labeling over time."  ER 22 (internal quotation marks omitted).  Most fundamentally, "some Hunt's cans included the challenged language, while others included no such language at all."  ER 22 (internal quotation marks omitted).  And whereas "some segments [of the Hunt's product line] contained only citric acid," others "contained both citric acid and calcium chloride," ER 5, a crucial distinction given that "it is not clear that [either of] the challenged ingredients here are not 'natural.'"  ER 33.  If Plaintiff himself could not remember which Hunt's products

24

he purchased during the class period, ER 22, how could he expect absent class members to remember their particular purchases?[2]

Of course, Plaintiff himself chose to complicate the ascertainability analysis to such a significant degree by asserting claims based on two different label statements and two different ingredients. The district court's purely factual (not to mention discretionary) determination that Hunt's products exhibit labeling and ingredient variation so extensive as to render the proposed class definition administratively unfeasible does not admit of clear error and thus commands this Court's deference.

In short, it is nothing less than fanciful to believe that consumers will remember whether a particular can of Hunt's tomatoes purchased many years ago included some specific label claim or some specific ingredient—and nothing less than audacious to argue that a court should certify a class based on consumers' mere say-so (without even cross-examination) that they can perform such an unlikely feat. The "subjective memory problem[s]," ER 22, faced by a consumer asked to recall whether he purchased particular Hunt's products of particular sizes

---

[2] It bears noting that courts in this Circuit and others have relied on similar logic in denying class certification in food cases involving a great deal of labeling variation. *See, e.g.*, *Bruton v. Gerber Products Co.*, No. 12-CV-02412-LHK, 2014 WL 2860995, at *6-*7 (N.D. Cal. June 23, 2014); *Red v. Kraft Foods, Inc.*, No. CV 10-1028-GW AGRx, 2012 WL 8019257, at *5 (C.D. Cal. Apr. 12, 2012) (tentative ruling), *adopted*, 2012 WL 8018618, at *1 (Apr. 26, 2012); *Weiner*, 2010 WL 3119452, at *13 (S.D.N.Y.).

within particular date ranges (all variations that affect the label statements and ingredients present) are plain. It simply cannot be the case, as Plaintiff and his amici contend, that the district court was required to certify a class action based on the unquestioning acceptance of such affidavits. The flaw in ascertainability here is far greater than a mere lack of receipts.

There can be no question, therefore, that this case simply does not present the sky-is-falling situation described by Plaintiff and his amici. The district court did not—and affirmatively declined to—"reject[] self-identification by class members as a means of 'ascertaining' the class" in "cases concerning false or deceptive labeling of foods, beverages, and other small-dollar items." Appellant's Amicus Br. 6. Nor did Judge Breyer "artificial[ly] impos[e] a 'receipt' requirement." Br. of Appellant at 19. Instead, he held self-identification insufficient in the specific context of this case, where labeling and ingredient variation provide ample independent reason for skepticism about "class members' ability to accurately self-identify." ER 23. Indeed, courts in this Circuit have already turned aside similar efforts to mischaracterize the decision below.[3]

---

[3] *See, e.g.*, *Brazil v. Dole Packaged Foods, LLC*, No. 12-CV-01831-LHK, 2014 WL 5794873, at *15 (N.D. Cal. Nov. 6, 2014) ("Here, . . . class members would only have to recall whether they purchased any challenged products, all of which bore the labeling claim, during the revised class period. *Jones* is distinguishable . . . because the class members there would have had to remember

26

Moreover, to the extent that Plaintiff and his amici are troubled by the perceived holding of *Carrera v. Bayer*, 727 F.3d 300 (3d Cir. 2013), that ascertainability by affidavit would be inappropriate across the board, *see* Br. of Appellant 19 n.1; Appellant's Amicus Br. 5, 7-9, 12-13, 15-17, their arguments are appropriately directed to the en banc Third Circuit or the Supreme Court.

A recent opinion from the Southern District of Florida expressly confirms that the decision below is readily distinguishable from *Carrera*. Like the case at bar, that case concerned the presentation of foodstuffs—specifically, Crisco cooking oil—as "All Natural." *Randolph v. J.M. Smucker Co.*, No. 13-CIV-80581, 2014 WL 7330430, at *1 (Dec. 23, 2014). Also like the present case, the proposed class in *Randolph* was selectively defined to include only purchasers of products bearing the challenged label statement, but there had, in reality, been a great deal of labeling variation during the relevant time period. *Id.* at *6. *Randolph* openly "expresse[d] caution with the reasoning of . . . *Carrera* [and its progeny]" and declined to declare "self-identification" a "*per se* invalid" means of achieving ascertainability. *Id.* at *8 n.8. *Randolph* thus emphatically repudiated a receipt requirement, stating in no uncertain terms that "[t]he fact that putative class members are highly unlikely to retain proof of purchase for . . . a low price

---

whether they purchased the challenged products and whether those products contained the allegedly misleading label statement.").

consumer item is insufficient to defeat certification." *Id.* at *8. Instead, *Randolph* explicitly adopted the analytical framework of the decision below. *Id.* at *7 ("The Court finds this matter . . . akin to the case of *Jones v. ConAgra Foods, Inc.* . . . ."). *Randolph* therefore denied certification in reliance on Judge Breyer's reasoning that the likelihood of "'subjective memory problem[s]'" renders "'self-identification . . . unfeasible'" where significant labeling variation plagues the putative class. *Id.*

Plaintiff's remaining attacks on Judge Breyer's ascertainability analysis fare no better. He first contends that the court's conclusion was incorrect because the "products that concerned the district court"—i.e., those featuring labels without the challenged statements—"were excluded from the Class definition and so any purchaser of only these products would not be a Class member." Br. of Appellant 16. But Breyer disposed of this contention with a logic that Plaintiff does not even attempt to assail, stating that it "misses the point." ER 23 n.19. "Indisputably, such products are not at issue. The problem is that class members will not be able to remember whether they purchased the products that are not at issue, or the ones that are." ER 23 n.19.[4]

---

[4] In conjunction with this contention, Plaintiff states that "less than one-half of one percent of Hunt's canned tomato product sales . . . did not contain a label representation that they were '100% Natural' or 'Free of artificial ingredients & preservatives.'" Br. of Appellant 16. Although Plaintiff cites nothing for that

Next, Plaintiff argues that the "possibility" that "a purchaser of a non-Class product might mistakenly believe they were included in the Class . . . is not a bar to certification," asserting that *Halliburton Co. v. Erica P. John Fund, Inc.* (*Halliburton II*), 134 S. Ct. 2398 (2014), "held as much." Br. of Appellant 17. *Halliburton II*, however, does not remotely support that proposition.

*Halliburton II* focused on a narrow question relating to securities-fraud suits, did not consider ascertainability whatsoever, and is thus largely irrelevant to this point. The only issue related to Rule 23 that *Halliburton II* did consider concerned whether the "fraud-on-the-market" presumption recognized in *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), "relieves [securities-fraud] plaintiffs of th[e] burden" of "actually *prov*[*ing*]—not simply plead[ing]—that their proposed class satisfies each requirement of Rule 23." *Halliburton II*, 134 S. Ct. at 2412. The Court answered in the negative. *Id.* If anything, Plaintiff's conception of ascertainability by affidavit flouts this principle by rendering sworn say-so (much

---

proposition, it appears to come from a portion of his expert's reply declaration relating to labels without the "100% Natural" statement only. *See* ER 1072. That declaration, in turn, points to two tables that are entirely unintelligible. *See* ER 1074-75. Moreover, in light of ConAgra's objections, the district court permitted this declaration only while "recogniz[ing] its limitations," ER 45—a factual assessment of the declaration's evidentiary value that is reversible only for clear error.

like a mere pleading) automatically sufficient where affirmative proof of compliance with Rule 23 is actually required.[5]

Perhaps for this reason, Plaintiff does not rely on *Halliburton II*'s discussion of Rule 23 but instead points to a single passage (really, a single word) from an entirely different discussion. According to Plaintiff, the Supreme Court upheld the *Basic* presumption on the ground that "'*most*' investors rely on an efficient market, . . . even though some class members do not have valid claims due to a lack of actual reliance." Br. of Appellant 17 (quoting *Halliburton II*, 134 S. Ct. at 2411). This characterization crumbles upon closer inspection, however, for the Supreme Court did not declare the proposition that "*most*" investors rely on an efficient market sufficient for maintaining a securities-fraud class action. Instead, the Court simply disputed the defendant's characterization of *Basic*, stating that "*Basic* never denied the existence of . . . investors [who do not make decisions in reliance on the integrity of the market price]" but, rather, "concluded only that it is reasonable to

---

[5] Were Plaintiff's understanding of ascertainability correct, why would representatives in at least some would-be securities-fraud class actions even go to the trouble of attempting to prove the *Basic* presumption applicable (which requires a four-pronged showing of publicity, materiality, efficiency, and timing, *Halliburton II*, 134 S. Ct. at 2412) rather than just having each class member swear that he or she relied on the misrepresentation at issue? Were that sort of "proof" adequate to the task, *Basic* would have been incorrect to rest its holding on the assumption that "[r]equiring proof of individualized reliance from each member of the proposed plaintiff class effectively would have prevented respondents from proceeding with a class action, since individual issues then would have overwhelmed the common ones." 485 U.S. 224, 242 (1988).

presume that *most* investors [rely on price integrity]." *Id.* at 2411 (internal quotation marks omitted). *Halliburton II*, in fact, did not concede that integrity-insensitive investors actually exist: to the contrary, the Court concluded that "there is no reason to suppose that even [the defendant's] main counterexample . . . is as indifferent to the integrity of market prices as [the defendant] suggests." *Id.*

Moreover, a principal point of *Halliburton II* was that courts are entitled to evaluate evidence bearing on the appropriateness of class treatment at the certification stage rather than being required to await future phases of litigation. *See id.* at 2414-16; *see alo EQT Prod. Co.*, 764 F.3d at 358 (same). *Halliburton II* thus undercuts the argument that "issues concerning the accuracy of claims are properly addressed during the remedy portion of the case, not at the certification stage." Appellant's Amicus Br. 12. By denying certification because Plaintiff's proffered affidavits are subject to substantial skepticism on account of labeling and ingredient variation, the court below did just what *Halliburton II* declared proper.

## III. The district court correctly denied the motion for class certification on the ground that the putative class fails Rule 23(b)(3) because individual questions predominate over common questions and a class action is not superior to other methods for adjudicating the controversy.

### A. Individual issues predominate with respect to the elements of the asserted causes of action.

Rule 23(b)(3) provides that "[a] class action may be maintained if . . . the court finds that the questions of law or fact common to class members predominate

over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). This requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).

"Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.* (*Halliburton I*), 131 S. Ct. 2179, 2184 (2011). Here, Plaintiff has asserted claims under (1) the Consumers Legal Remedies Act (CLRA), Cal. Civ. Code § 1750 *et seq.*; (2) equitable principles of unjust enrichment; (3) the Unfair Competition Law (UCL), Cal. Bus. & Prof. Code, § 17200 *et seq.*; and (4) the False Advertising Law (FAL), Cal. Bus. & Prof. Code § 17500 *et seq.* ER 893-902.

## 1. The CLRA

The CLRA provides that "[a]ny consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by [another section of the CLRA] may bring an action against that person." Cal. Civ. Code § 1780(a). California courts have made clear that the "as a result" language encodes a requirement that the plaintiff actually relied on the defendant's conduct or that the plaintiff's harm was caused by the same (concepts used interchangeably in this context). *See, e.g.*, *Princess Cruise*

32

*Lines, Ltd. v. Superior Court*, 101 Cal. Rptr. 3d 323, 331 (Cal. Ct. App. 2009); *Wilens v. TD Waterhouse Grp., Inc.*, 15 Cal. Rptr. 3d 271, 276 (Cal. Ct. App. 2003); *Mass. Mut. Life Ins. Co. v. Superior Court*, 119 Cal. Rptr. 2d 190, 197 (Cal. Ct. App. 2002).

The requirement of actual reliance or causation would normally cause individual questions to predominate over common ones. *See In re Vioxx Class Cases*, 103 Cal. Rptr. 3d 83, 95 (Cal. Ct. App. 2009). California courts, however, have permitted a presumption or inference of classwide (and thus common) reliance or causation where plaintiffs can prove that "*material* misrepresentations were made to the class members." *Vasquez v. Superior Court*, 484 P.2d 964, 973 (Cal. 1971) (emphasis added). "'[P]laintiffs satisfy their burden of showing causation as to each by showing materiality as to all.'" *Mass. Mut.*, 119 Cal. Rptr. 2d at 197 (quoting *Blackie v. Barrack*, 524 F.2d 891, 906 n. 22. (9th Cir.1975)). Materiality, in turn, "is judged by a 'reasonable man' standard," such that "a misrepresentation is deemed material 'if a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question.'" *In re Steroid Hormone Prod. Cases*, 104 Cal. Rptr. 3d 329, 338 (Cal. Ct. App. 2010) (quoting *Engalla v. Permanente Med. Grp., Inc.*, 938 P.2d 903, 919 (Cal. 1997)).

Applying that standard here, the district court held that Plaintiff failed to adduce sufficient evidence of materiality under the facts of this case—no more, no less. The pertinent passage is worth quoting in detail:

> The only evidence Plaintiffs rely on in support of th[eir materiality] contention is the Caswell Declaration. . . . Caswell, Plaintiffs' materiality expert, concluded that "In my experience with labeling statements and consumer choice, it is my opinion that the [challenged statements] would be material to a reasonable consumer." [ER 723 ¶ 27]. She concluded that the "100% Natural" label would be material "because reasonable consumers would rely on this label to identify products that are natural and in comparison shopping between food products" and that the "Free of artificial ingredients & preservatives" label "is material because consumers would rely on this label to identify products that do not contain both (a) artificial ingredients and (b) preservatives in comparison shopping between food products." *Id.* ¶¶ 27–28. *This is a bit of an ipse dixit.*
>
> Caswell did not explain how the challenged statements, together or alone, were a factor in any consumer's purchasing decisions. She did not survey any customers to assess whether the challenged statements were in fact material to their purchases, as opposed to, or in addition to, price, promotions, retail positioning, taste, texture, or brand recognition. *See* [ER 621-26 ¶¶ 12–26].

ER 32-33 (footnotes omitted) (emphasis added).

In short, Judge Breyer held only that Plaintiff failed to shoulder his burden of proof by presenting nothing more than "ipse dixit" as to materiality. *See also* ER 34 ("[T]here is a lack of evidence demonstrating the impact of the challenged statements."). This is as plain-vanilla a factual determination as they come, *see Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1022 (9th Cir. 2011) (citing *Steroid*

34

*Hormone*, 104 Cal. Rptr. 3d at 338–39), and accordingly falls well within the bounds of the district court's discretion.

Plaintiff betrays his misperception of the law, the decision below, or both by arguing that "[t]he district court appeared to incorrectly believe materiality was an individual issue that varies from consumer to consumer, and thus is not a common question." Br. of Appellant 25. The court made abundantly clear that materiality is a common question across the class. *See, e.g.*, ER 31 (stating reasonable-person test); ER 33 (recognizing that "materiality is an objective standard" (internal quotation marks and alteration omitted)). The court made equally clear that because Plaintiff lost on the common question of materiality, he could not cloak the putative class in a presumption of classwide injury, meaning that individual questions would predominate with respect to reliance or causation—a critical distinction. *See, e.g.*, ER 31-32 ("'If the misrepresentation or omission is not material as to all class members, the issue of reliance would vary from consumer to consumer and the class should not be certified.'" (quoting *Stearns*, 655 F.3d at 1022-23)).[6]

---

[6] Despite Plaintiff's longwinded contentions to the contrary, *see* Br. of Appellant 25-29, the district court's subsequent remarks about the probable reason why Plaintiff failed to offer evidence on materiality beyond mere ipse dixit— because "there is no single, controlling definition of the word 'natural,'" ER 33— neither excuses that failure nor indicates that Judge Breyer erroneously believed materiality to be an individual question.

### 2. Unjust Enrichment

Plaintiff's inability to prove reliance or causation on a classwide basis likewise causes individual questions to predominate with respect to his unjust-enrichment claim. Although "[a] transfer induced by fraud or material misrepresentation is subject to rescission and restitution," *Restatement (Third) of Restitution & Unjust Enrichment* § 13(1) (2011), this principle is limited by a "test of causation" requiring that "the misrepresentation *induced* the transfer," *id.* cmt. c (emphasis added). Consequently, "[i]f there is any material variation in the representations made, or in the degrees of reliance thereon, . . . unjust enrichment claims are unsuitable for treatment as a class action." 1 *McLaughlin on Class Actions* § 5:54 (11th ed. 2014). In line with these teachings, this Court has held that where a presumption of classwide reliance is unwarranted, as here, class certification for a California unjust-enrichment claim is inappropriate on predominance grounds. *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 595-96 (2012); *see also In re Clorox Consumer Litig.*, 301 F.R.D. 436, 445-46 (N.D. Cal. 2014) (same).

Additionally, unjust-enrichment claims are governed by "[t]raditional equitable principles," such that relief requires "a determination that under the circumstances and as between the two individuals, it is unjust for the person receiving the benefit to retain it." *Hirsch v. Bank of Am.*, 132 Cal. Rptr. 2d 220,

230 (Cal. Ct. App. 2003). As the Eleventh Circuit has explained, "[d]ue to the necessity of this inquiry into the individualized equities attendant to each class member, courts, including ours, have found unjust enrichment claims inappropriate for class action treatment." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1274 (2009). "In short, common questions will rarely, if ever, predominate an unjust enrichment claim." *Id.* The instant case is decidedly not the rare, if existent, exception to that rule.

### 3.    The UCL and FAL

The Supreme Court of California has made clear that "to state a claim under either the UCL or [FAL] based on false advertising or promotional practices, it is necessary only to show that members of the public are likely to be deceived." *In re Tobacco II Cases*, 207 P.3d 20, 29 (Cal. 2009) (internal quotation marks and alteration omitted). More specifically, such a claim "must be evaluated from the vantage of a reasonable consumer." *Haskell v. Time, Inc.*, 857 F. Supp. 1392, 1399 (E.D. Cal. 1994). Relief is accordingly available "without individualized proof of deception, reliance and injury." *Tobacco II Cases*, 207 P.3d at 35. Nevertheless, this Court has been careful to specify that "[w]e do not, of course, suggest that predominance would be shown in every California UCL case." *Stearns*, 655 F.3d at 1020. For example, "it might well be that there was no cohesion among [class] members because they were exposed to quite disparate information from various

representatives of the defendant." *Id.* (citing *Wal-Mart*, 131 S. Ct. at 2554-57; *Kaldenbach v. Mut. of Omaha Life Ins. Co.*, 100 Cal. Rptr. 3d 637, 652 (Cal. Ct. App. 2009)).

Here, the district court properly found just such "a lack of cohesion among the class members" because, inter alia, "consumers were exposed to label statements that varied by can size, variety, and time period (and the challenged ingredients also differed)." ER 31. The class definition covers two different label statements—"100% Natural" and "Free of artificial ingredients & preservatives," ER 666—that may not have been equally likely to deceive a reasonable consumer (if they were deceptive at all). This is doubly so given that the definition also covers two different ingredients—citric acid and calcium chloride, ER 666—as to which the challenged statements may not have been equally misleading (if they were misleading at all). And it is exponentially so given that the definition *also* covers, to quote the district court, "literally dozens" of varieties of tomato products, ER 22 (internal quotation marks omitted), with different physical attributes (such as can size) that could have affected the prominence or other features of the challenged statements and, thus, whether such statements would have been likely to dupe a reasonable consumer (if they were duplicitous at all). Hence, it is beyond question that Plaintiff's proposed class encompasses individuals who were "exposed to quite disparate information" and thus lacks the

38

cohesion necessary to certify claims under the UCL and FAL.  *Stearns*, 655 F.3d at 1020.  In any event, the district court's factual determination to that effect was decidedly not an abuse of discretion.[7]

In sum, individual issues predominate not only as a general matter but also with respect to each and every cause of action asserted in the Second Amended Complaint.  The District Court, therefore, did not abuse its discretion in holding that Plaintiff failed to satisfy Rule 23(b)(3).

**B.      Individual issues predominate with respect to remedies.**

In *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013), the Supreme Court made clear that Rule 23(b)(3) requires plaintiffs to "establish[] that damages are capable of measurement on a classwide basis," for otherwise "[q]uestions of individual damage calculations will inevitably overwhelm questions common to the class."  *Id.* at 1433.  Furthermore, "a model purporting to serve as evidence of damages in [a] class action must measure only those damages attributable to th[e] theory" of liability underlying the class claims.  *Id.*  "If the model does not even attempt to do that, it cannot possibly establish that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)."  *Id.*  The

---

[7] Plaintiff's contentions that "all Class Members were exposed to the *exact same* labeling misstatements" and that "such misstatements were delivered through Defendant's *uniform* labeling practices," Br. of Appellant 24-25 (emphasis added), are belied by the record and the district court's well-reasoned factual conclusion that there was a substantial degree of "variation in the Hunt's . . . labels," ER 23.

district court correctly applied *Comcast* to conclude that Plaintiff failed to proffer a remedial model sufficient to satisfy Rule 23(b)(3).

As for restitution under the UCL and FAL, the court held that the model put forth by Plaintiff's expert—Dr. Oral Capps, Ph.D.—was "deeply flawed." ER 41. Capps purported to "take a comparable product and compare the price between it and the allegedly mislabeled Hunt's product." ER 41. But he chose only a single "comparable product" for this task, which the court correctly deemed "inadequate" under *Comcast* given that the class claims encompassed "seven product lines and multiple varieties within each Hunt's product line." ER 41. Perhaps, for instance, a comparable product does not exist for some varieties, rendering other remedial models necessary. *See* ER 41 n.38 ("Defendant's expert . . . opines that 'given the complexity of the Hunt's . . . product lines . . . , it is not clear that suitable benchmark products exist for each Challenged Product.'" (quoting ER 206)). Or perhaps sales of some products benefited more from the allegedly misleading statements than did others. *See* ER 206 & n.78. Accordingly, the problem is not simply that individual variables may need to be plugged into a single remedial model, *see Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013), but, rather, that multiple—even myriad—unknown remedial models may be necessary. As in *Comcast*, "[t]he permutations . . . are nearly endless." 133 S. Ct. at 1434-35.

To make matters worse, Judge Breyer noted, "[e]ven the single comparator that [the expert] select[ed] is inadequate" because (1) it too was labeled "100% Natural" and so "[could] not demonstrate any price difference associated with that statement" and because (2) it came from a "generic brand, while Hunt's is a market leader that has spent decades building a brand synonymous with canned tomatoes." ER 41 (internal quotation marks omitted). Accordingly, the expert's comparative analysis failed *Comcast*'s command that a plaintiff's model "must measure only those damages attributable to th[e] theory" of liability underlying the class claims. 133 S. Ct. at 1433. As the district court explained, "[o]ne cannot assume that the entire price difference between the Hunt's and [generic-brand] cans is attributable to the alleged misstatements." ER 41-42 (citing *In re POM Wonderful LLC*, No. ML 10-02199 DDP (RZx), 2014 WL 1225184, at *5 (C.D. Cal. Mar. 25, 2014) ("Rather than answer the critical question why that price difference existed, or to what extent it was a result of [the defendant's] actions, [the plaintiffs' expert] instead assumed that 100% of that price difference was attributable to [the defendant's] alleged misrepresentations. . . . This damages 'model' does not comport with *Comcast*'s requirement that class-wide damages be tied to a legal theory.")). Plaintiff inexplicably regurgitates his expert's analysis of the same product here without making any effort to respond to the district court's cogent criticisms. *See* Br. of Appellant 44 n.9.

41

Plaintiff's first attempted refutation of the district court's restitution ruling borders on nonsensical. He appears to contend that *Comcast* does not apply where the remedy sought is restitution rather than damages. *See* Br. of Appellant 35, 37, 45. He cites no support for that proposition. Nor could he: *Comcast* embodies a "straightforward application of class-certification principles," 133 S. Ct. at 1433, and Rule 23(b)(3) indisputably encompasses all "questions" in a case—including remedial questions, whether the remedy sought is restitution or damages.[8]

Plaintiff next argues that the measure of restitution ought to be "the amounts received by ConAgra from the sale of the misbranded products"—i.e., the "disgorgement" of (apparently) all revenue rather than the return of the difference between the price paid and the value received by class members. Br. of Appellant 38. The district court properly rejected this argument, ER 40, for California law holds that "[t]he difference between what the plaintiff paid and the value of what the plaintiff received is a proper measure of restitution" under the UCL and FAL. *Vioxx*, 103 Cal. Rptr. 3d at 96; *see also, e.g.*, *POM Wonderful*, 2014 WL 1225184, at *3 (relying on *Vioxx* for same proposition). Indeed, plaintiff's disgorgement

---

[8] Plaintiff agreed with this proposition below, arguing that "[r]emedies, whether they be in the form of restitution or damages, can be proven on a class-wide basis which is consistent with the Supreme Court's order in *Comcast*." ER 691 n.5; *see also* ER 693-95 (treating *Comcast* as applicable to both damages and restitution). Indeed, Plaintiff made no argument before the district court that *Comcast* does not apply to restitution and thus forfeited the issue. *See Taylor*, 729 F.2d at 655.

theory runs counter to the principle that "[t]he UCL balances relaxed liability standards"—i.e., liability without individualized proof of deception, reliance, and injury—"with limits on liability" by confining the available remedies "to injunctive relief and restitution." *Vioxx*, 103 Cal. Rptr. 3d at 95.[9]

Plaintiff's case citations do not support a contrary conclusion. In particular, Plaintiff leans heavily on a quotation from *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937 (Cal. 2003)—that "while restitution [i]s an available remedy under the UCL, disgorgement of money obtained through an unfair business practice is an available remedy in a representative action only to the extent that it constitutes restitution." *Id.* at 944-45. But that case concerned not the general definition or measure of restitution but, rather, whether the amount could include funds obtained from persons other than those represented in court. *See id.* at 944 ("'[D]isgorgement' is a broader remedy than restitution [because] disgorgement 'may compel a defendant to surrender all money obtained through an unfair

_____

[9] To the extent that Plaintiff also seeks restitution under an equitable theory of unjust enrichment, *see* ER 901-902, that theory would fail under Rule 23(b)(3) for the same reasons. And despite arguing, Br. of Appellant at 42-43, that here the normal measure of restitution ought to give way to the exception applicable where "a benefit has been received by the defendant but the plaintiff has not suffered a corresponding loss," *Restatement (First) of Restitution* § 1, cmt. e (1937), Plaintiff offers no reason to believe that such restitution would be "susceptible of measurement across the entire class." *Comcast*, 133 S. Ct. at 1433. Whether any specific class member had not suffered a loss corresponding to any benefit received by ConAgra is plainly an individual question.

43

business practice even though not all is to be restored to the persons from whom it was obtained or those claiming under those persons.'" (quoting and discussing *Kraus v. Trinity Mgmt. Servs., Inc.*, 999 P.2d 718, 725 (Cal. 2000))). The other cases on which Plaintiff relies are unpublished or utterly irrelevant. *See, e.g.*, *Myers v. Malone & Hyde*, 173 F.2d 291, 295 (8th Cir. 1949) (sale of misbranded items under federal Food, Drug, and Cosmetic Act (FDCA) constituted breach of implied warranty of merchantability); *United States v. Gonzalez-Alvarez*, 277 F.3d 73, 78 (1st Cir. 2002) (adulterated item under FDCA considered worthless in calculating federal criminal sentence).[10]

As for damages under the CLRA, Plaintiff's expert again pointed to the hypothetical difference between the challenged Hunt's products and comparator products (which the district court correctly held failed for the same reasons discussed above, ER 42), plus a regression analysis where, he said, "[t]he key finding is the difference in sales of the respective products before and after the

---

[10] For this reason, Judge Breyer discarded Plaintiff's citation to *FTC v. Figgie Int'l*, 994 F.2d 595, 606 (9th Cir. 1993), below. ER 40-41 n.37 ("Importantly, the FTC brought that case to seek consumer redress under the FTC Act, 15 U.S.C. § 57b. That statute allows a court to [grant a broad range of relief, including "the refund of money."] The language Plaintiffs cite comes from the court's discussion of an appropriate refund. There is no reason to import the remedies from the FTC Act into a California UCL or FAL case, and Plaintiffs point to no authority that does so."). Although Plaintiff again cites *Figgie*, Br. of Appellant 43, he makes no attempt to disprove the district court's persuasive distinction.

44

claims . . . first appeared on the labels." ER 736. More particularly, Capps explained, "the appropriate methodological approach is the use of econometric analysis with dummy variables. . . . The subsequent calculations of damages rests on the estimated coefficients associated with these dummy variables, controlling for other factors that may also affect sales." *Id.*

The district court's characterization of this explanation as "vague and abstract" and, hence, "not sufficiently developed to meet Plaintiff's burden of showing that common questions predominate" was, if anything, an understatement. ER 42 (internal quotation marks omitted). As the Supreme Court has made clear, although plaintiffs' "[c]alculations need not be exact," *Comcast*, 133 S. Ct. at 1433, a court must conduct a "rigorous analysis" to assess whether the high predominance hurdle set by Rule 23(b)(3) has been cleared, *id.* at 1432. At minimum, that analysis requires that plaintiffs submit "a functioning model that is tailored to market facts in the case at hand" rather than "only generalized and theoretical opinions that a particular methodology may serve th[e] purpose" of "show[ing] class wide impact and injury using common proof." *In re Graphics Processing Units Antitrust Litig.*, 253 F.R.D. 478, 492 (N.D. Cal. 2008) (internal quotation marks omitted).

Capps presented no such model here. He "[did] not provide a clearly defined list of variables, [did] not determine[] whether the data related to any or all

45

of his proposed control variables exists, and [did] not determine[], or show[] how he would determine, which competing or complementary products he would use." ER 42. The empty jargon offered by Capps was accordingly "too vague for the Court to even evaluate," *Kottaras v. Whole Foods Mkt., Inc.*, 281 F.R.D. 16, 25 (D.D.C. 2012) (condemning similar regression analysis proposed by Capps)—let alone to perform the searching examination required by the Supreme Court. *See also id.* at 26 ("[N]ot only had Capps not yet performed a single regression, but also he could not even tell the Court the precise analyses he intended to undertake.").[11]

Plaintiff's response fails to improve on the vagueness fatal to his expert's proffer. Plaintiff offers little more than a poor attempt at defining the concept of regression analysis by contending that the Capps methodology "determines the value of the misbranding label statements based on comparable products and variables analyzed to determine that value of the comparable product as determined by those independent variables." Br. of Appellant 45. Whatever that

---

[11] Likewise, classes have recently been decertified in two cases in this Circuit because regression models proposed by Capps violated *Comcast*. *See Brazil*, 2014 WL 5794873, at *8-14; *Werdebaugh v. Blue Diamond Growers*, No. 12-CV-02724-LHK, 2014 WL 7148923, at *8-*14 (N.D. Cal. Dec. 15, 2014). Moreover, the *Werdebaugh* court noted that it was "troubled by Dr. Capps' continued failure to ensure the accuracy of his assumptions." 2014 WL 7148923, at *13. "This is not merely a problem of erroneous data, but is in fact a fundamental flaw with Dr. Capps' methodology." *Id.*

means, it does not articulate a remedial model capable of withstanding "rigorous analysis," *Comcast*, 133 S. Ct. at 1432. "[B]are conclusions and a statement that the expert 'proposes' to use a multiple regression model" are "insufficient to satisfy the predominance requirement of Rule 23(b)(3)." *Wiesfeld v. Sun Chem. Corp.*, 84 F. App'x 257, 264 (3d Cir. 2004). Plaintiff later lists a variety of variables that his expert would supposedly use, *id.* at 47, but a string of data types is meaningless without a "functioning model" into which they fit. *Graphics Processing Units*, 253 F.R.D. at 492 (internal quotation marks omitted). As the D.C. Circuit has made clear, "[i]t is not enough [under *Comcast*] to submit a questionable model whose unsubstantiated claims cannot be refuted through *a priori* analysis. Otherwise, 'at the class-certification stage *any* method of measurement is acceptable so long as it can be applied classwide, no matter how arbitrary the measurements may be.'" *In re Rail Freight Fuel Surcharge Antitrust Litig.-MDL No. 1869*, 725 F.3d 244, 254 (D.C. Cir. 2013) (quoting *Comcast*, 133 S. Ct. at 1433).

In sum, to call the nearly incomprehensible gibberish offered by Plaintiff's expert "a specific regression analysis" capable of satisfying *Comcast*, Br. of Appellant 45, is little short of preposterous.

### C. A class action is not superior to other methods for adjudicating the controversy.

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Comcast*, 133 S. Ct. at 1432 (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-701 (1979)). Accordingly, in addition to proving predominance, Rule 23(b)(3) requires plaintiffs to demonstrate "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Rule lists a number of factors pertinent to this inquiry, including "the likely difficulties in managing a class action." *Id.* R. 23(b)(3)(D).

Here, the district court held that Plaintiff failed to fulfill this requirement because he "ha[s] not proposed an adequate means of identifying each class member, which products each class member purchased, and how many products each class member purchased." ER 47. In particular, Judge Breyer explained, "[c]ourts are reluctant to permit actions to proceed where there are formidable difficulties of distributing any ultimate recovery to the class members, because such actions are not likely to benefit anyone but the lawyers who bring them." *Id.* (internal quotation marks and alterations omitted). Moreover, the court recognized that where, as here, individual actions would likely face obstacles as well, "'a class action has to be unwieldy indeed before it can be pronounced an inferior alternative.'" ER 48 n.44 (quoting *Carnegie v. Household Int'l, Inc.*, 376 F.3d

48

656, 661 (7th Cir. 2004)) (internal alteration omitted). "This case," the court concluded, "is 'unwieldy indeed.'" *Id.*

"[T]he district court is in the best position to consider the most fair and efficient procedure for conducting any given litigation." *Doninger*, 564 F.2d at 1309. For all the reasons outlined here, this Court should accordingly affirm Judge Breyer's well-considered decision that Plaintiff fails the superiority requirement because the proposed class action would be wholly unmanageable. *See Pierce*, 526 F.3d at 1200 (holding that district court did not abuse discretion in decertifying class under superiority requirement "in light of expected difficulties identifying class members").

## IV. The district court correctly denied the motion for class certification under Rule 23(b)(2) on the ground that Plaintiff lacks Article III standing to pursue injunctive relief on behalf of the putative class.

Pursuant to Rule 23(b)(2), "[a] class action may be maintained if . . . the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that *final injunctive relief or corresponding declaratory relief* is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2) (emphasis added). As an initial matter, "[c]lass certification under Rule 23(b)(2) is appropriate only where the primary relief sought is declaratory or injunctive." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 986 (9th Cir. 2011) (internal quotation marks omitted). Even assuming that Rule 23(b)(2) may also apply to

classes seeking money judgments "incidental to . . . injunctive or declaratory relief," *Wal-Mart*, 131 S. Ct. at 2257, it is not remotely clear that Plaintiff meets this standard, as characterizations of the relief he seeks pursuant to Rule 23(b)(2) have waffled considerably over time.[12]

In any event, at the very least, Plaintiff seeks an injunction on behalf of the putative class to forbid ConAgra from continuing to use the challenged label statements. Br. of Appellant 50. It is hornbook law that to have standing to sue in an Article III court, "a plaintiff seeking prospective injunctive relief" must demonstrate "'a sufficient likelihood that he will again be wronged in a similar way.'" *Bates v. UPS, Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (quoting *City of L.A. v. Lyons*, 461 U.S. 95, 111 (1983)). Specifically, "he must establish a 'real and immediate threat of repeated injury,'" *id.* (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)), and "'past wrongs do not in themselves amount to [such a] threat,'" *id.* (quoting *Lyons*, 461 U.S. at 103 (internal alteration omitted)). It is

---

[12] *Compare* ER 100 (suggesting that, under Rule 23(b)(2), Plaintiff seeks injunctive relief and nominal damages, plus perhaps equitable restitution), *with* ER 689 (suggesting that, under Rule 23(b)(2), Plaintiff seeks only injunctive relief). Furthermore, the Second Amended Complaint slyly miscasts the language of Rule 23(b)(2) by stating that "[t]he prerequisites to maintaining a class action for injunctive or *equitable* relief pursuant to [Rule] 23(b)(2) are met as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or *equitable* relief with respect to the Class as a whole." ER 893 (emphases added). Of course, Rule 23(b)(2) "does not speak of 'equitable' remedies generally but of injunctions and declaratory judgments" only. *Wal-Mart*, 131 S. Ct. at 2560.

equally well established that "[u]nless the named plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class seeking that relief." *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999); *see also Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n. 20 (1976) ("That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured . . . .'" (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975)).

The district court properly implemented these requirements in concluding that Plaintiff cannot claim standing to represent a class under Rule 23(b)(2). Judge Breyer stated that although "[c]ourts have rejected the argument that a plaintiff cannot establish standing" to seek an injunction simply because "he has learned that a label is misleading and therefore will not be fooled by it again," they nevertheless "require plaintiffs to express an intent to purchase the products in the future." ER 27 (collecting cases). That standard flows directly from Ninth Circuit precedent. For standing to sue under the Americans with Disabilities Act, for example, this Court has held that "[a] plaintiff must show at each stage of the proceedings either that he is deterred from returning to the facility or that he intends to return to the facility and is therefore likely to suffer repeated injury." *Chapman v. Pier 1 Imps. (U.S.) Inc.*, 631 F.3d 939, 953 (9th Cir. 2011) (en banc). As Judge Breyer explained, Plaintiff failed that standard because he "testified that

he 'stopped buying' Hunt's products once he found out that they contained the challenged ingredients, and he did not attest to having any intention of buying Hunt's products in the future." ER 27 (quoting ER 761).

Resisting the conclusion that he lacked standing to seek an injunction, Plaintiff first points to a "'statutory rights' or 'statutory standing' theory." Br. of Appellant 51. Specifically, he contends that "the injury required by Article III can exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing.'" *Id.* (quoting *Warth*, 422 U.S. at 500). But this argument misses the point, for a plaintiff seeking prospective injunctive relief "must demonstrate that he has suffered or is threatened with" both (1) "a 'concrete and particularized' legal harm" and (2) "'a sufficient likelihood that he will again be wronged in a similar way.'" *Bates*, 511 F.3d at 985 (quoting, respectively, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992), and *Lyons*, 461 U.S. at 111). Plaintiff's statutory-standing theory addresses only the first inquiry (concrete and particularized harm), whereas here the district court deemed standing lacking under the second inquiry (likelihood of repetition).

The Supreme Court made this distinction abundantly clear in *O'Shea*. As for the first inquiry, the Court noted that "[p]laintiffs in the federal courts must allege some threatened or actual injury resulting from the putatively illegal action before a federal court may assume jurisdiction," 414 U.S. at 493 (internal quotation

marks omitted), and appended a footnote acknowledging that "Congress may enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," *id.* n.2 (internal quotation marks omitted).  As for the second inquiry, the Court proceeded to state that "[t]he injury or threat of injury must be both real and immediate."  *Id.* at 494 (internal quotation marks omitted).  And in the injunction context, this latter requirement demands "a real and immediate threat of *repeated* injury."  *Id.* at 496 (emphasis added).  Here, Plaintiff failed at this latter step of the standing analysis, not at the former step under which a statutory-standing theory would have been relevant.

Taking a different tack, Plaintiff again chooses to mischaracterize Judge Breyer's reasoning.  It is simply not the case that "the district court's approach" would "eliminate[]" the possibility of obtaining injunctive relief under the statutes at issue here.  Br. of Appellant 52.  That argument depends on the premise that "[c]lass representatives could not sue because once fooled they *would not purchase* the same products *if they remained mislabeled and misbranded*."  *Id.* (emphases added).  But Judge Breyer was explicit in stating that Plaintiff merely needed to allege "that he *might purchase* Hunt's products in the future *if they were properly labeled.*"  ER 28 (emphases added).  And, the court underscored, that was not even a tall order, as Plaintiff holds no principled objection to consuming the ingredients he claims are unnatural and/or artificial here.  ER 27-28 ("While Jones testified

53

that he makes an effort to seek out natural foods in his diet . . . , he also testified that he might actually prefer products not labeled 'natural' depending on price, content and flavor. . . . He also, after filing the lawsuit, purchased other brands of canned tomatoes that contained citric acid and calcium chloride." (citing ER 496, 503, 508)).  In short, to borrow Breyer's words, Plaintiff's recycled argument about "not getting fooled again" amounts to no more than a "straw horse."  ER 29 (discussing Rule 23(b)(2) standing with respect to rejected Swiss Miss class); *see also Mason v. Nature's Innovation, Inc.*, No. 12CV3019 BTM(DHB), 2013 WL 1969957, at *4 (S.D. Cal. May 13, 2013) ("[I]t is an exaggeration to claim that injunctive relief would never be available in false advertising cases. There are cases where a consumer would still be interested in purchasing the product if it were labeled properly—for example, if a food item accurately stated its ingredients."), *appeal dismissed for lack of jurisdiction*, No. 13-56010 (9th Cir. Oct. 25, 2013).

Plaintiff's contention that the district court's approach would eliminate injunctive relief fails for another reason as well.  Federal justiciability rules—including standing—apply by their own force only in federal courts, or at least only with respect to federal causes of action. *See, e.g.*, *Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund*, 500 U.S. 72, 78 (1991) (noting that "the requirements of Article III plainly will not apply" in "state court"); *Pence v. State*,

54

652 N.E.2d 486, 488 (Ind. 1995) ("Federal justiciability limits have no direct applicability here.").  Nothing about the district court's straightforward approach to this federal question could possibly preclude plaintiffs from suing in state court under state causes of action, which are entirely dependent on state law.  Indeed, the Supreme Court of California has gone out of its way to declare that California imposes laxer standing obligations in the injunction context.  *Langford v. Superior Court*, 729 P.2d 822, 833 n.6 (1987) ("California's requirements are less stringent than those imposed by federal law." (citing *Lyons*, 461 U.S. 95) (internal quotation marks omitted)).

Plaintiff next—and relatedly—offers a hodge-podge of contentions implying that state law should control the federal standing analysis.  *See* Br. of Appellant 51 ("[T]here is only a single standard for standing for class representatives for injunctive relief and damages/restitution under the UCL, FAL, or CLRA." (citing state statutes)); *id.* at 53 ("To hold [against standing here] would eviscerate the intent of the California legislature in creating consumer protection statutes."); *id.* at 54 ("[A]s a matter of statutory language, an injunction can be obtained against a defendant that engaged in unfair competition in the past." (citing state statute)).  But the district court already rejected variations on this theme for exceedingly persuasive reasons.  As Judge Breyer explained: "It may very well be that the legislative intent behind California's consumer protection statutes would be best

55

served by enjoining deceptive labeling. . . . But the power of federal courts is limited, and that power does not expand to accommodate the policy objectives underlying state law." ER 28 (internal quotation marks omitted). For this proposition, Breyer relied on *Hollingsworth v. Perry*, 133 S. Ct. 2652 (2013), in which the Supreme Court flatly rejected the argument that "mere authorization [by a state] to represent a third party's interests is sufficient to confer Article III standing on private parties with no injury of their own." *Id.* at 2665.

Plaintiff's remaining arguments can be quickly discarded. First, Plaintiff argues that "the district court failed to realize there are a number of scenarios where Jones remains at risk of future harm even if he is now aware the '100% Natural' food products he purchased contained unnatural ingredients." Br. of Appellant 54. Specifically, he contends that he is "allowed" to rely on such label statements without doing "further investigation to see if the products [a]re still in violation of the law." *Id.* And he later suggests (in a farfetched scenario, to say the least) that he could be held liable for "hold[ing] . . . food that is misbranded" under Cal. Health & Saf. Code § 110760 simply by "purchasing any misbranded product." *Id.* at 55. But Plaintiff's effective repudiation of the possibility that he would again purchase Hunt's products—the very basis of the district court's standing decision—knocks the factual predicate out from under these propositions.

56

Second and "[s]imilarly," Plaintiff says, "ConAgra could substitute other less known preservatives or synthetic chemicals and thus deceive [him] again with the same false natural and no preservative claims." *Id.* at 54. Or Plaintiff "could pick up other ConAgra food brand products [with the challenged label statements] and be deceived by those products' labels even if [he] were aware of the Hunt's violations." *Id.* at 54-55. But such "highly attenuated chain[s] of possibilities" cannot support standing given that "threatened injury must be certainly impending," as the Supreme Court has repeatedly held. *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1148 (2013) (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009); *Whitmore v. Arkansas*, 495 U.S. 149, 157-60 (1990)). For similar reasons, the district court could not fashion an injunction reaching ingredients or products beyond those Plaintiff has placed at issue here. *See Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("The remedy must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established."); *Califano*, 442 U.S. at 702 ("The scope of injunctive relief is dictated by the extent of the violation established.").

On these grounds, the district court correctly held that Plaintiff's proposed class cannot proceed under Rule 23(b)(2).

## CONCLUSION

For the foregoing reasons, the district court acted did not abuse its discretion in denying Plaintiff's motion for class certification. This Court should affirm the denial of class certification and dismissal of the action with prejudice.

## STATEMENT OF RELATED CASES

Under 9th Circuit Rule 28-2.6, we are aware of one related case pending in this Court that comes within the requirements of the Rule. *Brazil v. Dole Packaged Foods, LLC*, No. 14-17480, will likely raise closely related class-certification issues.


Dated: January 21, 2015                     Respectfully submitted,

                                                          MCGUIREWOODS LLP


                                                          /s/ A. Brooks Gresham
                                                          A. Brooks Gresham
                                                          Laura Coombe
                                                          Joan S. Dinsmore
                                                          Katherine Mims Crocker


                                                          *Counsel for Defendant-Appellee*
                                                          *ConAgra Foods, Inc.*

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 13,998 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2. This brief complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in proportionally-spaced typeface using Microsoft Word, in 14-point size.

Dated:  January 21, 2015 /s/ A. Brooks Gresham

*Counsel for Defendant-Appellee*
*ConAgra Foods, Inc.*

59

| 9th Circuit Case Number(s) | 14-16327 |
|---|---|

**NOTE**: To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date)  January 21, 2015 .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format)   /s/A. Brooks Gresham

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date)  .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Signature (use "s/" format)


American LegalNet, Inc.
www.FormsWorkFlow.com