## NO. 14-16327

In the

# United States Court of Appeals
## For the Ninth Circuit

———————

LEVI JONES, *Plaintiff-Appellant,*

v.

CONAGRA FOODS, INC., *Defendant-Appellee.*

———————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
(The Honorable Charles R. Breyer)
Case No. 3:12-cv-01633

———————

### SUPPLEMENTAL EXCERPTS OF RECORD OF DEFENDANT-APPELLEE CONAGRA FOODS, INC.
### VOLUME 1 OF 1

———————

A. Brooks Gresham SBN 155954
Laura Coombe SBN 260663
MCGUIREWOODS LLP
1800 Century Park East, 8th Floor
Los Angeles, CA 90067
Telephone: (310) 315-8291

Joan Dinsmore SBN 245629
MCGUIREWOODS LLP
434 Fayetteville Street
Raleigh, NC 27601
Telephone: (804) 775-4716

Katherine Mims Crocker
(Admitted to Ninth Circuit)
MCGUIREWOODS LLP
901 East Cary Street
Richmond, Virginia 23219
Telephone: (804) 775-4747

*Attorneys for Defendant-Appellee ConAgra Foods, Inc.*

# SUPPLEMENTAL EXCERPTS OF RECORD
# INDEX

## VOLUME 1 OF 1

| DOCKET NO. | DOCUMENT | DATE | PAGE |
|---|---|---|---|
| 236 | Transcript of Proceedings | 6/6/14 | SER1 |

                                            Pages 1 - 32

                    UNITED STATES DISTRICT COURT

                  NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Charles R. Breyer, Judge

LEVI JONES, et al.,              )
                                 )
          Plaintiffs,            )
                                 )
  VS.                            )    NO. C 12-01633 CRB
                                 )
CONAGRA FOODS, INC.,             )
                                 )
          Defendant.             )
_____)

                            San Francisco, California
                            Friday, June 6, 2014

                  TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

For Plaintiffs:
                        LAW OFFICE OF DAVID SHELTON
                        P.O. Box 2541
                        1223 Jackson Avenue East, Suite 202
                        Oxford, Mississippi 38655
                  BY:   DAVID SHELTON, ESQ.

                        BARRETT LAW GROUP, P.A.
                        P.O. Box 927
                        Lexington, Mississippi 39095
                  BY:   BRIAN HERRINGTON, ESQ.

                        PRATT & ASSOCIATES
                        1871 The Alameda, Suite 425
                        San Jose, California 95126
                  BY:   PIERCE GORE, ESQ.


          (APPEARANCES CONTINUED ON FOLLOWING PAGE)



Reported by:        James C. Pence, RMR, CRR, CSR No. 13059
                    Official Court Reporter

```
 1   APPEARANCES:   (CONTINUED)

 2   For Defendant:
                              MCGUIRE WOODS LLP
 3                            1800 Century Park East, Eighth Floor
                              Los Angeles, California 90067
 4                   BY:  LAURA E. COOMBE, ESQ.

 5                            HOGAN LOVELLS US LLP
                              4085 Campbell Avenue, Suite 100
 6                            Menlo Park, California 94025
                     BY:  ROBERT B. HAWK, ESQ.
 7                        STACY R. HOVAN, ESQ.

 8                            HOGAN LOVELLS US LLP
                              3 Embarcadero Center, Suite 1500
 9                            San Francisco, California 94111
                     BY:  BENJAMIN T. DIGGS, ESQ.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1    Friday - June 6, 2014                           10:30 a.m.

 2                      P R O C E E D I N G S

 3                         ---000---

 4         THE CLERK:  Calling Case C 12-1633, Jones versus

 5    ConAgra Foods.

 6         Appearances, counsel.

 7         MR. SHELTON:  Good morning, Your Honor.  David Shelton

 8    on behalf of the plaintiffs.

 9         THE COURT:  Good morning.

10         MS. COOMBE:  Good morning, Your Honor.  Laura Coombe

11    with McGuire Woods on behalf of ConAgra.

12         MR. HERRINGTON:  Good morning, Your Honor.  Brian

13    Herrington on behalf of the plaintiffs.

14         MR. GORE:  Good morning, Your Honor.  Pierce Gore on

15    behalf of plaintiffs.

16         THE COURT:  All right.

17         MR. HAWK:  Good morning, Your Honor.  Robert Hawk from

18    Hogan Lovells on behalf of defendant ConAgra Foods.

19         MR. DIGGS:  Good morning, Your Honor.  Benjamin Diggs

20    from Hogan Lovells on behalf of ConAgra.

21         MS. HOVAN:  Stacy Hovan of Hogan Lovells on behalf of

22    ConAgra.

23         THE COURT:  Good morning.

24         Well, if you look to my left and your right, you will see

25    the very few documents that have been filed in this matter;
```

1    right?  I think I have, what, about -- sometimes I take out my

2    yardstick, but no, it's under a yard of materials.  Okay.

3    Under three feet.  It's not -- doesn't exceed that, but, you

4    know, I contributed to that.

5        I -- I sort of went back and forth on how to deal with it,

6    and now I'm, as they say, in receipt of my just desserts;

7    right?  And so I have these three motions or basically three

8    class certification motions for Swiss Miss and the tomato

9    products and PAM; right?

10       Okay.  So I wanted to ask one question in particular

11   because there was a point that was raised, I think, by

12   plaintiff in connection with Swiss Miss, and I don't think the

13   defendants had an opportunity to respond to it, and I'm trying

14   to find exactly what the -- where is this?  63 pages.  Thank

15   you.

16       Plaintiffs argue that Swiss Miss Products are legally

17   worthless because they are illegal to sell or possess and

18   therefore result in damages equal to the entire purchase price,

19   and then the plaintiff argues that the Court could award

20   nominal damages under the California Civil Code -- that was

21   it -- or statutory damages; and therefore, we don't need the

22   damage model --

23           MR. HERRINGTON:  Correct, Your Honor.

24           THE COURT:  -- is that right?

25       So I can award statutory or nominal damages.  That's your

```
 1   argument; right?
 2           MR. HERRINGTON:  Yes, Your Honor.
 3           THE COURT:  And I don't think you had the opportunity
 4   to respond to that argument.
 5           MR. HAWK:  And where -- under what statute are they
 6   saying --
 7           THE COURT:  California Civil Code Section 3360.
 8        Or statutory damages under the CLRA.  That's your
 9   argument?
10           MR. HERRINGTON:  That is correct, Your Honor, and it
11   is an alternative argument.
12           THE COURT:  Do you wish to respond to that?
13           MR. HAWK:  I didn't even catch that when they -- when
14   they argued it, Your Honor.  So we'd be glad to look at that
15   and submit a brief on it if that's -- if that's an issue.
16           THE COURT:  Well --
17           MR. HAWK:  We focused on their damage models,
18   Your Honor, and --
19           THE COURT:  Assuming that they've met the other
20   requirements of Rule 23 -- which you don't, but assuming that
21   they have, the question is whether they can use the statutory
22   or nominal damage calculation here.  They say, "Yes," and you
23   didn't respond.  You didn't respond because they filed it in
24   their reply, as I understand it.  I mean --
25           MR. HERRINGTON:  It was flushed out in our reply.
```

```
 1    That's correct.

 2              MR. HAWK:  Yeah.

 3              THE COURT:  Okay.  That's a euphemism.

 4              MR. HAWK:  It escaped me, Your Honor.

 5              THE COURT:  All right.  Well --

 6              MR. HAWK:  They flushed it out in their -- wherever

 7    they flushed it out, but I certainly didn't see it.  Your Honor

 8    is right that the other issues -- I think they'd lose -- they'd

 9    fail on other issues on class certification before you get to

10    that, but we would appreciate the opportunity, if that is

11    troubling the Court or if --

12              THE COURT:  Well, I think it's a question I'd like

13    answered, and I'm going to give you -- where -- you're not

14    here, are you?  Are you in --

15              MR. HAWK:  I'm -- we're -- yes.  We're in San

16    Francisco and down in Menlo, Your Honor.

17              THE COURT:  All right.  Well, if you could by

18    Tuesday -- I don't think it's a complicated thing.  Tuesday --

19    if you could by Tuesday at 5:00 address that --

20              MR. HAWK:  Absolutely.

21              THE COURT:  -- in five or fewer pages, and the

22    emphasis is on "fewer."  Okay?

23              MR. HAWK:  Absolutely.

24              THE COURT:  Because I think when an argument is raised

25    in reply, the other side should have the opportunity to address
```

```
 1    it.
 2        Okay.  Now, other than that, does anybody want to add
 3    anything to what has already been said?
 4            MR. HERRINGTON:  Your Honor, for the plaintiffs, the
 5    moment I start off on some point will be the one that
 6    Your Honor was with me, and then I'll lose you.  So I'm going
 7    to --
 8            THE COURT:  Well, I don't know -- I'm not indicating
 9    how I am --
10            MR. HERRINGTON:  I would -- I am -- I think that our
11    briefs set out our points pretty well, and I'd be happy to
12    answer any questions the Court has.
13            THE COURT:  Okay.  All right.  Fair.
14            MR. HAWK:  Your Honor, I know there's been a lot of
15    ink spilled and paper generated, but there are some big-picture
16    issues that we would like to address, if we could, Your Honor.
17            THE COURT:  All right.
18            MR. HAWK:  And I guess I would -- I would start with
19    PAM, if I could, Your Honor.  That's the one that's been around
20    the longest.  Certainly, the motion has been around the
21    longest, and really, I wanted to talk about just --
22    ascertainability just briefly.  I wanted to talk about standing
23    and typicality of Ms. Sturges as a class representative for PAM
24    and then really just wanted to talk about predominance both
25    with regard to damages and with regard to reliance, slash,
```

1    materiality.

2        So, Your Honor, to start with ascertainability, with PAM,

3    you have -- and it would be nice if I had the cans to line up

4    here, but there's seven different varieties of PAM, and there

5    are different sizes and different varieties, but the important

6    thing here is that three of those varieties of PAM never had

7    "100% Natural," which is, you know, the big claim here about --

8    about -- the big challenge claim is "100% Natural" on the PAM.

9        Those didn't have "100% Natural" at any time during the

10   class period.  What they did have during some points during the

11   class period was "Made With 100% Natural Vegetable Oil," which

12   is not a claim that's been challenged here.  It really couldn't

13   be challenged here.  It's absolutely true.

14       Your Honor, in fact, the last time we were here raised the

15   issue of whether or not -- even if it just said, "100% Natural"

16   on the can, who would -- who would think that that applies to

17   the propellant?  I'll remind Your Honor you said that, you

18   know, "What's 100-percent natural propellant?  Do they get it

19   out of the Old Faithful Geyser or whatever?"

20       I mean -- and to that point, Your Honor, there is --

21   there's such a variety of different statements on other cans of

22   PAM.  They've had "100% Natural" on there during some parts of

23   the class period, not -- absolutely nothing -- no reference to

24   natural during other parts of the class period.  Instead,

25   they've been touting that -- the advantages of the

```
 1   nonstickiness or the easy cleanup.
 2       But the point on ascertainability, Your Honor, is that you
 3   have a very strong brand here.  You have people out there who
 4   may be able to say, "Well, I bought a can of PAM in 2009 or
 5   2010."  Well, you know, I really kind of doubt that, but one
 6   thing they're not going to be able to remember, Your Honor, to
 7   a certainty is whether or not that can of PAM had "100%
 8   Natural" on it or had "100" -- "Made With 100% Natural
 9   Vegetable Oil," in which case there would be no claim of
10   wrongdoing in this case.
11       And so what you have, Your Honor, is a situation where
12   it's just a certainty that the class is not ascertainable.
13   Now, you know, plaintiffs' point -- they say, "Well, you know,
14   that's kind of the Third Circuit argument," that Carrera case
15   in the Third Circuit, but we don't need to go there,
16   Your Honor.  I mean, I happen to agree with the Third Circuit,
17   but that's not the law -- I understand that's not the law here,
18   but this case is different.
19       This case is -- it's not just a situation where, you know,
20   it's a -- you've seen the law, I'm sure, Your Honor.  It says
21   that you don't have to identify all the class members at class
22   certification.  They don't have to be identified, and so you
23   can get past -- and all you need is just a -- one objective
24   criterion on which you could identify a class member; but,
25   Your Honor, we know in this case that the class is never going
```

1  to be ascertainable, the true class.

2       And so to go ahead and certify a damages case to try when

3  you know that the people -- if the liability were proved,

4  you're never going to be able to distribute awards.  I mean,

5  for anybody to come forward and say, you know, "I know I bought

6  five cans of PAM.  Three of them had '100% Natural Oil,' and

7  the others didn't" -- well, anyway, that's our ascertainability

8  pitch, Your Honor.  It's just -- it's just not here in this

9  case.

10      And so if you were to rule that this class is

11 unascertainable and, on that basis, not certify the class, that

12 would not be the end of class actions -- consumer class actions

13 as we know it.  It would not be the end of consumer class

14 actions for --

15           THE COURT:  It would be the end of this class action.

16           MR. HAWK:  It would be the end of this class action,

17 Your Honor, and that's what I'm focused on, and I think --

18           THE COURT:  Let me hear -- let me hear the -- your

19 opposing counsel address the issue of ascertainability because

20 that is a serious question in this case -- in all three, but

21 it's serious in this case.

22           MR. HERRINGTON:  Right.

23      Your Honor, there are multiple points in rebuttal to that,

24 and in no particular order, I'll take them in -- my opposing

25 counsel brought up -- said it's just a certainty that people

1   won't be able to tell what they've bought.  Well, "just a

2   certainty" is Mr. Hawk's arguments.  It's not evidence.

3   There's zero evidence in this record that people won't be able

4   to remember what they bought.  There is evidence to the

5   contrary.

6       Both -- excuse me.  Ms. Sturges testified to what she

7   bought.  She wasn't confused.  She knew what she had bought.

8   So there is no evidence at all to suggest consumer --

9           THE COURT:  So what did Ms. Sturges say she said she

10  bought?

11          MR. HERRINGTON:  The "100% Natural," correct.  So

12  actually it is not just a certainty.  It is -- it is a

13  certainty that there's no evidence of consumer confusion.

14      Second, he talks about damages.  Well, the fact that they

15  made various brand -- or various labels is irrelevant.  We're

16  not suing over those labels.  Those aren't at issue, and so

17  they can't take lawful products, talk about them, and say, "See

18  how confusing it is?  Look at all these lawful products."

19  Those aren't at issue.

20      The class definition doesn't include those products.  The

21  class definition fits what the law says and what the Ninth

22  Circuit says and what District Court after District Court in

23  this jurisdiction say about ascertainability, which is a class

24  must be defined with reference to objective terms.  We have

25  limited it to a particular product in a particular time frame

1    in a particular geographic region.  Judge Koh said that is

2    ascertainable, Judge White said that is ascertainable in almost

3    identical misbranding cases.

4        Regarding damages, this makes disgorgement all the better

5    because we can take their sales of the "100% Natural" and say,

6    "That's what you have to disgorge."  That way, they aren't

7    disgorging money that they made from the sale of one of these

8    other products that may have been lawful but just isn't part of

9    this lawsuit.

10       Under the UCL and the FAL, disgorgement is looked at from

11   the defendant -- it's looking at the defendant's conduct.  So

12   if we make them disgorge just those amount of monies that they

13   made from the "100% Natural" and none of the others, then they

14   disgorged only money related to the unlawful product.

15       Finally, he mentions that consumers will come in and say,

16   "I bought this product," and though they can be mistaken or

17   they'll just be outright lying, there is no empirical evidence

18   that consumers were given the opportunity to make voluminous

19   amounts of false claims.  Empirical study after empirical study

20   shows that class members tend to -- tend to not make claims.

21       The cases are legion where there was a settlement amount,

22   for example, and the consumer claim rate was in the single

23   digits or maybe 10 percent, the exact opposite of some rush to

24   the courthouse with false affidavits, and there's just no

25   reason to believe that allowing class members to self-identify

1    is going to lead to anything other than truthful claims being

2    paid.  There's no evidence to the contrary.

3         Their ascertainability argument is 100-percent lawyer

4    argument, not based on any evidence whatsoever.

5              MR. HAWK:  Could I respond, Your Honor?

6         First of all, I did say to a certainty that you're not

7    going to have -- you're going to have very, very few members of

8    the class who are going to be able to come forward and

9    truthfully say that "I purchased," you know, however many cans

10   of PAM or even purchased one can of PAM in prior years that

11   either had "Natural" on it and didn't have "Made With 100%

12   Natural Vegetable Oil."

13        I -- you know, evidence of that -- I suppose you could do

14   a consumer survey, but certainly the Third Circuit and even

15   District Courts within this Circuit have found that just

16   general knowledge, just common sense -- we know that people

17   don't have -- they don't keep receipts.  This plaintiff didn't

18   keep receipts.

19        And so while she testified that she bought cans of PAM

20   with "Natural" on it, she also had no idea how many she bought.

21   She didn't know -- had no idea what she paid for them, and --

22   and that's important, but let me -- you know, he says there's

23   no evidence in this case that -- that consumers aren't going to

24   be able to come forward with this information.  There is

25   actually some very interesting evidence in this case on that

1    fact.

2         I took the deposition of plaintiffs' materiality expert

3    Professor Caswell in Massachusetts, and Professor Caswell -- I

4    asked her -- I said, "Well, do you ever buy PAM?"

5         And she says, "Yeah.  Yeah.  We have a can of it at home.

6    My husband and I do."

7         And I said, "Does it have 'Natural' on the label?"

8         And she says, "Well, I don't know whether it has 'Natural'

9    on the label."

10        And then I said -- I said, "Well, is that word material to

11   you?  Is the word 'Natural' material when you see it on the

12   food product that you're interested in purchasing?"

13        And she said, "I personally do not pay much attention to

14   natural claims."

15        And that was their expert on materiality, but two points

16   here.  We're on ascertainability.  We're on ascertainability.

17   Even their own expert, who had purchased PAM, couldn't tell me

18   whether or not it had "Natural" on the label.  As far --

19             THE COURT:  What about that?  If you can't -- if you

20   can't testify that she knows whether it had "Natural" on the

21   label, isn't that a problem?

22             MR. HERRINGTON:  No.  He's talking about our

23   plaintiff -- our expert, not our client.

24             THE COURT:  No, no, no, no.  What about your client?

25   Ms. Sturges; right?  Sturges?

```
 1              MR. HERRINGTON:  Sturges, yes.
 2         And she testified, "I bought 100% Natural PAM."
 3              THE COURT:  She said she didn't read the ingredients.
 4    Is that it?
 5              MR. HERRINGTON:  She didn't --
 6              THE COURT:  Is she saying the propellant -- is she
 7    saying that the term "propellant" -- that she understood what
 8    was meant by "propellant" and that she thought that that was
 9    natural?
10              MR. HERRINGTON:  She didn't know that it was -- that
11    would be inconsistent with "Natural."
12              MR. HAWK:  What she said, Your Honor -- I'm just
13    trying to find it here.  She testified that she knew that there
14    was propellant in the can when she bought it, but she didn't
15    believe that there was propellant in the food and so wasn't
16    concerned about that when she bought the product.
17         Now --
18              MR. HERRINGTON:  Well, there's Ninth Circuit case law
19    that talks about how a company can't say on the front an
20    unlawful misrepresentation and then try to somehow disclaim it
21    in the back, somehow try to explain it away in the back.  It's
22    not incumbent upon a plaintiff to look at a can -- at the label
23    on the front and then turn over the back to see if there's
24    something that would disqualify what's on the front.
25              MR. HAWK:  Well, Your Honor, the -- this really goes
```

1  to -- the plaintiffs really had sought to certify initially two

2  different claims, if you will, on PAM, two different

3  challenges.  One was the "100% Natural" label.  The other one

4  was the failure to identify the constituent components of the

5  propellant on the can, and what we did in our opposition -- we

6  argued mostly about natural because that was just sort of the

7  big -- our perception was the big claim by the plaintiffs.

8       But the alternative claim that ConAgra was doing something

9  wrong by just having "Propellant" on there and not saying what

10  the specific components of the propellant was -- we made the

11  argument based on her testimony -- she testified -- Sturges

12  did -- is that she never looked at the ingredients list.  She

13  didn't care.  She didn't look at it.

14       And so for that claim, she has no standing as a class

15  plaintiff to assert that claim, and, you know, that is another

16  prerequisite to class certification, is that your -- your named

17  plaintiff has standing to assert the claim, and she didn't, and

18  there was no response to that argument.  So that -- that

19  argument, we submit, Your Honor, is out.

20       The only thing that should be focused on is the "100%

21  Natural" claim, and for that one, I think there is evidence in

22  the record.  I just alluded to it.  It was -- it was testimony

23  from a class member, albeit their own expert on materiality,

24  who told me that she had no idea whether the can of PAM that

25  she bought had "Natural" on it.

1          THE COURT:  That would be true.  I bought PAM -- maybe
2     you'll want to disqualify me or not, which, by the way, I'd
3     welcome --
4                        (Laughter)
5          THE COURT:  -- but I have no idea what was on the
6     label.  I mean, I can never testify what was on the label.  I
7     may know what the can -- I see the can a thousand times.  I
8     mean, every time I open up my cabinet, it's there.  It's a big
9     product.  I mean, I've used it.
10         MR. HERRINGTON:  Correct.
11         THE COURT:  And I can't tell you what's on the label.
12    So it's not that it comes as any surprise to me that anybody
13    you pick out, you know, may have a failure of recollection,
14    but -- I mean, what defendant is saying is that can be fatal.
15    He says in this case it's fatal because you can't logically
16    expect a group of people, what we call a class of people, who
17    saw the label and bought by virtue of it being said, "100%
18    Natural" or whatever was said because they just don't remember.
19    They don't remember.
20         I mean, you can certainly -- if it weren't PAM and
21    something else, you can certainly put a class together of
22    people who bought PAM.  That's not a problem because they know
23    it.  They remember it.  They don't even need a receipt.  They
24    know it.
25         MR. HERRINGTON:  Yeah.  If we brought a -- I'm sorry.

1   I didn't mean to interrupt.

2           THE COURT:  That's all right.  No.  Go right ahead.

3           MR. HERRINGTON:  If we brought a case against PAM,

4   just all of them --

5           THE COURT:  Yeah.

6           MR. HERRINGTON:  -- they would talk about the

7   variations in the label, and some bought it for this label,

8   some bought it for that label.  And what they're doing now --

9   what he's doing now is he's confusing liability with class

10  certification, saying that -- whether there's reliance on

11  propellant or not.

12          Propellant is simply the reason why they can't say "All

13  Natural."  That's the way we prove the case on the merits, that

14  you can't have lighter fluid in a product and then say "All

15  Natural" on the front.  That's liability.  That's not class

16  certification.  Class certification is anyone who purchased the

17  "All Natural."

18          And as far as standing goes, my opposing counsel is trying

19  to turn class actions on their head and say that every

20  individual class member has to be able to come in and prove his

21  or her case, which puts out to the class members in this

22  existential dilemma.  They're told, "You can't afford" -- or

23  they know, "We can't afford to bring a case on our own

24  individually, but we can afford to do it on a representative

25  basis; but to participate in a representative basis, which we

1   can afford, we've got to prove our individual claim, which we

2   can't do."

3       That's exactly what their argument is, and as far back as

4   1975, the Ninth Circuit in the *Blackie* case said that's just

5   not the way it works.  A class action is a representative

6   action.  Defendant will be able to rebut specific issues, but

7   those don't turn it into an individualized inquiry on all those

8   issues, but that's exactly what he's trying to do.

9       MR. HAWK:  Two -- two very quick points on this, and

10  I'd like to move on, if it please the Court.

11      But on ascertainability, Number 1, it would be

12  inefficient, it would be pointless, and it would be unfair to

13  certify a class for damages when you know fairly well, based on

14  common experience and common sense, that the class of people

15  who would potentially benefit from any damage award will never

16  be able to honestly come forward --

17      THE COURT:  Here's what I wonder about your argument,

18  and I understand, I think, what you're saying.  But the purpose

19  of class actions, as I understand them, is in part everybody's

20  damage is so slight.

21      And I don't -- I don't want to minimize it in the sense

22  that -- that I'm saying a person can't be injured, but people

23  aren't going to run into the courts if what they did was buy a

24  can of PAM for whatever it costs over time -- I don't even

25  know -- a dollar, 2 dollars.  I don't know what it costs,

1  probably more -- because it's -- they're going to say, "Look,
2  you know, it's not worth it."  That's what they say.
3      So you say, "Well, class actions" -- just because the
4  damages may be -- by person to person may be very slight,
5  there's a basic public policy in encouraging class actions,
6  allowing them to be bound together, and you can get -- you can
7  have a class of a hundred thousand people who are injured by
8  this; but individually on a merits basis, they wouldn't have
9  come in, they don't remember exactly what the damage is, what
10 they paid, and so forth and so on.
11      I think defense counsel's argument is "Well, wait a
12 minute.  I'm not talking about the minor damage that may have
13 occurred.  I'm talking about did they buy this product because
14 of what was said on the label," and that's -- you know, that's
15 the sine qua non of -- that's not just a liability question.
16      That's a -- that's a -- a class certification because you
17 have to put together a class of people who purchased the good
18 as a result of what they saw on the label -- that is, "100%
19 Natural" -- and if you can't find anybody who comes in and
20 says, "Well, by the way, I bought this product because it said
21 100% Label -- 100% Natural," then I just wonder whether you can
22 put a class together of these people.  I think that's what
23 you're saying.
24      I don't -- maybe I'm not -- and I'd like you to respond to
25 that, but I think that's what defense counsel is saying.  So

1   he's not just talking about liability.  He's talking about

2   ascertainability.  He's talking about can there be people who

3   would come in and say that this is what they did and what --

4   this is why they did what they did.

5       And he says, "Logically speaking, common sense tells us

6   they can't."  And that, by the way, runs through with respect

7   to all of these products, as I understand it.  So it's not an

8   unimportant point.  I know you're not treating it as an

9   unimportant point, but that's his point.

10      MR. HERRINGTON:  Right, and -- but the evidence is to

11  the contrary.  Ms. Sturges says, "I bought this product because

12  it said 100% Natural."

13      And the rebuttal to that from ConAgra is "But, boy, common

14  sense just tells you that there are going to be all these

15  people out there who won't be able to remember.  We don't have

16  any evidence of it, but it just seems like it's going to be

17  hard for them to remember."

18      Well, it wasn't for the plaintiff in the case, who he had

19  the opportunity to cross-examine.  She said, "I bought it

20  because of 100% Natural."

21      Now, materiality is what we're really talking about, and

22  we're conflating it with ascertainability, whether that's

23  material, whether people relied on that.  That is an objective

24  test, and the cases that are all in our brief -- they're legion

25  that it is an objective test based on what a reasonable

1    consumer would believe.

2        Would a reasonable consumer find "100% Natural" to be

3    material?  The answer is yes.  Proof of that is, Number 1, our

4    own plaintiff.  Proof further is ConAgra's conduct.  They

5    placed that on the label for a purpose.  Their marketing

6    department wasn't sitting around flinging pencils into the roof

7    thinking, "What do we want to put on the label this week?  Why

8    don't we go with 100% Natural?"

9        They spend millions of dollars conducting market research

10   to find out what will resonate with consumers.  They didn't go

11   to Ms. Sturges and say, "How would you like the label to read?"

12   They knew before --

13        THE COURT:  So your point is -- is that you look at

14   the label, they chose the label, and whatever is on that label,

15   they must think it is important in terms of -- for material

16   importance of selling the product?

17        MR. HERRINGTON:  Of course it is.

18        And third, the legislature has regulated this, and under

19   the *Hinojos* case, it's material as a matter of law.

20        THE COURT:  Your response, Mr. Hawk?

21        MR. HAWK:  Yes, Your Honor.

22        I do want to talk about materiality, but I did want to

23   just close off ascertainability --

24        THE COURT:  Yeah.

25        MR. HAWK:  -- because I don't think you even get to

1  materiality in the ascertainability argument.  Our
2  ascertainability argument is about -- as a practical matter,
3  should the Court certify this class because will -- you know,
4  regardless of what is on the label or the materiality or why
5  ConAgra put it there, under these facts, will the Court, will
6  the parties, will the class members ever be able to identify
7  who the class members are?
8        THE COURT:  Well -- but plaintiff says, "My suggested
9  plaintiff, my lead plaintiff, said yes."  And, you know, you
10  may not believe her.
11        MR. HERRINGTON:  Exactly.
12        THE COURT:  You may think, "Well, that's because, you
13  know, they've had quite a few discussions on this subject, and
14  she's got her eye on the ball" and so forth and so on.  That
15  sort of goes to credibility -- or does go to credibility, but
16  it's there.  She said, "I bought it because it said 100%
17  Natural."
18        MR. HAWK:  But --
19        THE COURT:  She says that.
20        MR. HAWK:  -- they've got a class of one so far,
21  Your Honor.  Their expert, a member of the class, couldn't
22  self-identify, and -- but more -- more to the point --
23        MR. HERRINGTON:  She did.
24        MR. HAWK:  -- even though she testified that she knew
25  that -- she knew that she had bought -- if, in fact -- I don't

1   know --

2          THE COURT:  So do I just reject it out of PAM?  Can I

3   just reject it out of PAM and say, "Well, that's one person"?

4   And I'm not passing on her credibility, but some of it I can,

5   but this -- unless it's totally implausible -- maybe I can if

6   it's just totally implausible, something like under *Iqbal* and

7   *Twombly* where you can say, "Well, that's not a plausible

8   statement."

9       But can I just reject it by -- by -- by not knowing

10  whether there are other people out there who would say the same

11  thing?

12         MR. HERRINGTON:  No, Your Honor.  I think --

13         THE COURT:  I could if it's totally implausible, but

14  can I do that as a matter of law?

15         MR. HAWK:  Well, Your Honor, I would submit that you

16  don't have to do that.  You don't have to get there as a matter

17  of law.  This is one person.  I don't think the fact that the

18  class plaintiff who selected herself to work with class counsel

19  here to come into court and say that she bought it --

20         THE COURT:  But that would be true -- say they said,

21  "Okay.  I've got five plaintiffs.  I want to bring five

22  plaintiffs in."

23         MR. HERRINGTON:  Right.

24         THE COURT:  And so here come five plaintiffs named and

25  so forth, and you depose them, and all five say, "Yes, I bought

```
 1    it because it said 100% Natural."
 2         And so then you say, "Well, yes," but how many cans of
 3    Spam -- PAM, whatever -- how many of these cans did you sell in
 4    the class period?  How many cans?
 5              MR. HAWK:  How many cans were sold in the class
 6    period?
 7              THE COURT:  Yeah, roughly.
 8              MR. HAWK:  I don't even -- you know, hundreds of
 9    thousands.
10              THE COURT:  Hundreds of thousands.
11         So would you say five out of hundreds of thousands?
12              MR. HERRINGTON:  No, Your Honor.
13              THE COURT:  You say -- you say, "Really?  Really less
14    than 100th of 100th of 100 percent?  That's not" -- "that's not
15    enough here."  I mean, you'll always be able to make that
16    argument in a mass-produced, mass-marketed point.  So I think
17    really what you're saying is to find her claim implausible.
18              MR. HAWK:  I don't find it implausible, Your Honor,
19    that one person could remember that she bought it, and I think
20    she still had the can of PAM.  So, you know, she -- she had --
21    you know, she can look back and see that it had "Natural" on
22    it.
23         But what she didn't remember, Your Honor -- and just
24    because one person, the .0001 percent, did it, I think the
25    Court is entitled to do what the Third Circuit did and what
```

1    other courts have done and say, "I know, based on common

2    experience and the facts here, that this class is not going to

3    be able to identify itself.  It's just" -- "you know, it would

4    be a hard thing to prove, but, you know, I'm not going to

5    certify a class when I know that it's not ascertainable."

6        And this -- the facts in these cases are special that way,

7    and you don't have to throw out every other class claim out

8    there, every other food labeling claim out there.

9        What you have here -- there are some foods out there that

10   have had -- they have the trademark on them.  They're the food,

11   and they have the challenge claim on them throughout the class

12   period, and there is -- there's no doubt that if somebody can

13   just remember, "I bought that product," then -- you know, then

14   I've got it, but that's not this case.  In fact, this case in

15   PAM is way on the other end of the spectrum.

16       So if Your Honor, you know, agrees that it -- it would be

17   inefficient and wasteful to certify a damages class when one

18   knows fairly well because of common experience and common sense

19   that this class is not going to be able to self-identify, then

20   you don't have to throw out.  You can do it on these facts.

21       And so that's really all I have on ascertainability.

22           THE COURT:  Okay.

23           MR. HAWK:  On --

24           THE COURT:  Well, do you want to add anything?

25           MR. HERRINGTON:  Well, because he said the word

```
 1    "damages" -- and so that made it a little different.  This

 2    "Don't do it because how are we going to distribute damages" --

 3    that's manageability.  That's not even ascertainability.

 4         And the bottom line is we know that we will be able to

 5    prove that they can't say "100% Natural" and then have propane

 6    and butane in their products.  So we're going to win on

 7    liability, and they've made millions of dollars selling 100%

 8    Natural PAM.

 9         So there is damage -- I mean, there's liability, and

10    there's going to be damages.  What he's saying is "Because" --

11    "we have made all these millions, but gosh, people's memories

12    are fallible.  So we get to keep it."  That's his argument.

13              MR. HAWK:  If --

14              THE COURT:  Okay.

15              MR. HAWK:  All right.  Well, I said I --

16              THE COURT:  Okay.  That's a big subject -- I mean, a

17    big topic.  It runs through all of this.  So I think I

18    understand the argument.

19              MR. HAWK:  Let me then move on, if it's okay with

20    Your Honor.

21              THE COURT:  Yeah.  I mean -- but I'd like you to

22    address something that hasn't been addressed in the papers.

23    There is -- I don't think there is anything.  That's my point.

24    I think you've covered it all.

25              MR. HAWK:  We have.
```

```
 1              THE COURT:  If there's anything you feel compelled to
 2    say, go ahead, but I don't want to -- because I don't want to
 3    cut off argument, but on the other hand, I don't know that I
 4    need argument.  So --
 5              MR. HAWK:  Well, on PAM, then, I -- if I may have a
 6    moment, Your Honor.
 7              THE COURT:  Sure.
 8              MR. HERRINGTON:  Your Honor, while they're conversing,
 9    there's one quick point that I would like to bring up at the
10    appropriate time.
11              THE COURT:  Sure.  Go ahead.
12              MR. HERRINGTON:  That's to expand on the --
13              MR. HAWK:  The --
14              THE COURT:  Well --
15              MR. HAWK:  One thing that we haven't had a chance to
16    do, Your Honor, as my colleague points out, is really
17    respond -- you know, after we filed our opposition, there was
18    the reply brief filed.
19         And in the reply brief, it had -- in addition to the point
20    Your Honor raised first thing, there was an additional
21    declaration by Mr. Capps, the damages expert, and then we put
22    in an objection to that testimony because, Number 1, it was --
23    you know, it was late-filed, and it was not part of their
24    original motion.  It was new evidence on reply, and then also
25    we just objected to it because it was -- it was improper.
```

```
 1              THE COURT:  Okay.  I have that one.  Yes.
 2              MR. HERRINGTON:  Okay.  Just a very quick point, and
 3    it's not in the briefing because it didn't really come up until
 4    Judge Koh issued an opinion in Blue Diamond in which she
 5    granted a (b)(3) class, denied a (b)(2) class, saying that the
 6    plaintiff had -- no longer had standing, and it is raised in
 7    our briefs.
 8          But the point that I want to very quickly make that's a
 9    little different from our briefs is to analyze it strictly in
10    terms of whether the plaintiff would buy the product and suffer
11    some irreparable harm is really looking at the (b)(2)
12    injunctive claim more like a private injunction, and it's not.
13          The injunctive relief under the UCL is a public
14    injunction, and it is more in the nature of stopping
15    defendant's unlawful business practices more than to remedy the
16    plaintiffs' unique set of circumstances.  That's a point that's
17    not thoroughly flushed out in our briefing, and I wanted to
18    make that point.
19          Under the UCL, the reason we issued an injunction,
20    regardless of whether the plaintiff had bought the product or
21    not, is because we're trying to stop the defendant from
22    committing the unlawful act that's the subject of the
23    litigation.
24          Thank you.
25              MR. HAWK:  Your Honor, on that -- responding to that
```

1   point on the standing issue with regard to an injunction-only

2   class, we did say in our papers that that would be improper

3   here because none of these plaintiffs have put in any

4   evidence -- in fact, the evidence is to the contrary -- that

5   they would ever buy these products again, and we cited a couple

6   of opinions -- a couple of orders within this district that was

7   somewhat of a split in this district on this issue.

8        I think that Judge Seeborg, for example, just rejected it

9   out of hand, saying, "Well, that would just put an end to

10  injunctive class actions in these cases," and, you know -- so

11  he staked out one -- one -- one position.

12       But since then, Judge Koh in the *Werdebaugh* order that

13  just came down, Judge Illston in the *Rahman* decision that is

14  just a few months old now, Judge Tigar, Judge Orrick -- judges

15  that you might not otherwise think were going to want to throw

16  out without some serious thought class claims for injunctive

17  relief -- they've all lined up, Your Honor, and they said --

18            THE COURT:  So Judge Seeborg is sort of an outlier.

19            MR. HAWK:  That -- he would be right now.  I think he,

20  like Judge Illston, may come over to the right side,

21  Your Honor, and the right side on this is Article III, and I

22  don't really even understand quite what Counsel is talking

23  about if public injunction is a prior injunction.

24            THE COURT:  Well, I'm trying to figure out whether --

25  are you saying under federal law?  Are you saying under state

```
 1    law?
 2              MR. HERRINGTON:  Well, no.  I'm saying under
 3    state-substantive UCL law.
 4              THE COURT:  But how do I -- wasn't that basically
 5    adjudicated by the Supreme Court in the Marriage case?
 6              MR. HAWK:  In the which case, Your Honor?
 7              THE COURT:  Marriage.
 8         Didn't the Supreme Court say you don't have standing --
 9    notwithstanding whatever the state interests are, for purposes
10    of standing of the -- it's not the obligation of the Federal
11    Court to look to the states to enforce their laws with respect
12    to injunctive relief.  It may be a good argument that the state
13    court should do it.  It may be a good argument that it's
14    entirely appropriate, but it's not the rule of Federal Courts
15    to enforce state injunctive proceedings and confer standing on
16    that basis.
17              MR. HAWK:  That --
18              THE COURT:  I thought that's what Perry versus --
19    whatever that case is; right?  I thought they said that in the
20    Supreme Court.
21              MR. HAWK:  And that --
22              THE COURT:  It's in a different context, I'll grant
23    you that, quite a different context, but --
24              MR. HERRINGTON:  Right.
25              THE COURT:  -- I doubt that it was the same.
```

```
1              MR. HAWK:  And that lines up precisely with the
2    reasoning that --
3              THE COURT:  Anyway -- okay.  That's not a big issue.
4    I know how I'm going to handle it.
5              MR. HAWK:  All right.
6              THE COURT:  Thank you very much, everybody.
7              MR. HERRINGTON:  Thank you, Your Honor.
8              MR. HAWK:  Thank you.
9                   (Proceedings adjourned at 11:11 a.m.)
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1

2

3                    CERTIFICATE OF REPORTER

4        I certify that the foregoing is a correct transcript

5   from the record of proceedings in the above-entitled matter.

6

7   DATE:   Friday, August 15, 2014

8

9

10

11   _____

12        James C. Pence, RMR, CRR, CSR No. 13059
                   U.S. Court Reporter
13

14

15

16

17

18

19

20

21

22

23

24

25

| 9th Circuit Case Number(s) | 14-16327 |
|---|---|

**NOTE**: To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date)  January 21, 2015 .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format)  /s/A. Brooks Gresham

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date)  .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Signature (use "s/" format)


American LegalNet, Inc.
www.FormsWorkFlow.com