No. 14-16327

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

LEVI JONES, *et al.*,

*Plaintiffs-Appellants*,

v.

CONAGRA FOODS, INC.,

*Defendant-Appellee*.

On Appeal from the U.S. District Court
for the Northern District of California
in Case No. 3:12-cv-01633-CRB (Breyer, J.)

## BRIEF OF THE CHAMBER OF COMMERCE
## OF THE UNITED STATES OF AMERICA AS *AMICUS CURIAE*
## IN SUPPORT OF DEFENDANT-APPELLEE

Kate Comerford Todd
Tyler R. Green
U.S. CHAMBER LITIGATION
  CENTER, INC.
1615 H Street, N.W.
Washington, DC 20062
(202) 463-5337

Andrew J. Pincus
Archis A. Parasharami
Daniel E. Jones
MAYER BROWN LLP
1999 K Street, N.W.
Washington, DC 20006
(202) 263-3000

Hannah Y.S. Chanoine
MAYER BROWN LLP
1675 Broadway
New York, New York 10019
(212) 506-2500

*Counsel for* Amicus Curiae *the Chamber of Commerce
of the United States of America*

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

The Chamber of Commerce of the United States of America is a non-profit corporation organized under the laws of the District of Columbia.  It has no parent corporation.  No publicly held corporation owns ten percent or more of its stock.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................ iii

INTEREST OF THE *AMICUS CURIAE* ...................................... 1

INTRODUCTION AND SUMMARY OF ARGUMENT ......................... 3

ARGUMENT ...................................................................................... 7

I.   ASCERTAINABILITY IS A FUNDAMENTAL
     PREREQUISITE TO CLASS CERTIFICATION ......................... 7

     A.   The Ascertainability Requirement Is Rooted In
          Longstanding Principles Of Due Process ............................ 7

     B.   Courts Broadly Recognize That A Class Must Be
          Ascertainable ..................................................................... 16

II.  THE COURT SHOULD REJECT THE INVITATION BY
     PLAINTIFF AND HIS *AMICI* TO RELAX THE
     ASCERTAINABILITY REQUIREMENT .................................... 20

     A.   The View Of Ascertainability Advanced By Plaintiff
          And His *Amici* Does Not Comport With Due Process ........ 20

          1.   Ascertainability requires an administratively
               feasible method for determining the identity of
               actual class members .................................................. 21

          2.   Resolving problems of ascertainability cannot be
               deferred past the certification stage or outsourced
               to claims administrators .............................................. 26

     B.   Certifying An Unascertainable Class Will Not Provide
          The Benefits Touted By Plaintiff And His *Amici* ............... 31

CONCLUSION ................................................................................... 36

CERTIFICATE OF COMPLIANCE ...................................................... 37

CERTIFICATE OF FILING AND SERVICE ......................................... 38

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alliance to End Repression v. Rochford,*
    565 F.2d 975 (7th Cir. 1977) .............................................................. 19

*Amchem Prods. Inc. v. Windsor,*
    521 U.S. 591 (1997) ............................................................................ 8

*Am. Sur. Co. v. Baldwin,*
    287 U.S. 156 (1932) ............................................................................ 7

*Astiana v. Ben & Jerry's Homemade, Inc.,*
    2014 WL 60097 (N.D. Cal. Jan. 7, 2014) ...................................... 19, 34

*Astiana v. Kashi Co.,*
    291 F.R.D. 493 (S.D. Cal. 2013) ....................................................... 25

*AT&T Mobility LLC v. Concepcion,*
    131 S. Ct. 1740 (2011) ...................................................................... 27

*Bakalar v. Vavra,*
    237 F.R.D. 59 (S.D.N.Y. 2006) ........................................................ 23

*Berger v. Home Depot USA, Inc.,*
    741 F.3d 1061 (9th Cir. 2014) ..................................................... 18, 27

*Bruton v. Gerber Prods. Co.,*
    2014 WL 2860995 (N.D. Cal. June 23, 2014) .............................. 18, 21

*Califano v. Yamasaki,*
    442 U.S. 682 (1979) .......................................................................... 25

*Carrera* v. *Bayer Corp.,*
    727 F.3d 300 (3d Cir. 2013) ...................................................... *passim*

*In re Clorox Consumer Litig.,*
    301 F.R.D. 436 (N.D. Cal. 2014) ...................................................... 28

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Comcast v. Behrend,*
  133 S. Ct. 1426 (2013)..............................................................26, 31

*Crosby v. Soc. Sec. Admin.,*
  796 F.2d 576 (1st Cir. 1986) ...............................................18

*Davis v. Cintas Corp.,*
  717 F.3d 476 (6th Cir. 2013)...............................................19

*DeBremaecker v. Short,*
  433 F.2d 733 (5th Cir. 1970)................................................18

*Deposit Guar. Nat'l Bank v. Roper,*
  445 U.S. 326 (1980)...............................................................7

*EQT Prod. Co. v. Adair,*
  764 F.3d 347 (4th Cir. 2014).........................................18, 22

*Forcellati v. Hyland's, Inc.,*
  2014 WL 1410264 (C.D. Cal. Apr. 9, 2014) ........................25

*Goldberg v. Kelly,*
  397 U.S. 254 (1970)..............................................................10

*Grannis v. Ordean,*
  234 U.S. 385 (1914)................................................................7

*In re Hotel Tel. Charges,*
  500 F.2d 86 (9th Cir. 1974).............................................15, 34

*ICC v. Louisville & Nashville R.R.,*
  227 U.S. 88 (1913).................................................................10

*Ihrke v. N. States Power Co.,*
  459 F.2d 566 (8th Cir. 1972)................................................18

*Karhu v. Vital Pharm., Inc.,*
  2014 WL 815253 (S.D. Fla. Mar. 3, 2014) .....................12, 23

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*La Buy v. Howes Leather Co.*,
  352 U.S. 249 (1957).............................................................................. 30

*Lagendorf v. Skinnygirl Cocktails, LLC*,
  --- F.R.D. ----, 2014 WL 5487670 (N.D. Ill. Oct. 30, 2014).................. 22

*Lilly v. Jamba Juice Co.*,
  2014 WL 4652283 (N.D. Cal. Sept. 18, 2014)...................................... 25

*Lindsey v. Normet*,
  405 U.S. 56 (1972)........................................................................... 7, 28

*Little v. T-Mobile USA, Inc.*,
  691 F.3d 1302 (11th Cir. 2012)............................................................ 18

*Marcus v. BMW of N. Am., LLC*,
  687 F.3d 583 (3d Cir. 2012) ....................................................... *passim*

*McCrary v. Elations Co.*,
  2014 WL 1779243 (C.D. Cal. Jan. 13, 2014) ...................................... 24

*McLaughlin v. Am. Tobacco Co.*,
  522 F.3d 215, 231 (2d Cir. 2008) ................................................. 13, 15

*Miles v. Merrill Lynch & Co. (In re Initial Pub. Offering Sec.
  Litig.)*,
  471 F.3d 24 (2d Cir. 2006) ................................................................. 18

*Ortiz v. Fibreboard Corp.*,
  527 U.S. 815 (1999)............................................................................. 8

*Oshana v. Coca-Cola Co.*,
  472 F.3d 506 (7th Cir. 2006)............................................................... 18

*Perez v. Metabolife Int'l, Inc.*,
  218 F.R.D. 262 (S.D. Fla. 2003)........................................................ 12

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Philip Morris USA, Inc. v. Scott*,
  131 S. Ct. 1 (2010) ............................................................................... 10

*Poertner v. Gillette Co.*,
  No. 6:12-cv-00803 (M.D. Fla. Apr. 22, 2014) ...................................... 32

*In re POM Wonderful LLC*,
  2014 WL 1225184 (C.D. Cal. Mar. 25, 2014) ................... 19, 22, 27, 34

*Rahman v. Mott's LLP*,
  2014 WL 6815779 (N.D. Cal. Dec. 3, 2014) ........................................ 25

*Red v. Kraft Foods, Inc.*,
  2012 WL 8019257 (C.D. Cal. Apr. 12, 2012) ...................................... 16

*Ries v. Ariz. Beverages USA LLC*,
  287 F.R.D. 523 (N.D. Cal. 2012) ......................................................... 25

*Romberio v. Unumprovident Corp.*,
  385 F. App'x 423 (6th Cir. 2009) ......................................................... 18

*Sacred Heart Health Sys., Inc. v. Humana Military*
  *Healthcare Servs., Inc.*,
  601 F.3d 1159 (11th Cir. 2010) .............................................................. 9

*Sethavanish v. ZonePerfect Nutrition Co.*,
  2014 WL 580696 (N.D. Cal. Feb. 13, 2014) ........................... 19, 27, 35

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
  559 U.S. 393 (2010) ......................................................................... 8, 27

*Taylor v. Sturgell*,
  553 U.S. 880 (2008) ............................................................................. 17

*United States v. Armour & Co.*,
  402 U.S. 673 (1971) ............................................................................... 7

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) ............................................................. *passim*

*In re Wal-Mart Stores, Inc. Wage & Hour Litig.*,
    2008 WL 413749 (N.D. Cal. Feb. 13, 2008) ........................................ 18

*Wolph v. Acer Am. Corp.*,
    272 F.R.D. 477 (N.D. Cal. 2011) ........................................................ 19

*Xavier v. Philip Morris USA Inc.*,
    787 F. Supp. 2d 1075 (N.D. Cal. 2011) ................................... 11, 12, 13

## Statutes, Rules and Regulations

21 U.S.C. § 331 ......................................................................................... 35

21 U.S.C. § 343 ......................................................................................... 35

28 U.S.C. § 2072(b) ......................................................................... 6, 8, 26

Class Action Fairness Act of 2005,
    Pub. L. No. 109-2 § 2(a)(3), 119 Stat. 4 .............................................. 32

Fed. R. App. P. 29(c)(5) ............................................................................. 1

Fed. R. Civ. P. 23 ............................................................................. *passim*

## Other Authorities

32B *Am. Jur. 2d Federal Courts* § 1886 ................................................. 14

58 Fed. Reg. 2462 (Jan. 6, 1993) ............................................................. 35

Charles A. Wright et al., *Federal Practice & Procedure* (3d
    ed. 2005) ............................................................................................... 23

Joseph M. McLaughlin, *McLaughlin on Class Actions*
    (11th ed. 2014) ..................................................................... 13, 14, 24

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

Mayer Brown LLP, *Do Class Actions Benefit Class Members?: An Empirical Analysis of Class Actions* (Dec. 11, 2013) ................................................................................ 33

Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97 (2009) .................................... 28

Richard L. Marcus, *They Can't Do That, Can They? Tort Reform Via Rule 23*, 80 Cornell L. Rev. 858 (1995) .......................... 25

William B. Rubenstein, *Newberg on Class Actions* (5th ed. 2013) ...................................................................... 23

## INTEREST OF THE *AMICUS CURIAE*

The Chamber of Commerce of the United States of America is the world's largest business federation. The Chamber represents 300,000 direct members and indirectly represents the interests of more than three million companies and professional organizations of every size, in every industry sector, and from every region of the country.[1]

The Chamber represents the interests of its members in matters before the courts, Congress, and the Executive Branch. To that end, the Chamber regularly files *amicus curiae* briefs in cases that raise issues of vital concern to the Nation's business community, including cases addressing the requirements for class certification. *See* http://www. chamberlitigation.com/cases/issue/class-actions.

Many of the Chamber's members and affiliates are defendants in class actions. Accordingly, they have a keen interest in ensuring that courts rigorously analyze whether a plaintiff has satisfied the requirements for class certification before certifying a class. One such

---

[1] Pursuant to Federal Rule of Appellate Procedure 29(c)(5), *amicus* affirms that no counsel for a party authored this brief in whole or in part and that no person other than *amicus*, its members, or its counsel has made any monetary contributions intended to fund the preparation or submission of this brief. All parties have consented to the filing of this brief.

requirement is ascertainability, which protects defendants' due process rights by ensuring that class members can be feasibly identified and that defendants have an opportunity to litigate their defenses to any particular would-be class member's claims.

The district court below correctly held that the proposed class was unascertainable, because the identity of the class members could not be reliably determined consistent with the requirements of due process unless the proceedings were to devolve into an unmanageable series of individualized mini-trials. If that decision were overturned, it would eviscerate defendants' due process rights in class-action litigation and lead to the unjustified certification of class actions against businesses. The Chamber therefore has a strong interest in this case.

## INTRODUCTION AND SUMMARY OF ARGUMENT

What if a court certified a class action and the class members couldn't be identified?

That is essentially this case, which presents the issue whether a class may be certified when the members of the proposed class cannot be readily ascertained. Here, the plaintiff has proposed a consumer class whose members will be largely impossible to identify. The putative class comprises California residents who, dating back to 2008, purchased certain Hunt's canned tomato products bearing certain labels. As we discuss below, it is not possible to use objective documentation to determine whether a particular person is (or is not) a member of the proposed class. The reason is self-evident: Consumers typically do not keep receipts or packaging from food products (or other similar products) that likely were purchased or consumed years ago.

The named plaintiff in this case nonetheless proposed to prove class membership for the absent class members through the use of self-serving affidavits that (under the plaintiff's proposal) would be immune from challenge by the defendant (such as by cross-examination). But

the district court properly held that this proposal flunked the ascertainability requirement implicit in Rule 23.

In response, plaintiff—joined by his *amici*—has launched a full-scale assault on the ascertainability requirement. In their view, the approach to ascertainability adopted by the district court is a recent invention of the Third Circuit in *Carrera* v. *Bayer Corp.*, 727 F.3d 300 (3d Cir. 2013), and the ascertainability requirement should be either excised from the class certification analysis altogether or substantially relaxed in order to facilitate consumer class actions.

But assuming that class actions are to be promoted at every turn puts the cart before the horse: Class actions are a means of dispute resolution, not an end in themselves. As the Supreme Court has repeatedly instructed, class actions are an "exception to the usual rule" that cases are litigated individually, and it is therefore critical that courts apply a "rigorous analysis" to the requirements governing class certification before a lawsuit is approved for class treatment. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550-51 (2011) (quotation marks omitted).

Ascertainability is just such a requirement—and it is one that is rooted in well-established principles of due process. If this were a single-plaintiff case, there is no doubt that the plaintiff would have to prove at trial that he purchased the challenged product and that he was injured as a result. Due process insists that the defendant, in turn, would be permitted to challenge the plaintiff's evidentiary showing, including through cross-examination, and to have a court or jury resolve any factual disputes.

Defendants' due process right to challenge an individual's eligibility to recover cannot be diminished merely because a plaintiff or plaintiffs have chosen to file a class action rather than pursue individual actions. A Rule 23 class action is the sum of the individual class members' claims within it—nothing more. Indeed, as the Supreme Court has made clear, courts may not skirt defendants' due process rights by certifying a class "on the premise that [the defendant] will not be entitled to litigate its * * * defenses to individual claims." *Dukes*, 131 S. Ct. at 2561. To do so would violate the Rules Enabling Act, which embodies the due process principle that procedural rules, like Rule 23, cannot "abridge, enlarge or modify any substantive right."

28 U.S.C. § 2072(b). The ascertainability requirement thus ensures that due process is honored by insisting that defendants retain their ability to challenge any would-be class member's claim of eligibility and right to recovery. Without a reliable and administratively feasible method for identifying who is in a class, defendants will have no way to bring such challenges—short of extensive individualized fact-finding and an unmanageable series of mini-trials.

It is telling, therefore, that we are aware of no court that has accepted plaintiff's invitation to eliminate the ascertainability requirement. Rather, a long line of courts—both before and after *Carrera*—has properly insisted that plaintiffs demonstrate that a proposed class is ascertainable.

The proposal by plaintiff and his *amici* to relax the ascertainability requirement substantially because that will facilitate consumer class actions fares no better. Defendants' due process rights cannot be vitiated in service of the class-action device. Moreover, the ordinary justification for class actions—that they offer benefits for class members who would not pursue relief on their own—is simply inapplicable to cases involving class members who can't be identified;

when such class actions are certified, only a handful of class members actually receive benefits.

## ARGUMENT

## I. ASCERTAINABILITY IS A FUNDAMENTAL PREREQUISITE TO CLASS CERTIFICATION

### A. The Ascertainability Requirement Is Rooted In Longstanding Principles Of Due Process

**1.** The "fundamental requisite of due process of law is the opportunity to be heard." *Grannis v. Ordean*, 234 U.S. 385, 394 (1914). Due process thus requires not only that a plaintiff prove every element of his claim, but also that a defendant be given "'an opportunity to present every available defense.'" *Lindsey v. Normet*, 405 U.S. 56, 66 (1972) (quoting *Am. Sur. Co. v. Baldwin*, 287 U.S. 156, 168 (1932)); *see also*, *e.g.*, *United States v. Armour & Co.*, 402 U.S. 673, 682 (1971) (recognizing that the "right to litigate the issues raised" in a case is "guaranteed * * * by the Due Process Clause").

A plaintiff's substantive rights cannot be enlarged, nor a defendant's right to present all available defenses abridged, simply because a lawsuit is brought as a class action rather than an individual one. The class action is merely a procedural device, "ancillary to the litigation of substantive claims." *Deposit Guar. Nat'l Bank v. Roper*,

445 U.S. 326, 332 (1980); *see also Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 408 (2010) (plurality opinion) (a class action "leaves the parties' legal rights and duties intact and the rules of decision unchanged"). Thus, the requirements for class certification must be applied in a manner consistent with the Rules Enabling Act, which embodies the due process principle that procedural rules cannot "abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b); *see also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 845 (1999) ("[N]o reading of [Rule 23] can ignore the Act's mandate that rules of procedure shall not abridge, enlarge or modify any substantive right.") (quotation marks omitted); *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 613 (1997)) ("Rule 23's requirements must be interpreted in keeping with * * * the Rules Enabling Act").

Because due process precludes use of the class action mechanism to alter the substantive rights of the parties to the litigation, federal courts have recognized that Rule 23's requirements must be interpreted to avoid that result. In *Dukes*, for example, the Supreme Court made clear that "a class cannot be certified on the premise that [the defendant] will not be entitled to litigate its * * * defenses to individual

- 8 -

claims." 131 S. Ct. at 2561. For the same reason, the Third Circuit held in *Carrera* that "[a] defendant in a class action has a due process right to raise individual challenges and defenses to claims, and a class action cannot be certified in a way that eviscerates this right or masks individual issues." 727 F.3d at 307; *see also Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1176 (11th Cir. 2010) ("The Rules Enabling Act * * * and due process * * * prevent[] the use of class actions from abridging the substantive rights of any party.").

**2.** Ascertainability is one of the critical mechanisms by which courts ensure that due process is not jettisoned in service of class certification. For example, if this case had been brought as an individual action, a plaintiff would have to prove that—among other things—he purchased a Hunt's tomato product bearing the challenged label. And due process would mandate, in turn, that the defendant be afforded the opportunity to mount a full defense to that factual showing—including cross-examination and other opportunities to test the reliability of the plaintiff's claim. That is because "[i]n almost every setting where important decisions turn on questions of fact, due process

requires an opportunity to confront and cross-examine adverse witnesses." *Goldberg v. Kelly*, 397 U.S. 254, 269 (1970) (citing *ICC v. Louisville & Nashville R.R.*, 227 U.S. 88, 93-94 (1913)).

That due process requirement does not change simply because a case has been filed as a class action. The ability of putative class members to hold a defendant liable for a claim cannot depend on whether the case has been brought as a class action or an individual case. *E.g.*, *Philip Morris USA, Inc. v. Scott*, 131 S. Ct. 1, 4 (2010) (Scalia, J., in chambers) (suggesting that due process is violated if "individual plaintiffs who could not recover had they sued separately *can* recover only because their claims were aggregated with others' through the procedural device of the class action"); *Carrera*, 727 F.3d at 307 (noting that "[i]f this were an individual claim, a plaintiff would have to prove at trial he purchased WeightSmart" and that a "defendant in a class action" has the same "due process right to raise individual challenges and defenses to claims"). A "core concern of ascertainability" is therefore "that a defendant must be able to challenge class membership." *Carrera*, 727 F.3d at 309. Put simply, if

an individual did not purchase a defendant's product, he cannot be a member of the class and cannot hold the defendant liable.

For that reason, these challenges matter. But without a reliable and administratively feasible method for identifying who is in a class, defendants will have no way to bring such challenges—short of extensive individualized fact-finding and a mini-trial over each would-be class member's claim of membership. Because such procedures would be unworkable and would quickly render the class "unmanageable," plaintiffs must instead demonstrate an "objective, reliable way to ascertain class membership." *Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011).

Plaintiffs—like the one in this case—often contend that this showing can be made by identifying class members through affidavits in which a potential class member himself or herself simply asserts that he or she purchased a product. But allowing putative class members to establish eligibility through conclusory affidavits, rather than actual evidence, cannot satisfy the ascertainability requirement, because there would be no meaningful way to verify whether each claim is truthful

and accurate or for the defendant to challenge those that are not—as due process requires.

Thus, as courts have explained time and time again, "[a]scertainability provides due process by requiring that a defendant be able to test the reliability of the evidence submitted to prove class membership." *Carrera*, 727 F.3d at 307; *see also id.* (emphasizing defendants' "due process right to challenge the proof used to demonstrate class membership"); *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 594 (3d Cir. 2012) ("Forcing [defendants] to accept as true absent persons' declarations that they are members of the class, without further indicia of reliability, would have serious due process implications."); *Xavier*, 787 F. Supp. 2d at 1090 ("to accept [affidavits] without the benefit of cross examination" would "not be proper or just"); *Karhu v. Vital Pharm., Inc.*, 2014 WL 815253, at *3 (S.D. Fla. Mar. 3, 2014) ("Accepting affidavits of [product] purchases without verification would deprive [defendant] of its due process rights to challenge the claims of each putative class member."), *appeal pending*, No. 14-11648 (11th Cir.); *Perez v. Metabolife Int'l, Inc.*, 218 F.R.D. 262, 269 (S.D. Fla. 2003) ("Although Plaintiffs suggested that class membership could be

determined through affidavits and fact sheets, allowing such uncorroborated and self-serving evidence without giving Defendant an opportunity to challenge the class member's evidentiary submissions would likely implicate Defendant's due process rights.").

As a leading treatise has summarized, "[c]ourts have rejected proposals to employ class member affidavits and sworn questionnaires as substitutes for traditional individualized proofs" because such submissions "are, most importantly, not subject to cross-examination." 2 Joseph M. McLaughlin, *McLaughlin on Class Actions* § 8:6 (11th ed. 2014).

**3.** When (as here) plaintiffs seek monetary damages, ascertainability further protects defendants by ensuring that any recovery to the class corresponds to the actual damages allegedly suffered by absent class members. A damages calculation that does not correspond to defendants' actual liability to the class violates due process. "[I]f a plaintiff class wins, any relief must be reasonably limited to those who are entitled to it." *Xavier*, 787 F. Supp.2d at 1091; *see also, e.g.*, *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 231 (2d Cir. 2008) (noting that defendants have a "substantive right to pay damages

reflective of their actual liability"), *abrogated in part on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008).

Logic suggests that if a court cannot feasibly identify the members of a proposed class, it is similarly infeasible to determine a defendant's liability to those unidentifiable putative class members. Nonetheless, plaintiffs sometimes try to evade these ascertainability problems by proposing that a defendant's total liability be calculated on an aggregate basis based on total sales or revenues (without knowing to whom the product was sold)—an approach sometimes referred to as "fluid recovery"—and proposing a *cy pres* distribution of the unclaimed funds.

But the use of such an approach in a litigated class action (as opposed to a settlement) has been "repeatedly rejected." 2 *McLaughlin on Class Actions*, *supra*, § 8:16; *accord* 32B *Am. Jur. 2d Federal Courts* § 1886 ("courts have rejected the 'fluid class' recovery concept as a method of reducing the manageability problems involved in a class action").

The reason for this widespread rejection is straightforward: As the Second Circuit has explained, "[w]hen fluid recovery is used to permit

the mass aggregation of claims, the right of defendants to challenge the allegations of individual plaintiffs is lost, *resulting in a due process violation.*" *McLaughlin*, 522 F.3d at 232 (emphasis added).

This Court has similarly rejected fluid recovery as a substitute for satisfying the predominance and superiority requirements of Rule 23(b)(3), noting that "treating unsubstantiated claims of class members collectively significantly alters substantive rights," which "is clearly prohibited by the [Rules] Enabling Act." *In re Hotel Tel. Charges*, 500 F.2d 86, 90 (9th Cir. 1974).

**4.** The district court faithfully applied these principles in holding that the plaintiffs' proposal to prove class membership based solely on would-be class members' say-so did not pass muster. E.R. 21-23. As a matter of common sense, uncorroborated affidavits are especially unreliable in cases like this one, because putative class members often "will have difficulty accurately recalling their purchases" years after the fact. *Carrera*, 727 F.3d at 309. That is especially true when, as here, there was significant "variation" among the products sold during the class period and their labeling (E.R. 22) and the deposition testimony of named plaintiff Levi Jones demonstrated that

he himself had difficulty accurately recalling his purchases.[2]  *E.g.*, *Red v. Kraft Foods, Inc.*, 2012 WL 8019257, at *5 (C.D. Cal. Apr. 12, 2012) (holding that class of purchasers of food items bearing certain labels was not ascertainable because membership in the class "would be based on the vagaries of memory") (quotation marks omitted).

The difficulties of identification present here—and in many other consumer class actions of this kind—highlight that defendants often will have a strong defense to any particular would-be class member's claim of eligibility.  Ascertainability demands that courts not paper over these difficulties—such as by allowing unrebutted affidavits to prove membership in the class—in violation of defendants' due process rights.

## B.  Courts Broadly Recognize That A Class Must Be Ascertainable

Rather than defend his failure below to provide a reliable and administratively feasible method of ascertaining class members, plaintiff's principal argument is that the ascertainability requirement

---

[2]    *See* E.R. 22 ("Q: Have you purchased Hunt's tomato paste since April 2008?  A: Maybe.  I don't know.").

should be abandoned altogether because it is not explicitly mentioned in Rule 23. Opening Br. 10-13.[3]

As far as we are aware, no court has accepted plaintiff's novel invitation. For good reason: As we have explained above, ascertainability is a necessary component of Rule 23's procedural safeguards and is similarly grounded in, and required by, due process. *See Taylor v. Sturgell*, 553 U.S. 880, 901 (2008) (Rule 23's "procedural protections" are "grounded in due process"). As previously discussed, ascertainability vindicates a defendant's right to challenge the evidence used to demonstrate membership in the class. Ascertainability further "eliminates serious administrative burdens that are incongruous with the efficiencies expected in a class action" by insisting that the process of identifying class members consistent with due process will not become bogged down in "extensive and individualized fact-finding or 'mini-trials.'" *Marcus*, 687 F.3d at 593.

For these reasons, every federal court of appeals to consider the issue has recognized that ascertainability is a requirement for certifying

---

[3]    ConAgra argues persuasively that plaintiff waived his categorical challenge to the ascertainability requirement by failing to raise it below. *See* ConAgra Br. 14. But even if plaintiff had raised the issue, the argument would fail for the reasons we discuss.

a class. *See, e.g.*, *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014); *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012); *Marcus*, 687 F.3d at 592-94; *Romberio v. Unumprovident Corp.*, 385 F. App'x 423, 431 (6th Cir. 2009); *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513-14 (7th Cir. 2006); *Miles v. Merrill Lynch & Co. (In re Initial Pub. Offering Sec. Litig.)*, 471 F.3d 24, 30, 44-45 (2d Cir. 2006); *Crosby v. Soc. Sec. Admin.*, 796 F.2d 576, 580 (1st Cir. 1986); *Ihrke v. N. States Power Co.*, 459 F.2d 566, 573 n.3 (8th Cir.), *vacated on other grounds*, 409 U.S. 815 (1972); *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970); *see also Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1071 n.3 (9th Cir. 2014) (declining to address the district court's ruling that the proposed class was not ascertainable, but acknowledging the "threshold ascertainability test").

Unsurprisingly, the district courts in this Circuit have followed suit, noting that "[a]n elementary prerequisite to certification is that the class sought to be represented must be adequately defined and clearly ascertainable." *In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 2008 WL 413749, at *5 (N.D. Cal. Feb. 13, 2008) (quotation marks omitted); *see also, e.g.*, *Bruton v. Gerber Prods. Co.*, 2014 WL 2860995,

at *4 (N.D. Cal. June 23, 2014); *In re POM Wonderful LLC*, 2014 WL 1225184, at *5 (C.D. Cal. Mar. 25, 2014); *Sethavanish v. ZonePerfect Nutrition Co.*, 2014 WL 580696, at *4 (N.D. Cal. Feb. 13, 2014); *Astiana v. Ben & Jerry's Homemade, Inc.*, 2014 WL 60097, at *1 (N.D. Cal. Jan. 7, 2014); *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 482 (N.D. Cal. 2011).

Finally, plaintiff's own cases do not support his proposal. In *Alliance to End Repression v. Rochford*, 565 F.2d 975 (7th Cir. 1977), for example, the court in fact *agreed* with the "many courts" that have required plaintiffs to demonstrate an "ascertainable class." *Id.* at 977. And while the court in *Davis v. Cintas Corp.*, 717 F.3d 476 (6th Cir. 2013), offhandedly opined that ascertainability was "perhaps superfluous," its musings were necessarily dicta because the requirement was "not at issue." *Id.* at 483 n.1. In any event, ascertainability is far from "superfluous"; rather, it is essential to preserving the due process requirement that defendants be permitted to raise individual challenges to would-be class members' claims.

## II.  THE COURT SHOULD REJECT THE INVITATION BY PLAINTIFF AND HIS *AMICI* TO RELAX THE ASCERTAINABILITY REQUIREMENT

### A.  The View Of Ascertainability Advanced By Plaintiff And His *Amici* Does Not Comport With Due Process

Plaintiff—echoed by his *amici*—takes the fallback position that ascertainability is satisfied so long as the class definition is stated in objective terms (*e.g.*, all persons who purchased Product X during the class period).  *See* Opening Br. 13-15; Br. of Public Citizen, Inc. and Center For Science In The Public Interest as *Amici Curiae* ("Public Citizen Br.") 9, 12.  Plaintiff's *amici* further contend that any ascertainability problems can be resolved by claims administrators after the class has been certified.  Public Citizen Br. 14-17.

Both of those arguments are misplaced.  As we discuss below, ascertainability requires ***not only*** a class definition that rests on objective criteria, ***but also*** a clear and administratively feasible method for identifying those persons that fit that definition.  Postponing the resolution of ascertainability problems cannot be squared with plaintiffs' burden to demonstrate affirmatively at the certification stage that class treatment is warranted.  Nor is it permissible to do so in light of defendants' due process right to have factual disputes over whether

an individual is a class member resolved by a court—not a third-party claims administrator.

> ### 1. Ascertainability requires an administratively feasible method for determining the identity of actual class members.

A workable class definition that rests upon objective criteria is necessary for class certification, but it is not sufficient. The contention by plaintiff and his *amici* that an objective class definition is all that is needed to satisfy ascertainability conflates and collapses two independent requirements: (i) a clearly-drawn definition of the class; and (ii) a manageable way to identify the individuals and/or entities that satisfy those criteria. After all, a class definition alone is not enough: It must be filled by actual people who in real life meet the class definition. Thus, "[a] class is ascertainable if it is defined by objective criteria ***and*** if it is administratively feasible to determine whether a particular individual is a member of the class." *Bruton*, 2014 WL 2860995, at *4 (emphasis added; quotation marks omitted); *accord*, *e.g.*, *Carrera*, 727 F.3d at 305 ("Before turning to the explicit requirements of Rule 23 in *Marcus*, we addressed *two* 'preliminary matters': first, whether the class was clearly defined, and second, 'whether the class

must be (and, if so, is in fact) objectively ascertainable.'") (emphasis added) (quoting *Marcus*, 687 F.3d at 591); *Lagendorf v. Skinnygirl Cocktails, LLC*, --- F.R.D. ----, 2014 WL 5487670, at *1 (N.D. Ill. Oct. 30, 2014) ("In addition to defining the class by reference to objective criteria, the plaintiff must propose a method for ascertaining class members with some evidentiary support that the method will be successful.").

These two aspects of ascertainability are needed to preserve defendants' due process rights and ensure that identification of class members remains manageable. As the Fourth Circuit—echoing the Third Circuit—recently explained, "'If class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate.'" *EQT Prod. Co.*, 764 F.3d at 358 (alterations omitted) (quoting *Marcus*, 687 F.3d at 593). That is because, as a practical matter, "[i]n situations where purported class members purchase an inexpensive product for a variety of reasons, and are unlikely to retain receipts or other transaction records, class actions may present such daunting administrative challenges that class treatment is not feasible." *In re POM Wonderful*, 2014 WL 1225184, at

*6; *see also*, *e.g.*, *Karhu*, 2014 WL 815253, at *3 ("Having adequately defined the Proposed Classes, [plaintiff] must demonstrate that they are ascertainable.  A class is ascertainable if the Court can determine whether a given person is a class member through administratively feasible methods.") (citation omitted); *Bakalar v. Vavra*, 237 F.R.D. 59, 64 (S.D.N.Y. 2006) ("Class membership must be readily identifiable such that a court can determine who is in the class and bound by its ruling without engaging in numerous fact-intensive inquiries.").

Numerous leading treatises endorse this two-part understanding of ascertainability. "In addition to asking whether there are objective criteria by which class membership may be determined, courts *also* ask whether an analysis of this criteria is administratively feasible. Administrative feasibility means that identifying class members is a manageable process *that does not require much, if any, individual factual inquiry*." William B. Rubenstein, *Newberg on Class Actions* § 3.3 (5th ed. 2013) (emphases added); *see also* 7A Charles A. Wright et al., *Federal Practice & Procedure* § 1760 (3d ed. 2005) ("[T]he requirement that there be a class will not be deemed satisfied unless * * * it is administratively feasible for the court to determine whether a

particular individual is a member."); 1 *McLaughlin on Class Actions*, *supra*, § 4:2 (in order to certify a class, "it must be administratively feasible for the court to determine whether a given person fits within the class definition without effectively conducting a mini-trial of each person's claim").

Despite the overwhelming weight of authority, a handful of courts in this Circuit have accepted the crabbed definition of ascertainability advanced by plaintiff and his *amici*. For example, in *McCrary v. Elations Co.*, 2014 WL 1779243 (C.D. Cal. Jan. 13, 2014), the court, brushing aside the defendant's "due process right to defend against claims of class membership," declared it "enough" that the "class definition clearly defines the characteristics of a class member"; the court therefore permitted class members to "self-identify their inclusion via affidavits." *Id.* at *7-8. The court in *McCrary*—like the other courts in this Circuit that have followed suit—candidly announced its motivation for circumscribing defendants' due process rights: to pave the way for consumer class actions related to the purchase of small-dollar items. *See id.* at *7 ("If Defendant's argument were correct, 'there would be no such thing as a consumer class action.'") (quoting

*Ries v. Ariz. Beverages USA LLC*, 287 F.R.D. 523, 535 (N.D. Cal. 2012)).[4]

That policy prediction is highly unlikely to come to pass: Commentators have been prophesizing the demise of the class action for decades, yet experience has shown otherwise.[5]  Moreover, such policy concerns cannot trump the rules governing class actions, which are "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979); *accord Dukes*, 131 S. Ct. at 2550.  A court's policy preferences in favor of class actions cannot supersede a defendant's due process right to challenge the evidence used to prove class membership. Nor may a court expand the substantive rights of plaintiffs (or abrogate a defendant's right to present every available defense) in light of the

---

[4]    *Accord*, *e.g.*, *Rahman v. Mott's LLP*, 2014 WL 6815779, at *4 (N.D. Cal. Dec. 3, 2014); *Lilly v. Jamba Juice Co.*, 2014 WL 4652283, at *4 (N.D. Cal. Sept. 18, 2014); *Forcellati v. Hyland's, Inc.*, 2014 WL 1410264, at *5 (C.D. Cal. Apr. 9, 2014); *Astiana v. Kashi Co.*, 291 F.R.D. 493, 500 (S.D. Cal. 2013).

[5]    *See, e.g.*, Richard L. Marcus, *They Can't Do That, Can They? Tort Reform Via Rule 23*, 80 Cornell L. Rev. 858, 858 (1995) (noting that "[i]n 1988 the New York Times reported that class actions appeared to be dying" and that they had "kind of petered out") (quotation marks omitted).

Rules Enabling Act, which forbids interpreting Rule 23 to "abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b). Finally, as we explain below, the policy concern animating those courts' decisions is misguided, because certifying an unascertainable class of consumers yields none of the benefits touted by plaintiff and his *amici*.

### 2. Resolving problems of ascertainability cannot be deferred past the certification stage or outsourced to claims administrators.

The solution that plaintiff's *amici* offer to the problem of proposed class actions where class members can't be found boils down to this: Certify first, ascertain later. *E.g.*, Public Citizen Br. 12, 14-17. That proposal is improper for several reasons.

***First***, allowing plaintiffs to skirt the issue of ascertainability at the certification stage would fly in the face of Supreme Court precedent. The Court has made clear that "a party seeking to maintain a class action 'must affirmatively demonstrate his compliance' with Rule 23" at the certification stage, and courts "must conduct a 'rigorous analysis' to determine whether" he has met that burden. *Comcast v. Behrend*, 133 S. Ct. 1426, 1432-33 (2013) (quoting *Dukes*, 131 S. Ct. at 2551-52).

Ascertainability is among the requirements that plaintiffs must "affirmatively demonstrate" at the class certification stage. The question of ascertainability is a "threshold" one, and therefore must be answered *before* the application of the other Rule 23 requirements. *E.g.*, *Berger*, 741 F.3d at 1071 n.3; *In re POM Wonderful*, 2014 WL 1225184, at *5; *Sethavanish*, 2014 WL 580696, at *4. Thus, while a plaintiff need not name each absent class member at the certification stage, he must at least "present some method of identifying absent class members" in order "to prevail on a motion for class certification." *Sethavanish*, 2014 WL 580696, at *5.

**Second**, postponing the resolution of ascertainability issues until a class is certified will almost always mean that those issues are never resolved at all. Few defendants continue to litigate cases after classes are certified; at that point, the pressure on defendants to settle is often overwhelming, even if the plaintiffs' allegations lack merit. *See*, *e.g.*, *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1752 (2011) (explaining the "risk of 'in terrorem' settlements that class actions entail"; "[f]aced with even a small chance of a devastating loss, defendants will be pressured into settling questionable claims"); *Shady*

- 27 -

*Grove Orthopedic Assocs.*, 559 U.S. at 445 n.3 (Ginsburg, J., dissenting) ("A court's decision to certify a class * * * places pressure on the defendant to settle even unmeritorious claims."); Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 99 (2009) ("With vanishingly rare exception, class certification sets the litigation on a path toward resolution by way of settlement, not full-fledged testing of the plaintiffs' case by trial.").  Thus, the "certify now, identify class members later" approach forces defendants to settle even if they have valid objections to putative class members' membership in the class, negating their right to raise "every available defense." *Lindsey*, 405 U.S. at 66 (quotation marks omitted).[6]

**Third**, and relatedly, the suggestion by plaintiff's *amici* that ascertainability concerns can be resolved "with the judicious use of

---

[6]    Some plaintiffs—although not the ones in this case—may contend that retailer data gleaned from credit card purchases or consumer loyalty provides a way to identify class members.  But as a practical matter, retailers' records are unlikely to be up to the task.  *See*, *e.g.*, *In re Clorox Consumer Litig.*, 301 F.R.D. 436, 441-42 (N.D. Cal. 2014) (ascertainability not met when only two of sixteen retailers could identify individual consumers at all, and then only in a fraction of the transactions involving the challenged product).  Moreover, the vague promise that retailer data may be collected in the future neither satisfies the rigorous analysis of ascertainability required at the time of class certification nor alleviates the unfair pressure to settle triggered by certification.

claims administrators" after the class has been certified turns due process on its head. Public Citizen Br. 14. Plaintiff's *amici* rely principally on the audit procedures endorsed by the *Manual for Complex Litigation* to verify class membership, weed out fraudulent claims, and distribute class benefits. *Id.* at 16. But as *amici* concede, "[t]he *Manual for Complex Litigation*'s endorsement of these varying claims procedures comes in a discussion of implementation of class-action *settlements*, not in conjunction with 'ascertaining' class members at the certification stage." *Id.* (emphasis added).[7]

In class settlements, the parties often agree that a claims administrator may make judgments to determine whether a claimant truly is a class member who qualifies for benefits and to assess whether any submitted claims are fraudulent. But that agreement reflects one

---

[7] Plaintiff's *amici* further contend that as an empirical matter, fraudulent or inaccurate claims are unlikely because no one will bother to submit a sworn affidavit under penalty of perjury "in the hope of collecting less than $1.49 per can of tomato product purchased." Public Citizen Br. 15. This exact argument was made by Carrera and properly rejected by the Third Circuit as irrelevant "because it does not address a core concern of ascertainability: that a defendant must be able to challenge class membership." *Carrera*, 727 F.3d at 309. Moreover, *amici*'s argument serves only to highlight—perhaps unintentionally— that the certification of unascertainable classes like this one leads to abysmal claims rates and therefore fails to generate any tangible benefit for absent class members. *See* Part B, *infra*.

of the compromises of settling a case: Defendants trade away the right to cross-examine each putative class member in exchange for certainty, finality, and—most significantly—a substantial discount on the potential liability claimed by the plaintiff and his or her counsel.

By contrast, in a litigated case, defendants' due process rights cannot be so easily jettisoned. In the absence of party agreement, the administrative determinations of an outside third party cannot serve as an adequate substitute for a defendant's right to cross-examine its accusers and to "litigate its * * * defenses to individual claims." *Dukes*, 131 S. Ct. at 2561. Nor can such determinations serve as an adequate substitute for a defendant's right to judicial resolution of factual disputes. That is because, no matter how complex the case or numerous the parties, a district court's reliance on a non-Article III entity to adjudicate fundamental issues amounts to "an abdication of the judicial function depriving the parties of a trial before the court on basic issues involved in the litigation." *La Buy v. Howes Leather Co.*, 352 U.S. 249, 256 (1957) (concluding that writ of mandamus was appropriate where district court had referred case to a special master for trial).

## B. Certifying An Unascertainable Class Will Not Provide The Benefits Touted By Plaintiff And His *Amici*

Despite the Supreme Court's repeated admonition that class actions are the "exception" (*e.g.*, *Comcast*, 133 S. Ct. at 1432), not the rule, the arguments by plaintiff and his *amici* are driven by the premise that class actions are so valuable a procedural device that any obstacle interfering with the use of that device should be rejected. *E.g.* Opening Br. 19; Public Citizen Br. 6-7. Specifically, they argue that any problems of ascertainability or concern about defendants' due process rights should be swept aside on the theory that a class action (i) achieves "individual redress" for class members; and (ii) is the only way to "deter[] * * * wrongful conduct." Public Citizen Br. 7. To be sure, a handful of courts in this Circuit have accepted that premise. *See* pages 24-25 & note 4, *supra*. But as we discuss below, neither of those propositions is accurate.

1. Plaintiff and his *amici* appear to accept on faith that certification of consumer class actions involving low-cost consumer items will benefit the absent class members. But as Congress found a decade ago, "[c]lass members often receive little or no benefit from class

actions, and are sometimes harmed." Class Action Fairness Act of 2005, Pub. L. No. 109-2 § 2(a)(3), 119 Stat. 4.

Recent empirical evidence confirms the accuracy of Congress' finding, especially when the members of a class are not ascertainable and therefore direct notice to absent class members is not possible. In connection with the settlement of a class action involving purchasers of Duracell batteries, a senior consultant at Kurtzman Carson Consultants ("KCC"), a settlement administrator, explained that based on "hundreds of class settlements, it is KCC's experience that consumer class action settlements with little or no direct mail notice *will almost always have a claims rate of less than one percent*." *See* Decl. of Deborah McComb ¶ 5*, Poertner v. Gillette Co.*, No. 6:12-cv-00803 (M.D. Fla. Apr. 22, 2014) (emphasis added), available at http://blogs.reuters. com/alison-frankel/files/2014/05/duracellclassaction-mccombdeclaration. pdf. The settlements reviewed involved products "such as toothpaste, children's clothing, heating pads, gift cards, an over-the-counter medication, a snack food, a weight loss supplement and sunglasses." *Id.* And the median claims rate for those cases was a miniscule ".023%"— which is roughly 1 claim per *4,350* class members. *Id.* To put it

another way, in the mine-run class settlement involving products for which class members are not readily identifiable and direct notice is largely impossible, approximately **99.98%** of class members receive **no benefit at all**.

Because information regarding the distribution of class settlements is not usually available to the public, this rare glimpse into actual claims administration data is significant.[8]  It confirms that the only true beneficiaries of the certification and settlement of consumer

---

[8]    The limited settlement data that is publicly available further confirms that very few putative class actions deliver tangible benefits to more than a small fraction of class members.  In a recent study conducted at the request of the Chamber's Institute for Legal Reform, a team of lawyers (including some of the authors of this brief) undertook an empirical analysis of 148 consumer and employee class actions filed in or removed to federal court in 2009.  *See* Mayer Brown LLP, *Do Class Actions Benefit Class Members?: An Empirical Analysis of Class Actions* (Dec. 11, 2013), *available at* http://www.instituteforlegalreform.com/ resource/do-class-actions-benefit-class-members/.  Of the six cases in the data set for which settlement distribution data was public, "five delivered funds to only miniscule percentages of the class: 0.000006%, 0.33%, 1.5%, 9.66%, and 12%."  *Id.* at 2 (emphasis omitted).  (The sixth was a highly unusual outlier involving claims about the Bernie Madoff Ponzi scheme, where "each class member's individual claim was worth, on average, over $2.5 million"—leading to a claims rate of almost 99%.  *Id.* at 10-11 & n.20.)  And in an unascertainable class for which direct notice to absent class members is impossible, the distribution percentages are likely to be even lower, as indicated by KCC's data.

class actions in general—and especially of unascertainable classes—are the lawyers (both on the plaintiffs' and the defense side).

Even if ascertainability were not required by due process—and it is—the absence of any discernible benefit to class members when those members can't be identified is further reason to demand that ascertainability requirements be applied—for example, in the context of the inquiry into superiority. As this Court has long cautioned, "[w]henever the principal, if not the only, beneficiaries to the class action are to be the attorneys for the plaintiffs and not the individual class members, a costly and time-consuming class action is hardly the superior method for resolving the dispute." *In re Hotel Tel. Charges*, 500 F.2d at 91; *see also, e.g.*, *In re POM Wonderful*, 2014 WL 1225184, at *6 n.8 (noting that the "administrative difficulties [in identifying class members] implicate not only the threshold ascertainability question, but also manageability and superiority concerns") (citing *Red*, 2012 WL 8019257, at *4); *Astiana*, 2014 WL 60097, at *13 (because "plaintiff has not identified an ascertainable class, * * * a class action is plainly not a superior method of adjudication of the controversy.").

**2.** Finally, the premise that a class action is the only way to deter the alleged wrongdoing in this case is incorrect, because "there are other means of curbing the kind of false and misleading labeling alleged here." *Sethavanish*, 2014 WL 580696, at *5 n.5. There is no question, for example, that the FDA has a broad mandate to ensure that food labels are accurate and do not mislead consumers. *See* 21 U.S.C. §§ 331, 343. Indeed, one of the principal goals of federal labeling legislation is "to provide national uniformity" in labeling standards, balancing the protection of consumers with "allow[ing] industry to conduct business in an efficient and cost-effective manner." 58 Fed. Reg. 2462, 2465 (Jan. 6, 1993) (citing 136 Cong. Rec. H12954 (1990)). Entrusting the FDA with maintaining that balance would be far more efficient than permitting myriad class actions raising the issue one product at a time—and with the potential for different litigation outcomes leading to different rules governing product labels in different States—and sometimes, even within the same State. Last, for the reasons stated above, none of these class actions will likely be litigated to final judgment; they provide no tangible benefit to consumers; and they serve only to crowd the courts' dockets.

## CONCLUSION

The district court's judgment should be affirmed.

Dated:  January 28, 2015      Respectfully submitted,

/s/ *Andrew J. Pincus*

Kate Comerford Todd      Andrew J. Pincus
Tyler R. Green      Archis A. Parasharami
U.S. CHAMBER LITIGATION      Daniel E. Jones
    CENTER, INC.      MAYER BROWN LLP
1615 H Street, N.W.      1999 K Street, N.W.
Washington, DC 20062      Washington, DC 20006
(202) 463-5337      (202) 263-3000

Hannah Y.S. Chanoine
MAYER BROWN LLP
1675 Broadway
New York, New York 10019
(212) 506-2500

*Counsel for* Amicus Curiae *the Chamber of Commerce
of the United States of America*

## CERTIFICATE OF COMPLIANCE

1.   This brief complies with the type-volume limitation of Fed. R. App.
     P. 29(d) and 32(a)(7)(B) because:

     ☒     this brief contains <u>6998</u> words, excluding the parts of the
            brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

     ☐     this brief uses a monospaced typeface and contains _____
            lines of text, excluding the parts of the brief exempted by
            Fed. R. App. P. 32(a)(7)(B)(iii).

2.   This brief complies with the typeface requirements of Fed. R. App.
     P. 32(a)(5) and the type style requirements of Fed. R. App. P.
     32(a)(6) because:

     ☒     this brief has been prepared in a proportionally spaced
            typeface using <u>Microsoft Word 2007</u> in <u>14-point Century
            Schoolbook</u>, *or*

     ☐     this brief has been prepared in a monospaced spaced
            typeface using *(state name and version of word processing
            program)* _____ with *(state number of
            characters per inch and name of type style)* _____

            _____.

                                     /s/ *Andrew J. Pincus*
                                     Andrew J. Pincus
                                     *Counsel for* Amicus Curiae

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on January 28, 2015.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ *Andrew J. Pincus*
Andrew J. Pincus
*Counsel for* Amicus Curiae